IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IRONCLAD PERFORMANCE WEAR CORPORATION, | § § § | |
| Plaintiff, | § § | |
| | § | Case No. 3:15-cv-03453 |
| v. | § | |
| | § | |
| ORR SAFETY CORPORATION, | § § | |
| Defendant. | § § | |

**PLAINTIFF AND COUNTERCLAIM DEFENDANT'S ANSWER TO COUNTERCLAIMS**

Plaintiff and Counterclaim Defendant Ironclad Performance Wear Corporation ("Ironclad" or "Counterclaim Defendant") file this Answer to Defendant and Counterclaimant Defendant ORR Safety Corporation's ("ORR" or "Counterclaimant") Counterclaims and would show the Court as follows:

**COUNTERCLAIM**

1.      Ironclad admits that on January 6, 2009, Ironclad and ORR entered into an Exclusive License and Distributorship Agreement (the "Distributorship Agreement"), in which ORR agreed to serve as the exclusive distributor of a certain glove product line known as "KONG®" [which stands for "King of Oil N' Gas"], and that Ironclad had developed, designed and manufactured gloves for use in the oil and gas industry, but denies the remaining allegations in the first sentence of paragraph 1 of the Counterclaim. The second sentence of paragraph 1 of the Counterclaim contains conclusions of law to which a response is not required. To the extent a response is required, Ironclad denies the allegations in the second sentence of paragraph 1 of the Counterclaim. The third sentence of paragraph 1 of the Counterclaim contains conclusions of law to which a response is not required. To the extent a response is required, Ironclad denies the allegations in the third sentence of paragraph 1

of the Counterclaim.  Ironclad admits that it gave notice of its intent to terminate the Distributorship Agreement to ORR, for cause, based upon ORR's material breach of the Distributorship Agreement, but denies the remaining allegations in the fourth sentence of paragraph 1 of the Counterclaim.  The fifth sentence of paragraph 1 of the Counterclaim contains conclusions of law to which a response is not required.  To the extent a response is required, Ironclad denies the allegations in the fifth sentence of paragraph 1 of the Counterclaim.

## PARTIES

2.      Ironclad admits that ORR conducts business in Kentucky, but lacks sufficient information to either admit or deny the remaining allegations of paragraph 2 of the Counterclaim, and therefore denies them.

3.      Ironclad admits the allegations of paragraph 3 of the Counterclaim, and further alleges that Ironclad's business includes the design, manufacture, marketing and sale of branded, and private label performance and general utility gloves for numerous industrial, outdoor, and general work markets including oil and gas, electric utility, construction, tactical, outdoor and sporting, and "do it yourself."

## JURISDICTION AND VENUE

4.      Ironclad admits the allegations of paragraph 4 of the Counterclaim.

5.      Ironclad admits the allegations of paragraph 5 of the Counterclaim.

## STATEMENT OF FACTS

### Introduction

6.      Ironclad lacks sufficient information to either admit or deny the allegations in paragraph 6 of the Counterclaim, and therefore denies them.

7.      Ironclad admits that it designed the KONG® glove and developed the technology contained therein from the ground up, and conducted significant testing on the glove with major

petroleum companies in order to manufacture the best performance possible in the oil and gas industry, the first of its kind, but the remaining allegations of paragraph 7 of the Counterclaim are vague and ambiguous, Ironclad is unable to either admit or deny them on that basis, and therefore denies them.

8.       Ironclad admits that Ironclad has designed, developed and manufactured multiple KONG® gloves, including the KONG® gloves listed in paragraph 8 of the Counterclaim, but denies the remaining allegations of paragraph 8 of the Counterclaim.

9.       Ironclad admits that the KONG® line of gloves includes thermoplastic rubber ("TPR") on the back of the hand of the glove, but the remaining allegations in the first sentence of paragraph 9 of the Counterclaim are vague and ambiguous, and Ironclad therefore denies them.   The second sentence of paragraph 9 of the Counterclaim contains conclusions of law to which a response is not required.  To the extent a response is required, Ironclad lacks sufficient information to either admit or deny the allegations in the second sentence of paragraph 9, and therefore denies them.

10.      Ironclad admits that Ironclad's initial development and design of the revolutionary new KONG® product created a "first mover" advantage, that KONG® became the gold-standard in industrial hand safety, and became unique and sought after, in terms of both (a) Ironclad's role in materially reducing on-the-job hand injuries to oil rig workers, contrasted with ineffective gloves used for decades prior that offered minimal or no cut or impact protection, and (b) Ironclad's position as the first major manufacturer that created the demand with some of the world's largest energy companies, but otherwise denies the remaining allegations of paragraph 10 of the Counterclaim.

11.      Ironclad denies the allegations of paragraph 11 of the Counterclaim.

### ORR and Ironclad's Collaboration on KONG®[1]

12.     Ironclad lacks sufficient information to either admit or deny the allegations in the first sentence of paragraph 12 and therefore denies them.  Ironclad lacks sufficient information to either admit or deny the allegations in the second sentence of paragraph 12 and therefore denies them. Ironclad lacks sufficient information to either admit or deny the allegations in the third sentence of paragraph 12 and therefore denies them.

13.     Ironclad admits that there was an ad hoc "Safety Committee" in the oil and gas industry that met on occasion to share and develop best practices in the oil and gas industry, including Superior Energy, ExxonMobil, Shell Oil, and other oil and gas companies, and that in 2007, a select group of the larger "Safety Committee" formed a "Steering Committee" to address the issue of hand injuries, but Ironclad lacks sufficient information to either admit or deny the remaining allegations in the first sentence of paragraph 13 and therefore denies them.  Ironclad lacks sufficient information to either admit or deny the allegations in the second sentence of paragraph 13 of the Counterclaim and therefore denies them.

14.     Ironclad admits it being expressed to Ironclad that hand impact injuries were of concern to the oil and gas industry, and that the subject Steering Committee would meet, in part, in order to address hand impact injuries, and that Ironclad brought its expertise in hand protection that had existed for years prior to 2007 to the Steering Committee and presented gloves to the Steering Committee that had already improved hand protection and injury prevention.  Ironclad lacks sufficient information to either admit or deny the allegations in the second sentence of paragraph 14 of the

---

[1] By utilizing ORR's bolded headings in structuring its answer, Ironclad does not admit to those heading captions and aside from those generic phrases such as "Statement of Facts" or "Introduction," to the extent any are intended as charging allegations, Ironclad denies all of the remaining ones, including the subject heading to which this footnote relates.

Counterclaim, and therefore denies them.  Ironclad admits the allegations in the third sentence of paragraph 14 of the Counterclaim.  Ironclad admits the allegations in the fourth sentence of paragraph 14 of the Counterclaim.

15.     Ironclad lacks sufficient information to either admit or deny the allegations in paragraph 15 of the Counterclaim, and therefore denies them.

16.     Ironclad admits that (1) an ORR  employee who had formerly worked in the oil and gas industry approached Ironclad to solicit Ironclad's expertise in order for Ironclad to provide a solution to the problems of hand injuries, (2) Ironclad and ORR representatives met with Steering Committee members, (3) the Steering Committee asked Ironclad's team to design and develop a product that would decrease the hand impact injuries in the oil and gas industry, (4) Ironclad spent approximately one year investigating, designing and developing product aimed at preventing and/or minimizing hand impact injuries in the oil and gas industry prior to any commercial production of the product, and (5) it was Ironclad's design and development over the course of approximately one year that eventually allowed ORR to begin selling KONG® technical gloves to the oil and gas industry, an innovation admitted by ORR to be the gold-standard in industrial hand safety, unique, sought after and then enjoying a "first mover" advantage, but denies the remaining allegations of paragraph 16 of the Counterclaim.

