UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| IRONCLAD PERFORMANCE WEAR CORPORATION,<br><br>      Plaintiff,<br><br>v.<br><br>ORR SAFETY CORPORATION,<br><br>      Defendant | Case No. 3:15-cv-03453-D |

**MOTION FOR TEMPORARY RESTRAINING ORDER/PRELIMINARY INJUNCTION AND MOTION FOR EXPEDITED EVIDENTIARY HEARING**

Pursuant to Fed. R. Civ. Proc. 65(a) and (b), Defendant Orr Safety Corporation ("ORR Safety") moves for the immediate entry of a temporary restraining order, and thereafter, preliminary injunction, against Plaintiff Ironclad Performance Wear Corporation ("Ironclad"), enjoining it from: (1) contacting or soliciting ORR Safety's confidential distributor network in order to sell them KONG gloves or the Ironclad Vibram Line (the "KONG Vibram Counterfeit"); and (2) utilizing advertisements in which the KONG Vibram Counterfeit and the KONG gloves are presented together. ORR Safety further requests that an expedited evidentiary hearing be held within fourteen (14) days of the entry of the temporary restraining order, or twenty-eight (28) days for good cause, so that the Court can then enter an identical preliminary injunction for the pendency of this case.

First, injunctive relief is appropriate because Ironclad has misappropriated ORR Safety's confidential customer information and supply chain for the KONG gloves – its distributor network. ORR Safety has just learned that Ironclad has contacted a number of members from ORR Safety's distributor network, the identity of which are ORR's confidential trade secrets

1

protected in the parties' Exclusive Distributorship Agreement and First Amendment to the Exclusive Distributorship Agreement. *See* January 27, 2016 letter from J. Cordes to Orr's Sub-Distributors of KONG (Exhibit 1); *see also* January 6, 2009 Exclusive License and Distributorship Agreement ("Distributorship Agreement") and January 1, 2015 First Amendment to the Exclusive License and Distributorship Agreement ("Amendment") (collectively the Distributorship Agreement and the Amendment are referred to as the "Agreements").[1] Ironclad's letter to ORR Safety's distributor network acknowledges that ORR Safety was the "exclusive" distributor of KONG gloves, states that Ironclad terminated its Agreements with ORR Safety,[2] and then goes on to tell these customers that they are "are no longer required to purchase KONG products through ORR Safety." *See* Exhibit 1.

But, the same Agreements that designated ORR Safety as the worldwide exclusive distributor of KONG safety gloves, *see* Agreements at Art. 2, also protected ORR Safety's confidential customer information and supply chain. Sections 1.3 and 7.6 of the parties' Distributorship Agreement designated ORR Safety's customer information as confidential. Not only was Ironclad expected to protect this information, but it could only use it in furtherance of its duties under the Agreements. This duty of confidentiality lasted beyond the Agreements' termination.[3] Confidential information was defined as follows:

---

[1] Because of the confidential and proprietary nature of the Agreements, ORR Safety has filed these with the Court under seal, consistent with the parties' Agreed Protective Order (DN-25).

[2] ORR Safety does not dispute that the Agreements were terminated by Ironclad. However, ORR Safety believes the Agreements were terminated by Ironclad without cause, as opposed to due to a material breach by ORR Safety, and, therefore, ORR Safety is entitled to full assignment of the KONG trademark, its registrations, applications and goodwill and a license to any patent granted on KONG. *See* Distributorship Agreement §§ 7.2(A), 7.3. As explained below, if Ironclad is allowed to utilize ORR Safety's confidential distributor network to sell KONG gloves and the KONG Counterfeit gloves throughout the course of this litigation, the KONG trademark and trade dress will likely be worthless to ORR Safety at the culmination.

[3] This provision was not changed in the Amendment.

> "Confidential Information" means and includes (but is not limited to) all prices, costs, sale volumes, trademark information, product formulation, know-how, technical knowledge, technical bulletins, service manuals, software (including source and object codes), drawings, specifications, data sheets, sales and marketing techniques and information, photographs, artwork, designs, instructions, ***and all other information whether or not reduced to writing, relating to the*** manufacture, sale, marketing, distribution, and servicing of the [KONG gloves] or ***customers of the [KONG gloves],*** and any other information and trade secrets that might adversely affect either party's ability to compete in the market, as well as any other information relating to the business of either party to this Distributorship Agreement that may be disclosed or communicated to either party to this Distributorship Agreement at any time during the Term of this Distributorship Agreement which is not generally known in the trade or is not information which is in the public domain through no fault or breach of this Distributorship Agreement by the receiving party.

*See* Distributorship Agreement § 1.3 (emphasis added). And the Agreements go on to say that:

> During the Term of this Distributorship Agreement and for a period of five (5) years after its termination, each party (the "Receiving Party") shall not disclose to any third party, or use for any purpose other than as required in the performance of this Distributorship Agreement, any Confidential Information of the other party (the "Disclosing Party").

*See id.* § 7.6 (A). Ironclad's actions are a breach of the parties' Agreements in that it is using ORR Safety's Confidential Information for its own benefit and unequivocally *not* in furtherance of its duties under the Agreements. Ironclad's actions may permanently and irrevocably injure the very business relationships that ORR Safety's Counterclaim seeks to protect. Ironically, Ironclad has taken the position in the underlying lawsuit that ORR Safety has not done enough as the exclusive distributor of KONG to develop the KONG brand. This is despite the fact that Ironclad is now using the same national and international chain of sub-distributors, which ORR Safety has developed over the course of years and that is due to ORR Safety's presence in the global safety industry, in order to market KONG and the KONG Counterfeit.