17.     Ironclad denies the allegations of paragraph 17 of the Counterclaim.

18.     The allegations in paragraph 18 of the Counterclaim are vague and ambiguous, particularly with respect to the phrase "[f]or example" as relating to paragraph 17 which is denied, and Ironclad is unable to either admit or deny them on that basis, and therefore denies them.

19.     Ironclad denies the allegations of paragraph 19 of the Counterclaim.

20. Ironclad lacks sufficient information to either admit or deny the allegations of paragraph 20 of the Counterclaim, particularly with respect to ORR's motives/reasoning or the premises by which it assertedly took action, and therefore denies them.

21. Ironclad admits that the Steering Committee members asked for Ironclad input regarding the development of a glove which was provided and that Ironclad sought out inputs from a variety of sources, but denies the remaining allegations in the first sentence of paragraph 21 of the Counterclaim, and specifically denies that ORR provided any input at all regarding the development of the glove. Ironclad denies the allegations in the second sentence of paragraph 21 of the Counterclaim. Ironclad admits the allegations in the third sentence of paragraph 21 of the Counterclaim. Ironclad admits the allegations in the fourth sentence of paragraph 21 of the Counterclaim and further alleges that it was its own representatives that drafted a field survey to be filled out by workers testing the first prototype of the Concept Glove. Ironclad denies the allegations in the fifth sentence of paragraph 21 of the Counterclaim on the basis that the Steering Committee did not approach ORR to address the low scores on the field surveys, but rather met with representatives of Ironclad and explained how the low scores could be addressed.

22. Ironclad denies the allegations in the first sentence of paragraph 22 of the Counterclaim. Ironclad admits the allegations in the second sentence of paragraph 22 of the Counterclaim. Ironclad admits that Ironclad improved the design of the glove in the second prototype, but denies the remaining allegations in the third sentence of paragraph 22 of the Counterclaim. Ironclad lacks information sufficient to either admit or deny the allegations in the fourth sentence of paragraph 22 of the Counterclaim and therefore denies them. Ironclad admits the allegations in the fifth sentence of paragraph 22 of the Counterclaim.

23.     Ironclad admits the allegations in the first sentence of paragraph 23 of the Counterclaim.[2]  The allegations in the second sentence of paragraph 23 of the Counterclaim are vague and ambiguous, Ironclad is unable to either admit or deny them on that basis, and therefore denies them.  Ironclad admits the allegations in the third sentence of paragraph 23 of the Counterclaim.

### Exclusive License and Distributorship Agreement, First Amendment to the Exclusive License and Distributorship Agreement, Sub-Distributorship Agreement, and First Amendment to Sub-Distributorship Agreement.

24.     Ironclad admits that Ironclad and ORR entered into an Exclusive License and Distributorship Agreement dated January 6, 2009 (the "Agreement"), but denies the remaining allegations of paragraph 24 of the Counterclaim, and specifically denies that there was any "partnership" formed pursuant to the Agreement as specifically disclaimed in Section 2.2 therein ("nothing herein shall be construed so as to constitute [ORR] as a partner, joint venturer, agent or representative of [Ironclad] for any purpose whatsoever, nor shall [ORR] engage in any conduct which might create such an impression or inference.")

25.     Ironclad states that the terms of the Agreement speak for themselves, and their legal effect is an issue for the Court that does not require either an admission or denial.  To the extent that a response is required, Ironclad admits the allegations of paragraph 25 of the Counterclaim.

26.     Ironclad states that the terms of the Agreement speak for themselves, and their legal effect is an issue for the Court that does not require either an admission or denial.  To the extent that a response is required, Ironclad admits the allegations of paragraph 26 of the Counterclaim.

---

[2] Footnote No. 1 in the Counterclaim does not appear to be a charging allegation, and therefore does not require a response.  However, to the extent that a response is required, Ironclad denies the allegations contained in Footnote No. 1, and responds that all of the KONG® Original Impact Resistant Gloves said "Ironclad" on them until late 2012, even after Ironclad and Orr had entered into the Distributorship Agreement and Sub-Distributorship Agreement, and the gloves said "Ironclad" on them because Ironclad had designed them and wanted them to reflect this fact.

27.     Ironclad states that the terms of the Agreement speak for themselves, and their legal effect is an issue for the Court that does not require either an admission or denial.  To the extent a response is required, Ironclad admits the allegations in the first sentence of paragraph 27 of the Counterclaim.   Ironclad denies the allegations in the second sentence of paragraph 27 of the Counterclaim.

28.     Ironclad states that the terms of the Agreement speak for themselves, and their legal effect is an issue for the Court that does not require either an admission or denial.  To the extent a response is required, Ironclad denies the allegations of paragraph 28 of the Counterclaim.

29.     Ironclad states that the terms of the Agreement speak for themselves, and their legal effect is an issue for the Court that does not require either an admission or denial.  To the extent a response is required, Ironclad denies the allegations of paragraph 29 of the Counterclaim.

30.     Ironclad states that the terms of the Agreement speak for themselves, and their legal effect is an issue for the Court that does not require either an admission or denial.  To the extent a response is required, Ironclad admits the allegations of paragraph 30 of the Counterclaim.

31.     Ironclad denies the allegations in the first sentence of paragraph 31 of the Counterclaim  Ironclad admits that the parties entered into the Amendment to the Exclusive License and Distributorship Agreement (the "Amendment") dated as of January 27, 2015, but denies the remaining allegations in the second sentence of paragraph 31 of the Counterclaim as "effectuated" is vague and ambiguous.

32.     Ironclad denies the allegations of paragraph 32 of the Counterclaim.

33.     Ironclad admits the allegations of paragraph 33 of the Counterclaim.

34.     Ironclad alleges that the terms of the Sub-Distributorship Agreement and the Amendment to the Sub-Distributorship Agreement speak for themselves, and their legal effect is an

issue for the Court that does not require either an admission or denial.  To the extent a response is required, Ironclad admits the allegations in paragraph 34 of the Counterclaim.

### ORR's Marketing and Funding of the KONG® Brand

35.    Ironclad denies the allegations in paragraph 35 of the Counterclaim and states that while ORR bore the responsibility of marketing and promoting the KONG® brand by the terms of the Agreement itself, ORR failed to perform material obligations, as further alleged in the Complaint initiating this lawsuit.

36.    Ironclad incorporates its response to paragraph 35 above, and further denies the allegations in paragraph 36 of the Counterclaim.

37.    Ironclad lacks sufficient information to either admit or deny all of the allegations prior to the last clause in paragraph 37 of the Counterclaim (*i.e.,* "ORR made the KONG brand what it is today"), and therefore denies them. The allegation in the last clause of paragraph 37 of the Counterclaim is vague and ambiguous, Ironclad is unable to either admit or deny it on that basis, and therefore denies it.

38.    Ironclad admits that ORR paid up-front deposits on large orders of KONG® gloves that were used to pay manufactures for inventory, but denies the remaining allegations in paragraph 38 of the Counterclaim.

39.    Ironclad states that the terms of the Agreement speak for themselves, and their legal effect is an issue for the Court that does not require either an admission or denial.  To the extent a response is required, Ironclad admits the allegations in the first sentence of paragraph 39 of the Counterclaim, and further alleges that pursuant to the Agreement, it was ORR's (not Ironclad's) option to order large shipments which resulted in huge discounts and savings to ORR, while reducing Ironclad's profits, such that this enormous discount for ORR took a direct hit on Ironclad's bottom line, and that ORR's erratic ordering processes caused considerable difficulties with capacity and

production.   Ironclad admits the allegations in the second sentence of paragraph 39 of the Counterclaim, and incorporates by reference its response to the allegations in the first sentence of paragraph 39.