Second, ORR Safety is entitled to injunctive relief because Ironclad's letter is irreparably harming the goodwill associated with the KONG brand, the entirety of which ORR Safety will

be entitled to at the conclusion of this litigation. In the same letter that members of ORR Safety's distributor network are told to buy KONG directly from Ironclad, Ironclad also blatantly encourages the recipients to purchase the KONG Vibram Counterfeit as opposed to a KONG glove. The letter states (with emphasis not added):

*Ironclad also wants to introduce you to the*

*"Industrial Impact Collection®" featuring, exclusive Vibram polymer palm technology:*

*With performance, durability, and safety never seen before in industrial hand wear.*

Soon to be the hand tool of choice for industrial athletes everywhere, this product offers:

- ✓ Complete impermeable palm with amazing dexterity and flexibility in all weathers and climates.
- ✓ Proven durability, nearly 9 x times better than other leading gloves on the market.
- ✓ Proven grip, nearly 9 times better in oil and mud than any other glove on the market.

This technology reduces end-user costs and drive both user performance and safety. Please watch the video - Industrial Impact at https://www.youtube.com/watch?v=T7MpEuRskhY.

*See* Exhibit 1.

This is problematic for several reasons. First, Ironclad is attempting to use the goodwill of the KONG brand developed over the course of years by ORR Safety as the exclusive distributor to get ORR Safety's KONG customer base and supply chain to purchase the KONG Vibram Counterfeit. It is no accident that the KONG Vibram Counterfeit gloves have the characteristics of the visual appearance of the KONG gloves; in some instances it looks like Ironclad simply omitted the KONG Mark.[4] This brand and trade dress confusion is intentional on behalf Ironclad, as it wants to piggyback on KONG's success to the benefit of the KONG Vibram Counterfeit. Ironclad's letter insinuates that the KONG Vibram Counterfeit is simply

---

[4] ORR Safety believes Ironclad originally removed the KONG Mark from the KONG Vibram Counterfeit in an effort to get around ORR Safety's rights as the exclusive distributorship of all KONG gloves under the Agreements. However, what Ironclad ignores is that even without the KONG Mark, the KONG Vibram Counterfeits still encompass the KONG Trade Dress, and, therefore, fall under the gambit of KONG.

the next iteration of KONG – the brand that ORR Safety has developed with this customer base that the letters are being sent.  In fact, the thumb protection design of the KONG Vibram Counterfeit glove comes directly from ORR Safety research into field use of KONG gloves.  *See* Counterclaim ¶ 63. The fact that the KONG Vibram Counterfeit is highlighted in the same advertisement to ORR Safety's KONG customers proves this.  Also, if the KONG Vibram Counterfeits do not live up to the standards of the KONG, ORR Safety's customer base will associate the bad results of the KONG Counterfeits with the KONG, to the detriment of the KONG brand.  By using KONG Counterfeits and KONG gloves interchangeably in promotions, Ironclad misrepresents the nature, characteristics, and qualities of the KONG Vibram Counterfeits and KONG gloves.

Ironclad has now followed through on its threat of putting the KONG Vibram Counterfeit on the market.  But what Ironclad is not entitled to do is to use ORR Safety's confidential distributor network to sell KONG or the KONG Vibram Counterfeit.  It is also not entitled to use KONG's goodwill in order to sell the KONG Vibram Counterfeit.  If Ironclad is allowed to continue, it will not only permanently alienate ORR Safety's distributor network, but it will also permanently dilute the very brand (KONG) that ORR Safety has developed with considerable time and expense.  Again, this will permanently injure the brand ORR Safety is fighting to maintain in the underlying lawsuit.  Even if ORR Safety ultimately wins on all claims, and it is confident it will, if Ironclad is allowed to continue, ORR Safety will be permanently cut out of the market that it has developed, will be left with no customer base to sell KONG,[5] and the KONG brand will be permanently cannibalized by the KONG Vibram Counterfeit.  The scenario

---

[5] Ironically, Ironclad has taken the position that Orr has not done enough as the exclusive distributor of KONG to develop the KONG brand.  This is despite the fact that Ironclad is now contacting the same national and international chain of sub-distributors that Orr has developed for KONG in order to market KONG and the KONG Counterfeit.

is one in which injunctive relief maintaining the status quo is the only way to prevent irreparable and unmeasurable harm to ORR Safety and the KONG brand.

A supporting memorandum and declarations further support the need for this Motion.

**CERTIFICATE OF CONFERENCE**

Pursuant to LR 7.1, the undersigned certifies that she conferred with counsel for Ironclad and counsel for Ironclad was unable to certify that his client would or would not object to the motion, and therefore, the motion is presumed to be opposed by Ironclad.

Respectfully submitted,

s/ Jennifer Metzger Stinnett
Benjamin C. Fultz (admitted *pro hac vice*)
Jennifer Metzger Stinnett (admitted *pro hac vice*)
FULTZ MADDOX DICKENS PLC
2700 National City Tower
Louisville, Kentucky 40202
Telephone: (502) 588-2000
Facsimile: (502) 588-2020
bfultz@fmdlegal.com
jstinnett@fmdlegal.com

-and-

Gregory M. Sudbury
Texas Bar No. 24033367
Rachel Lee Hytken
Texas Bar No. 24072163
QUILLING, SELANDER, LOWNDS, WINSLETT & MOSER, P.C.
2001 Bryan Street, Suite 1800
Dallas, Texas 75201
(214) 871-2100 (Main)
(214) 871-2111 (Fax)
gsudbury@qslwm.com

*Counsel for Defendant and Counterclaim Plaintiff Orr Safety Corporation*

**CERTIFICATE OF SERVICE**

      On February 19, 2016 I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all counsel of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

                                              s/ Jennifer Metzger Stinnett
                                              Counsel for Defendant and Counterclaim Plaintiff