40.   Ironclad denies the allegations of paragraph 40 of the Counterclaim.

41.   The allegations of paragraph 41 of the Counterclaim are vague and ambiguous, particularly with respect to the phrase "dramatically improved," Ironclad is unable to either admit or deny them on that basis, and therefore denies them, and Ironclad further alleges that Ironclad has lost profits in sales of the KONG® brand as a result of ORR's wrongdoing.

42.   Ironclad admits that the quoted statements in paragraph 42 of the Counterclaim speak for themselves and were made by an Ironclad representative, but denies the remaining allegations of paragraph 42 of the Counterclaim.

### ORR's Success in Selling KONG®

43.   The allegations of paragraph 43 of the Counterclaim are vague and ambiguous, Ironclad is unable to either admit or deny them on that basis, and therefore denies them.

44.   Ironclad admits that shortly after the time of its commercial release in late 2008, and for a period of time thereafter, KONG® gloves were the worldwide standard in the oil and gas industry, but denies the remaining allegations in the first sentence of paragraph 44 of the Counterclaim. Ironclad admits the allegations in the second sentence of paragraph 44 of the Counterclaim.

45.   Ironclad admits that Ironclad (and not ORR) submitted the KONG® glove as a nominee for the 2010 Occupational Health and Safety New Product of the Year Award, and that individual representatives from Ironclad, Exxon Mobil and ORR were selected for the 2010 Offshore Leadership Award (and not the KONG® glove), but denies the remaining allegations of paragraph 45 of the Counterclaim.

46.     Ironclad admits that KONG® gloves were initially and had the potential, but for ORR's wrongdoing, to remain the industry-leading brand for impact resistant gloves, and with proper distribution and marketing (which ORR did not perform) had the potential to evolve into other industry markets beyond just oil and gas, but the remaining allegations of paragraph 46 of the Counterclaim are vague and ambiguous, particularly with respect to the phrase "in addition to its success in the oil and gas context," Ironclad is unable to either admit or deny them on that basis, and therefore denies them.

### Ironclad Breaches the Agreement and Amendment by Making and Distributing KONG® Vibram® Counterfeit Gloves

47.     Ironclad states that the terms of the Agreement and the Amendment speak for themselves, and their legal effect is an issue for the Court that does not require either an admission or denial.  To the extent that a response is required, Ironclad admits the allegations of paragraph 47 of the Counterclaim.

48.     Ironclad states that the terms of the Agreement and the Amendment speak for themselves, and their legal effect is an issue for the Court that does not require either an admission or denial.  To the extent that a response is required, Ironclad denies that the definition of "Products" in the Agreement and Amendment includes current styles and types of any Ironclad gloves on the market, admits that the definition of "Products" under the Agreement and Amendment includes the current styles of KONG® gloves on the market, and admits the remaining allegations in the first sentence of paragraph 48 of the Counterclaim.  Ironclad states that the terms of the Agreement and the Amendment speak for themselves, and their legal effect is an issue for the Court that does not require either an admission or denial.  To the extent that a response is required, Ironclad admits the allegations in the second sentence of paragraph 48 of the Counterclaim.

49.     Ironclad denies the allegations of paragraph 49 of the Counterclaim.

50.     Ironclad denies the allegations of paragraph 50 of the Counterclaim.

51.     Ironclad denies the allegations of paragraph 51 of the Counterclaim.

52.     Ironclad denies the allegations of paragraph 52 of the Counterclaim.

53.     Ironclad admits that its CEO, Jeff Cordes, met with the President of ORR, Jeffrey Sweedler, on September 28, 2015, but denies the remaining allegations in the first sentence of paragraph 53 of the Counterclaim.  Ironclad admits the allegations in the second sentence of paragraph 53 of the Counterclaim.  With respect to the third sentence of paragraph 53 of the Counterclaim, Ironclad lacks sufficient information to either admit or deny the allegations about ORR's intentions and on that basis denies them.  Ironclad denies the allegations in the fourth sentence of paragraph 53 of the Counterclaim.

54.     The allegations in paragraph 54 of the Counterclaim contain conclusions of law to which a response is not required.  To the extent that a response is required, Ironclad denies the allegations of paragraph 54 of the Counterclaim.

55.     Ironclad denies the allegations of paragraph 55 of the Counterclaim.

56.     Ironclad admits that Mr. Cordes presented Mr. Sweedler with a "standstill agreement" which would allow the parties to postpone litigation in order to resolve their disputes, but denies the remaining allegations in the first sentence of paragraph 56 of the Counterclaim.  Ironclad denies the allegations in the second sentence of paragraph 56 of the Counterclaim.  Ironclad denies the allegations in the third sentence of paragraph 56 of the Counterclaim.

57.     Ironclad denies the allegations of paragraph 57 of the Counterclaim.

### The KONG® Vibram® Counterfeits

58.     Ironclad denies the allegations of paragraph 58 of the Counterclaim and specifically denies any so-called "KONG® Vibram® Counterfeits".

59.     Ironclad denies the allegations of paragraph 59 of the Counterclaim.

60.     Ironclad admits the existence of a management tool referred to by the parties as a "KONG® Action Tracker & Overview" and that it changed over time, but denies the remaining allegations of paragraph 60 of the Counterclaim.

61.     Ironclad denies the allegations of paragraph 61 of the Counterclaim.

62.     Ironclad denies the allegations of paragraph 62 of the Counterclaim.

63.     Ironclad denies the allegations in the first sentence of paragraph 63 of the Counterclaim.   Ironclad admits the allegations in the second sentence of paragraph 63 of the Counterclaim.   Ironclad denies the allegations in the third sentence of paragraph 63 of the Counterclaim on the basis that Ironclad did incorporate additional thumb protection in the KONG® line of gloves on multiple occasions.

64.     Ironclad denies the allegations in the first sentence of paragraph 64 of the Counterclaim on the basis that ORR never provided specifications for a fire-resistant KONG® glove. Ironclad denies the allegations in the second sentence of paragraph 64 on the basis that ORR never provided specification for a fire-resistant KONG® glove.

65.     Ironclad denies the allegations in paragraph 65 of the Counterclaim on the basis that the alleged "prominent" video clip of an actual KONG® glove in the promotional video for Ironclad's co-branded gloves with the company Vibram® and containing the proprietary Ironclad Visual Engineering technology is actually a six second frame of a KONG® glove during the introduction to Ironclad's products in general at the beginning of the video, and no Vibram® technology is shown on any KONG® gloves at any point during the video.

66.     Ironclad incorporates its response to paragraph 65 above, and denies the allegations in paragraph 66 of the Counterclaim, and specifically denies the allegations in the third sentence of paragraph 66 of the Counterclaim on the basis that the alleged "screenshots" included as part of this

paragraph are misleading and misrepresentative of the actual video promoting the Ironclad co-branded gloves with Vibram®.

67.     The allegations in paragraph 67 of the Counterclaim are vague and ambiguous, Ironclad is unable to either admit or deny them on that basis, and therefore denies them, and Ironclad further alleges that the allegations are nonsensical to the extent that (1) throughout history (dating back to the ancient Greeks and Romans) certain principles of glove construction/design have been ubiquitous, *i.e.*, almost all gloves include full length finger and thumb protection, a cuff and an opening, and colors of some kind, and (2) since not later than the initial commercial introduction of the KONG® glove in 2008 multiple companies throughout the world have designed, manufactured and sold gloves with finger and thumb protection, back of hand ribs, knuckle protection, and varying colors patterned in one glove.

68.     The allegations in the first sentence of paragraph 68 of the Counterclaim are vague and ambiguous, particularly with respect to the phrase "these features," Ironclad is unable to either admit or deny them on this basis, and therefore denies them.  Ironclad admits that its counsel sent a letter to West Chester Holdings on May 26, 2009, the terms of which speak for themselves, but denies the remaining allegations in the second sentence of paragraph 68 of the Counterclaim.

69.     Ironclad denies the allegations of paragraph 69 of the Counterclaim.

70.     The first sentence of paragraph 70 of the Counterclaim contains conclusions of law to which a response is not required.  To the extent that a response is required, Ironclad denies the allegations in the first sentence of paragraph 70 of the Counterclaim.  Ironclad lacks sufficient information to either admit or deny the allegations in the second, third and fourth sentences of paragraph 70 of the Counterclaim and therefore denies them.  Ironclad denies the allegations in the fifth sentence of paragraph 70 of the Counterclaim.

71.     Ironclad denies the allegations of paragraph 71 of the Counterclaim.

72.     Ironclad denies the allegations in the first sentence of paragraph 72 of the Counterclaim on the basis that there was not any particular KONG® glove that was selected by the customer referred to in paragraph 72, but rather different elements of multiple KONG® gloves that the customer requested.  Ironclad denies the allegations in the second sentence of paragraph 72 of the Counterclaim on the basis that there was no specific KONG® glove chosen by the customer referred to in paragraph 72 for a field test.  Ironclad denies the allegations in the third sentence of paragraph 72 of the Counterclaim.

73.     Ironclad denies the allegations in the first sentence of paragraph 73 of the Counterclaim.  Ironclad denies the allegations in the second sentence of paragraph 73 of the Counterclaim on the basis that Ironclad never intended to undercut ORR's exclusive arrangement with respect to KONG®, never intended to harm the KONG® glove product brand, and indicated to ORR that ORR would be the distributor for the "Rigger Grip Cut 5 glove."  Ironclad denies the allegations in the third sentence of paragraph 73 of the Counterclaim.

74.     Ironclad lacks sufficient information to either admit or deny the allegations of paragraph 74 of the Counterclaim, and therefore denies them.

75.     Ironclad denies the allegations in the first sentence of paragraph 75 of the Counterclaim.  The allegations in the second sentence of paragraph 75 of the Counterclaim contains conclusions of law to which a response is not required.  To the extent a response is required, Ironclad denies the allegations in the second sentence of paragraph 75 of the Counterclaim.  Ironclad denies the allegations in the third sentence of paragraph 75 of the Counterclaim.

76.     The allegations in paragraph 76 of the Counterclaim contain conclusions of law to which a response is not required.  To the extent a response is required, Ironclad denies the allegations in paragraph 76 of the Counterclaim.

77.     The allegations in paragraph 77 of the Counterclaim contain conclusions of law to which a response is not required.  To the extent a response is required, Ironclad denies the allegations in paragraph 77 of the Counterclaim.

78.     Ironclad denies the allegations in paragraph 78 of the Counterclaim.

79.     Ironclad admits that one of ORR's distributors in Canada explained to Ironclad on a conference call in the fall of 2014 that a customer was in need of a glove with thermal properties that could withstand extreme cold weather conditions, and that after the customer also requested that cut-resistant technology be added to this glove, Ironclad developed a cut-resistant liner, but denies the remaining allegations in the first sentence of paragraph 79 of the Counterclaim.  Ironclad lacks sufficient information or belief to either admit or deny the allegations in the second sentence of paragraph 79 of the Counterclaim and therefore denies them, and further denies the allegations in the second sentence of paragraph 79 of the Counterclaim on that basis that the customer referred to indicated on multiple occasions that it was intending to purchase the glove for the winter of 2015-2016.

80.     Ironclad denies the allegations in the first sentence of paragraph 80 of the Counterclaim, and specifically denies that it "rebranded" a KONG® Artic Mitt.  Ironclad denies the allegations in the second sentence of paragraph 80 of the Counterclaim.

81.     Ironclad admits that it proposed splitting an order for production of the "Arctic Mitt" glove between a KONG® version of the glove, and a new glove non-KONG® version of the Arctic Mitt, but denies the remaining allegations of paragraph 81 of the Counterclaim, and specifically denies that these two lines of gloves were the "same glove with different markings."

82.     Paragraph 82 of the Counterclaim contains conclusions of law to which a response is not required.  To the extent a response is required, Ironclad denies the allegations of paragraph 82 of the Counterclaim.

83.     Ironclad denies the allegations in the first sentence of paragraph 83 on the basis that Mr. McCown specifically stated that ORR would receive all royalties that it was entitled to with respect to Products sold under the Sub-Distributorship Agreement.  Ironclad denies the allegations in the second sentence of paragraph 83 of the Counterclaim, and specifically denies that Ironclad intended to use an "unapproved sub-distributor" on the basis that ORR specifically agreed to the use of the sub-distributor referred to in paragraph 83 of the Counterclaim.

84.     Ironclad admits that the words in quotes and not in brackets in paragraph 84 of the Counterclaim appear in Ironclad's Complaint initiating this lawsuit, but denies the remaining allegations of paragraph 84 of the Counterclaim.

85.     Ironclad states that the terms of the Amendment speak for themselves, and their legal effect is an issue for the Court that does not require either an admission or denial.  To the extent that a response is required, Ironclad denies the allegations in the first sentence of paragraph 85 on the basis that the sentence is misleading and incomplete.  Ironclad states that the terms of the Amendment speak for themselves, and their legal effect is an issue for the Court that does not require either an admission or denial.  To the extent that a response is required, Ironclad denies the allegations in the second sentence of paragraph 85.

86.     Ironclad denies the allegations in the first sentence of paragraph 86 of the Counterclaim.  Ironclad admits the allegations in the second sentence of paragraph 86 of the Counterclaim.  Ironclad lacks sufficient information to either admit or deny the allegations in the third sentence of paragraph 86 of the Counterclaim, and therefore denies them.  The fourth sentence of paragraph 86 of the Counterclaim contains conclusions of law to which a response is not required.  To the extent that a response is required, Ironclad denies the allegations in the fourth sentence of paragraph 86 of the Counterclaim.

87.     Paragraph 87 of the Counterclaim contains conclusions of law to which a response is not required.  To the extent a response is required, Ironclad denies the allegations of paragraph 87 of the Counterclaim.

### Ironclad Has Failed to Support ORR's Efforts to Market and Sell KONG®

88.     Ironclad denies the allegations of paragraph 88 of the Counterclaim.

89.     Ironclad denies the allegations of paragraph 89 of the Counterclaim.

90.     Ironclad denies the allegations of paragraph 90 of the Counterclaim.

### Ironclad Failed to Timely Deliver Products, Failed to Deliver Products Pursuant to ORR's Orders, and Failed to Deliver Product Pursuant to the Terms of the Parties' Agreements

91.     Ironclad denies the allegations of paragraph 91 of the Counterclaim.

92.     The allegations of Paragraph 92 of the Counterclaim are vague and ambiguous, Ironclad is unable to either admit or deny them on that basis, and therefore denies them.

93.     Ironclad states that the terms of the Agreement speak for themselves, and their legal effect is an issue for the Court that does not require either an admission or denial.  To the extent that a response is required, Ironclad denies the allegations of paragraph 93 of the Counterclaim on the basis that the Agreement specifically states that for any products delivered more than 30 business days following the delivery date specific in the Purchase Agreement covering such shipment of products (other than any delay in delivery caused solely by the Carrier), ORR would be entitled only to a rebate in the amount of three percent of that portion of the total amount of such order which is more than 30 business days following the delivery date specified in the Purchase Order covering such shipment, and that the rebate applies only to that portion of the order which is delivered late.

94.     Ironclad states that the terms of the Distributorship Agreement speak for themselves, and their legal effect is an issue for the Court that does not require either an admission or denial.  To the extent a response is required, Ironclad admits that Ironclad has certain contractual obligations to

ORR in the Distributorship Agreement, but the remaining allegations in the first sentence of paragraph 94 of the Counterclaim are vague and ambiguous, Ironclad is unable to either admit or deny them on that basis, and therefore denies them.  Ironclad denies the allegations in the second sentence of paragraph 94 of the Counterclaim.

95.    Ironclad lacks sufficient information to either admit or deny the allegations in the first sentence of paragraph 95 of the Counterclaim, and therefore denies them.  Ironclad denies the allegations in the second sentence of paragraph 95 of the Counterclaim.  Ironclad denies the allegations in the third sentence of paragraph 95 of the Counterclaim.

96.    Ironclad denies the allegations in paragraph 96 of the Counterclaim and further alleges that in any instance there has been any variance in product delivery quantities, such variances were either immaterial and/or known in advance and approved by ORR.

97.    Ironclad denies the allegations in the first sentence of paragraph 97 of the Counterclaim.  Ironclad denies the allegations in the second sentence of paragraph 97 of the Counterclaim.  Ironclad lacks sufficient information to either admit or deny the allegations in the third sentence of paragraph 97 of the Counterclaim, and therefore denies them.  Ironclad lacks sufficient information to either admit or deny the allegations in the fourth sentence of paragraph 97 of the Counterclaim, and therefore denies them.  Ironclad denies the allegations in the fifth sentence of paragraph 97 of the Counterclaim.

### Ironclad Failed to Remit Royalties for Sub-Distributor Sales from December 2013 to January 2015

98.    Ironclad alleges that the terms of the Sub-Distributorship Agreement speak for themselves, and their legal effect is an issue for the Court that does not require either an admission or denial.  To the extent a response is required, Ironclad admits the allegations in paragraph 98 of the Counterclaim.

99.     Ironclad alleges that the terms of the Amendment to Sub-Distributorship Agreement speak for themselves, and their legal effect is an issue for the Court that does not require either an admission or denial. To the extent a response is required, Ironclad denies the allegations in paragraph 99 of the Counterclaim.

100.     Ironclad denies the allegations of paragraph 100 of the Counterclaim.

101.     Paragraph 101 of the Counterclaim contains conclusions of law to which a response is not required.  To the extent a response is required, Ironclad denies the allegations in paragraph 101 of the Counterclaim.

**Ironclad Breached Its Agreements with ORR by Engaging in Direct Competition Prohibited by the Agreements**

102.     Ironclad denies the allegations of Paragraph 102 of the Counterclaim.

103.     Ironclad admits that KONG® gloves are available for purchase on the Ironclad website, that Ironclad ships an order of KONG® gloves to any customer who purchases KONG® from the Ironclad website, that Ironclad does not pre-screen the customers who purchase KONG® from the Ironclad website, that Ironclad notified ORR on a monthly basis of all KONG® sales made through the Ironclad website, that ORR has at all times been generally aware of and agreeable to the foregoing, and that Ironclad pays ORR a royalty for all KONG® gloves sold at the retail rate from its website, but denies the remaining allegations of Paragraph 103 of the Counterclaim, and specifically denies that it has materially breached the Amendment.

104.     Ironclad states that the terms of the Distributorship Agreement and the Amendment to the Distributorship Agreement speak for themselves, and their legal effect is an issue for the Court that does not require an admission or denial.  To the extent a response is required, Ironclad admits the allegations in the first sentence of paragraph 104 of the Counterclaim.  Ironclad admits that during certain time periods, its KONG® website did not identify ORR as the exclusive distributor, but denies the remaining allegations in the second sentence of paragraph 104 of the Counterclaim and further

alleges that its KONG® website did not identify ORR as the exclusive distributor during certain time periods because representatives of Ironclad had numerous communications with Mark Wiktorski at ORR regarding the website and the content of the website, and Mr. Wiktorski approved of the information on the website, and never asked to change the information listed on the KONG® website and has therefore ORR has waived any objection, or is estopped from objecting, to any information on the KONG® website.  Ironclad states that the terms of the Distributorship Agreement and the Amendment to the Distributorship Agreement speak for themselves, and their legal effect is an issue for the Court that does not require an admission or denial.  To the extent a response is required, Ironclad denies the allegations in the third sentence of paragraph 104 of the Counterclaim.

105.   Ironclad admits the allegations of the first sentence of paragraph 105 of the Counterclaim.  Ironclad states that the terms of the Sub-Distributorship Agreement and the Amendment to the Sub-Distributorship Agreement speak for themselves, and their legal effect is an issue for the Court that does not require either an admission or denial.  To the extent a response is required, Ironclad states that the allegations in the second through the fifth sentence of paragraph 105 of the Counterclaim are vague and ambiguous, Ironclad is unable to either admit or deny them on this basis, and therefore denies them.

106.   Ironclad lacks sufficient information to either admit or deny the allegations in the first sentence of paragraph 106 of the Counterclaim, and therefore denies them, and specifically denies that it breached the Sub-Distributorship Agreement and the Amendment to the Sub-Distributorship Agreement.  Ironclad denies the allegations in the second sentence of paragraph 106 of the Counterclaim.

107.   Ironclad admits the allegations in the first sentence of paragraph 107 of the Counterclaim.  Ironclad denies the allegations in the second sentence of paragraph 107 of the

Counterclaim.   Ironclad denies the allegations in the third sentence of paragraph 107 of the Counterclaim.

### Termination without Cause

108.    Ironclad admits that Ironclad again sent notice of its intent to the terminate the Distributorship Agreement, the Amendment to the Distributorship Agreement, the Sub-Distributorship Agreement, and the Amendment to the Sub-Distributorship Agreement to ORR on October 7, 2015 due to ORR's material breaches of those agreements, but denies the remaining allegations of paragraph 108 of the Counterclaim.

109.    Ironclad admits that it received a letter from ORR dated October 12, 2015, the terms of which speaks for themselves, but denies the remaining allegations of paragraph 109 of the Counterclaim.

110.    Ironclad states that the terms of the Distributorship Agreement, and their legal effect is an issue for the Court that does not require either an admission or denial.  To the extent a response is required, Ironclad denies the allegations of paragraph 110 of the Counterclaim.

### <u>CLAIMS</u>

### Count I – Breach of Contract (ORR's Exclusive Distribution Rights under the Agreement) (Under New York law pursuant to the Agreement)

111.    Paragraph 111 of the Counterclaim does not require a specific response, and Ironclad adopts and restates its answers to the allegations contained in all of the preceding paragraphs.

112.    Ironclad states that the terms of the Distributorship Agreement, and their legal effect is an issue for the Court that does not require either an admission or denial.  To the extent a response is required, Ironclad admits that it entered into the Agreement and Amendment with ORR, but denies the remaining allegations of paragraph 112 of the Counterclaim.

113.    Ironclad states that the terms of the Distributorship Agreement and the Amendment to the Distributorship Agreement and their legal effect is an issue for the Court that does not require

either an admission or denial.  To the extent a response is required, Ironclad denies the allegations in the first sentence of paragraph 113 of the Counterclaim.  Ironclad states that the terms of the Distributorship Agreement and the Amendment to the Distributorship Agreement and their legal effect is an issue for the Court that does not require either an admission or denial.  To the extent a response is required, Ironclad admits the allegations in the second sentence of paragraph 113 of the Counterclaim.

114.     Ironclad states that the terms of the Distributorship Agreement, and their legal effect is an issue for the Court that does not require either an admission or denial.  To the extent a response is required, Ironclad admits the allegations in paragraph 114 of the Counterclaim.

115.     Ironclad denies the allegations in paragraph 115 of the Counterclaim.

116.     Ironclad denies the allegations of paragraph 116 of the Counterclaim.

117.     Ironclad denies the allegations of paragraph 117 of the Counterclaim.

118.     Ironclad denies the allegations in paragraph 118 of the Counterclaim.

**Count II – Breach of Contract (Rebate Payments under the Agreement) (Under New York Law pursuant to the Agreement)**

119.     Paragraph 119 of the Counterclaim does not require a specific response, and Ironclad adopts and restates its answers to the allegations contained in all of the proceeding paragraphs.

120.     Ironclad states that the terms of the Agreement and Amendment, and their legal effect is an issue for the Court that does not require either an admission or denial.  To the extent a response is required, Ironclad admits that it entered into the Agreement and Amendment with ORR, but denies the remaining allegations of paragraph 120 of the Counterclaim.

121.     Ironclad states that the terms of the Agreement, and their legal effect is an issue for the Court that does not require either an admission or denial.  To the extent a response is required, Ironclad admits the allegations of paragraph 121 of the Counterclaim.

122.     Ironclad denies the allegations of paragraph 122 of the Counterclaim.

123.    Ironclad denies the allegations of paragraph 123 of the Counterclaim.

124.    Ironclad denies the allegations of paragraph 124 of the Counterclaim.

125.    Ironclad denies the allegations of paragraph 125 of the Counterclaim.

126.    Ironclad denies the allegations of paragraph 126 of the Counterclaim.

**Count III – Breach of Contract (Failure to Protect Intellectual Property under the Agreement) (Under New York Law pursuant to the Agreement)**

127.    Paragraph 127 of the Counterclaim does not require a specific response, and Ironclad adopts and restates its answers to the allegations contained in all of the proceeding paragraphs.

128.    Ironclad states that the terms of the Agreement, and their legal effect is an issue for the Court that does not require either an admission or denial.  To the extent a response is required, Ironclad admits the allegations of paragraph 128 of the Counterclaim.

129.    Ironclad states that the terms of the Agreement, and their legal effect is an issue for the Court that does not require either an admission or denial.  To the extent a response is required, Ironclad denies the allegations of paragraph 129 of the Counterclaim.

130.    Ironclad states that the terms of the Agreement, and their legal effect is an issue for the Court that does not require either an admission or denial.  To the extent a response is required, Ironclad denies the allegations of paragraph 130 of the Counterclaim.

131.    Ironclad states that the terms of the Agreement, and their legal effect is an issue for the Court that does not require either an admission or denial.  To the extent a response is required, Ironclad admits the allegations of paragraph 131 of the Counterclaim.

132.    Ironclad denies the allegations of paragraph 132 of the Counterclaim.

133.    Ironclad denies the allegations of paragraph 133 of the Counterclaim.

134.    Ironclad denies the allegations of paragraph 134 of the Counterclaim.

135.    Ironclad denies the allegations of paragraph 135 of the Counterclaim.

**Count IV – Breach of Contract (Failure to Remit Royalties under the Sub-Distributorship Agreement) (Under New York Law pursuant to the Agreement)**

136.   Paragraph 136 of the Counterclaim does not require a specific response, and Ironclad adopts and restates its answers to the allegations contained in all of the proceeding paragraphs.

137.   Ironclad states that the terms of the Sub-Distributorship Agreement, and their legal effect is an issue for the Court that does not require either an admission or denial.  To the extent a response is required, Ironclad denies the allegations of paragraph 137 of the Counterclaim.

138.   Ironclad states that the terms of the Sub-Distributorship Agreement, and their legal effect is an issue for the Court that does not require either an admission or denial.  To the extent a response is required, Ironclad denies the allegations in the first sentence of paragraph 138 of the Counterclaim.  Ironclad denies the allegations in the second sentence of paragraph 138 of the Counterclaim.

139.   Ironclad states that the terms of the Sub-Distributorship Agreement, and their legal effect is an issue for the Court that does not require either an admission or denial.  To the extent a response is required, Ironclad admits the allegations of paragraph 139 of the Counterclaim.

140.   Ironclad denies the allegations of paragraph 140 of the Counterclaim.

141.   Ironclad denies the allegations of paragraph 141 of the Counterclaim.

142.   Ironclad denies the allegations of paragraph 142 of the Counterclaim.

143.   Ironclad denies the allegations of paragraph 143 of the Counterclaim.

**Count V – Breach of Contract (Direct Website Sales) (Under New York Law pursuant to the Agreement and Sub-Distributorship Agreement)**

144.   Paragraph 144 of the Counterclaim does not require a specific response, and Ironclad adopts and restates its answers to the allegations contained in all of the proceeding paragraphs.

145.    Ironclad states that the terms of the Amendment, and their legal effect is an issue for the Court that does not require either an admission or denial.  To the extent a response is required, Ironclad admits the allegations of paragraph 145 of the Counterclaim.

146.    Ironclad states that the terms of the Sub-Distributorship Agreement and Amendment to the Sub-Distributorship Agreement, and their legal effect is an issue for the Court that does not require either an admission or denial.  To the extent a response is required, Ironclad admits the allegations of paragraph 146 of the Counterclaim.

147.    Ironclad states that the terms of the Agreement and Amendment, and their legal effect is an issue for the Court that does not require either an admission or denial.  To the extent a response is required, Ironclad admits that the words in quotes in paragraph 147 of the Counterclaim appear in the Amendment, but denies the remaining allegations of paragraph 147 of the Counterclaim.

148.    Ironclad states that the terms of the Agreement, and their legal effect is an issue for the Court that does not require either an admission or denial.  To the extent a response is required, Ironclad admits the allegations of paragraph 148 of the Counterclaim.

149.    Ironclad states that the terms of the Sub-Distributorship Agreement, and their legal effect is an issue for the Court that does not require either an admission or denial.  To the extent a response is required, Ironclad admits the allegations of paragraph 149 of the Counterclaim.

150.    Ironclad admits the allegations in the first sentence of paragraph 150 of the Counterclaim.  Ironclad states that the terms of the Agreement and Amendment, and their legal effect is an issue for the Court that does not require either an admission or denial.  To the extent a response is required, Ironclad admits the allegations in the second sentence of paragraph 150 of the Counterclaim.

151.    Ironclad denies the allegations of paragraph 151 of the Counterclaim.

152.     Ironclad states that the terms of the Agreement and the Amendment, and their legal effect is an issue for the Court that does not require either an admission or denial.  To the extent a response is required, Ironclad admits the allegations of paragraph 152 of the Counterclaim.

153.     Ironclad denies the allegations of paragraph 153 of the Counterclaim.

154.     Ironclad denies the allegations of paragraph 154 of the Counterclaim.

155.     Ironclad denies the allegations of paragraph 155 of the Counterclaim.

### Count VI – Breach of Implied Duty of Good Faith and Fair Dealing (Under New York Law pursuant to the Agreement)

156.     Paragraph 156 of the Counterclaim does not require a specific response, and Ironclad adopts and restates its answers to the allegations contained in all of the proceeding paragraphs.

157.     Ironclad states that the terms of the Agreement and the Amendment, and the Sub-Distributorship Agreement and the Amendment to the Sub-Distributorship Agreement, and their legal effect is an issue for the Court that does not require either an admission or denial.  To the extent a response is required, the allegations of paragraph 157 of the Counterclaim are vague and ambiguous, Ironclad is unable to either admit or deny them on that basis, and therefore denies them.

158.     Ironclad states that the terms of the Agreement and the Amendment, and the Sub-Distributorship Agreement and the Amendment to the Sub-Distributorship Agreement, and their legal effect is an issue for the Court that does not require either an admission or denial.  To the extent a response is required, Ironclad admits the allegations of paragraph 158 of the Counterclaim.

159.     Ironclad denies the allegations of paragraph 159 of the Counterclaim.

160.     Ironclad denies the allegations of paragraph 160 of the Counterclaim.

161.     Ironclad denies the allegations of paragraph 161 of the Counterclaim.

162.     Ironclad denies the allegations of paragraph 162 of the Counterclaim.

**Count VII – Declaration of Rights**
**(Under New York Law pursuant to the Agreement)**

163.     Paragraph 163 of the Counterclaim does not require a specific response, and Ironclad adopts and restates its answers to the allegations contained in all of the proceeding paragraphs.

164.     Ironclad states that the terms of the Agreement, and their legal effect is an issue for the Court that does not require either an admission or denial.  To the extent a response is required, Ironclad denies the allegations of paragraph 164 of the Counterclaim.

165.     Ironclad states that the terms of the Agreement, and their legal effect is an issue for the Court that does not require either an admission or denial.  To the extent a response is required, Ironclad denies the allegations of paragraph 165 of the Counterclaim.

166.     Ironclad admits that in its Complaint filed in this case, as well as in a letter sent to ORR on or about October 7, 2015, Ironclad gave notice of its intent to terminate the Agreement and Amendment due to specified material breaches by ORR in the event that ORR did not cure its material breaches within 30 days, but denies the remaining allegations of paragraph 166 of the Counterclaim.

167.     Ironclad denies the allegations in the first sentence of paragraph 167 of the Counterclaim.   Ironclad denies the allegations in the second sentence of paragraph 167 of the Counterclaim.

168.     Ironclad states that the terms of the Agreement, and their legal effect is an issue for the Court that does not require either an admission or denial.  To the extent a response is required, Ironclad admits the allegations of paragraph 168 of the Counterclaim.

169.     The allegations in paragraph 169 of the Counterclaim contain conclusions of law to which Ironclad is not required to respond.  Ironclad further states that the terms of the Agreement, the Amendment, the Sub-Distributorship Agreement and the Amendment to the Sub-Distributorship Agreement, and their legal effect is an issue for the Court that does not require either an admission or

denial.  To the extent that a response is required, Ironclad denies the allegations of paragraph 169 of the Counterclaim.

170.    Ironclad denies the allegations of paragraph 170 of the Counterclaim.

171.    The allegations in paragraph 171 contain conclusions of law to which Ironclad is not required to respond.  To the extent that a response is required, Ironclad denies the allegations of paragraph 171 of the Counterclaim.

172.    The allegations in paragraph 172 contain conclusions of law to which Ironclad is not required to respond.  To the extent that a response is required, Ironclad denies the allegations of paragraph 172 of the Counterclaim.

## Count VIII – Specific Performance
### (Under New York Law pursuant to the Agreement)

173.    Paragraph 173 of the Counterclaim does not require a specific response, and Ironclad adopts and restates its answers to the allegations contained in all of the proceeding paragraphs.

174.    Ironclad states that the terms of the Agreement, and their legal effect is an issue for the Court that does not require either an admission or denial.  To the extent a response is required, Ironclad admits the allegations in paragraph 174 of the Counterclaim.

175.    Ironclad alleges that the phrases "Kong-derivative safety gloves" and "unique goods" as used in paragraph 175 of the Counterclaim are vague and ambiguous, and on that basis Ironclad denies the allegations in paragraph 175 of the Counterclaim.

176.    Ironclad denies the allegations of paragraph 176 of the Counterclaim.

177.    Ironclad alleges that the phrase "KONG-derivative safety gloves" as used in paragraph 177 of the Counterclaim is vague and ambiguous, and on that basis denies such allegations, but otherwise admits the other allegations of paragraph 177 of the Counterclaim with respect to KONG safety gloves.

178.     Ironclad lacks sufficient information or belief to either admit or deny the allegations of paragraph 178 of the Counterclaim, and on that basis denies them.

179.     Ironclad admits the allegations of paragraph 179 of the Counterclaim.

**Count IX – False Advertising and Unfair Competition Pursuant to 15 U.S.C. § 1125(a)**

180.     Paragraph 180 of the Counterclaim does not require a specific response, and Ironclad adopts and restates its answers to the allegations contained in all of the proceeding paragraphs.

181.     Ironclad denies the allegations of paragraph 181 of the Counterclaim.

182.     Ironclad denies the allegations of paragraph 182 of the Counterclaim.

183.     Ironclad denies the allegations of paragraph 183 of the Counterclaim.

184.     Ironclad denies the allegations of paragraph 184 of the Counterclaim.

185.     Ironclad denies the allegations of paragraph 185 of the Counterclaim.

186.     Ironclad denies the allegations of paragraph 186 of the Counterclaim.

187.     Ironclad denies the allegations of paragraph 187 of the Counterclaim.

**Count X – Tortious Interference with Contract
(Under Texas Law)**

188.     Paragraph 188 of the Counterclaim does not require a specific response, and Ironclad adopts and restates its answers to the allegations contained in all of the proceeding paragraphs.

189.     Ironclad admits that ORR had, prior to termination of the Agreement had contracts in place for the purchase of KONG® gloves including divisions of Halliburton and Schlumberger, but denies the remaining allegations of paragraph 189 of the Counterclaim.

190.     Ironclad admits that it is aware of the existence of certain contracts between ORR and its customers, but denies the remaining allegations of paragraph 190 of the Counterclaim.

191.     Ironclad denies the allegations of paragraph 191 of the Counterclaim.

192.     Ironclad denies the allegations of paragraph 192 of the Counterclaim.

193.     Ironclad denies the allegations of paragraph 193 of the Counterclaim.

194.     Ironclad denies the allegations of paragraph 194 of the Counterclaim.

## Count XI – Exemplary Damages
### (Under Texas Law)

195.     Paragraph 195 of the Counterclaim does not require a specific response, and Ironclad adopts and restates its answers to the allegations contained in all of the proceeding paragraphs.

196.     Ironclad denies the allegations of paragraph 196 of the Counterclaim.

197.     The allegations in paragraph 197 contain conclusions of law to which Ironclad is not required to respond.  To the extent that a response is required, Ironclad denies the allegations of paragraph 197 of the Counterclaim.

198.     Ironclad denies the allegations of paragraph 198 of the Counterclaim.

199.     The allegations in paragraph 199 contain conclusions of law to which Ironclad is not required to respond.  To the extent that a response is required, Ironclad denies the allegations of paragraph 199 of the Counterclaim.

## Count XII – Attorneys' Fees
### (Under New York law pursuant to the Agreement)

200.     Paragraph 200 of the Counterclaim does not require a specific response, and Ironclad adopts and restates its answers to the allegations contained in all of the proceeding paragraphs.

201.     Ironclad states that the terms of the Agreement, and their legal effect is an issue for the Court that does not require either an admission or denial.  To the extent a response is required, Ironclad admits the allegations of paragraph 201 of the Counterclaim.

202.     Ironclad specifically denies that it has breached the Agreement or committed any tortious acts, and Ironclad lacks sufficient information to either admit or deny the remaining allegations of paragraph 202 of the Counterclaim, and therefore denies them.

203.    The allegations in paragraph 203 contain conclusions of law to which Ironclad is not required to respond.  To the extent that a response is required, Ironclad denies the allegations of paragraph 203 of the Counterclaim.

## PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Plaintiff and Counterclaim Defendant Ironclad Performance Wear Corporation prays that: (1) Counterclaimant takes nothing by its suit; (2) all costs be taxed against Counterclaimant; and (3) Counterclaim Defendant has such other and further relief to which they may be entitled.

## IRONCLAD'S AFFIRMATIVE DEFENSES

204.    Without assuming the burden to prove that which properly falls on ORR, Ironclad pleads the following separate and additional defenses.

**FIRST SEPARATE AND ADDITIONAL DEFENSE**

205.    ORR's counterclaims, and each and every purported cause of action, fails to state a claim upon which relief can be granted.

**SECOND SEPARATE AND ADDITIONAL DEFENSE**

206.    This Court lacks jurisdiction over some or all of the claims asserted by ORR.

**THIRD SEPARATE AND ADDITIONAL DEFENSE**

207.    ORR has failed to mitigate its damages, if any, and any recovery should be reduced or denied accordingly.

**FOURTH SEPARATE AND ADDITIONAL DEFENSE**

208.    ORR has consented to and/or ratified the conduct alleged in the counterclaims.

**FIFTH SEPARATE AND ADDITIONAL DEFENSE**

209.    ORR's counterclaims and each purported cause of action are barred, in whole or in part, by the doctrine of waiver based upon, inter alia, ORR's knowledge of, and failure to object to,

all of the conduct complained of in the Counterclaim including Ironclad's manufacturing a glove incorporating Vibram® technology on a non-exclusive basis, utilizing its website approved by ORR to sell products directly to customers, and its development and sale of a non-KONG® Arctic Mitt glove.

## SIXTH SEPARATE AND ADDITIONAL DEFENSE

210.     ORR's counterclaims are barred, in whole or in part, by release.

## SEVENTH SEPARATE AND ADDITIONAL DEFENSE

211.     ORR's counterclaims are barred, in whole or in part, by the doctrines of accord and satisfaction.

## EIGHTH SEPARATE AND ADDITIONAL DEFENSE

212.     If ORR has sustained any damages as alleged in the counterclaims, which Ironclad denies, such damages were proximately caused by subsequent and intervening or superseding acts of ORR and/or of third parties, such that Ironclad is not responsible or liable for any damages allegedly suffered by ORR.

## NINTH SEPARATE AND ADDITIONAL DEFENSE

213.     ORR's counterclaims and each purported cause of action are barred, in whole or in part, by the equitable doctrine of laches based upon, inter alia, ORR entirely failing to object to, or assert its rights with respect to, any of the conduct complained of in its Counterclaim at any time prior to Ironclad instituted this lawsuit.

## TENTH SEPARATE AND ADDITIONAL DEFENSE

214.     ORR is barred by the doctrine of unclean hands from maintaining each and every purported claim against Ironclad, or from recovering any damages thereunder from Ironclad, based in part upon ORR's multiple material breaches of the Agreement, Amendment, and the other agreements as alleged in Ironclad's Complaint initiating this lawsuit.

**ELEVENTH SEPARATE AND ADDITIONAL DEFENSE**

215.    ORR's counterclaims and each purported cause of action are barred, in whole or in part, by the applicable statutes of limitation and statutes of repose.

**TWELFTH SEPARATE AND ADDITIONAL DEFENSE**

216.    ORR's counterclaims and each purported cause of action are barred, in whole or in part, by the doctrine of estoppel based upon ORR's knowledge of, and failure to object to, all of the conduct complained of in the Counterclaim, including but not limited to Ironclad's manufacturing a glove incorporating Vibram® technology on a non-exclusive basis, utilizing its website approved by ORR to sell products directly to customers, and its development and sale of a non-KONG® Arctic Mitt glove.  Ironclad expended significant time and resources on these projects and changed its position to its prejudice in reliance upon ORR's apparent consent to these actions, and it would be inequitable to allow ORR to now seek recovery for this conduct that was a result of Ironclad's reasonable reliance.

**THIRTEENTH SEPARATE AND ADDITIONAL DEFENSE**

217.    ORR's counterclaim for tortious interference with contract is barred, in whole or in part, by the doctrine of justification.

**FOURTEENTH SEPARATE AND ADDITIONAL DEFENSE**

218.    ORR's counterclaim for tortious interference with contract is barred, in whole or in part, by the doctrine of privilege.

**FIFTEENTH SEPARATE AND ADDITIONAL DEFENSE**

219.    ORR's counterclaim for false advertising and unfair competition is barred, in whole or in part, because the alleged trade dress asserted by ORR consists of functional elements, and protected trade dress must be non-functional.  Pleading this affirmative defense, however, is unnecessary because in a trade dress claim,

**SIXTEENTH SEPARATE AND ADDITIONAL DEFENSE**

220.    Ironclad has insufficient knowledge or information upon which to form a basis as to whether it may have additional, as yet unstated, separate defenses available. Ironclad has not knowingly or intentionally waived any applicable affirmative defenses and reserves the right to raise additional affirmative defenses as they become known to it through discovery in this matter. Ironclad further reserves the right to amend its answer and/or affirmative defenses accordingly and/or to delete affirmative defenses that it determines are not applicable during the course of subsequent discovery.

Dated: November 27, 2015.

Respectfully submitted,

Daniel H. Charest
State Bar No. 24057803
Warren T. Burns
State Bar No. 24053119
Will Thompson
State Bar No. 24094981
BURNS CHAREST LLP
500 North Akard Street, Suite 2810
Dallas, Texas 75201
Telephone: (469) 904-4550
Facsimile: (469) 444-5002
dcharest@burnscharest.com
wburns@burnscharest.com
wthompson@burnscharest.com

Attorneys for Plaintiff/Counterclaim
Defendant

Of Counsel:

Michael A. Sherman (California Bar No. 94783)
*Pro hac vice* admission to follow
Joshua S. Stambaugh (California Bar No. 233834)
*Pro hac vice* admission to follow
STUBBS ALDERTON & MARKILES, LLP
15260 Ventura Boulevard, 20th Floor
Sherman Oaks, California 91403
Telephone: (818) 444-4500
Facsimile: (818) 444-4520
masherman@stubbsalderton.com
jstambaugh@stubbsalderton.com

Attorneys for Plaintiff/Counterclaim Defendant

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing instrument has been served on this day, November 27, 2015, via the Court's ECF system as indicated below:

Gregory M. Sudbury
Rachel Lee Hytken
QUILLING, SELANDER, LOWNDS, WINSLETT & MOSTE, P.C.
2001 Bryan Street, Suite 1800
Dallas, Texas 75201
(214) 871-2100
gsudbury@qslwm.com
rhytken@qslwm.com

Benjamin C. Fultz
Jennifer Metzger Stinnett
Daniel Hancock
FULTZ MADDOX DICKENS PLC
2700 National City Tower
Louisville, Kentucky 40202
(502) 588-2000
bfultz@fmdlegal.com
jstinett@fmdlegal.com
dhancock@fmdlegal.com

_____
Daniel H. Charest