UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| IRONCLAD PERFORMANCE WEAR CORPORATION,<br><br>    Plaintiff,<br><br>v.<br><br>ORR SAFETY CORPORATION,<br><br>    Defendant | Case No. 3:15-cv-03453-D |

# IRONCLAD'S MOTION FOR PROTECTION/MOTION TO QUASH WITH BRIEF IN SUPPORT

**TABLE OF CONTENTS**

Table of Contents .................................................................................................................................ii

Table of Authorities ............................................................................................................................ iii

Overview ................................................................................................................................................ 1

Factual Background .............................................................................................................................. 3

      A.  The Parties' Distribution Agreement ................................................................................. 3

      B.  ORR's Alleged Breaches and the Parties' Claims and Counterclaims ....................... 4

      C.  The Court's Scheduling Order ............................................................................................ 5

      D.  ORR's Preliminary Injunction Motion ............................................................................. 5

      E.  ORR's 30(b)(6) Deposition Notice ..................................................................................... 6

      F.  The Meet and Confer Process and ORR's Clarification of the Requested Injunctive Relief 6

Argument................................................................................................................................................ 7

    I.  Protective Orders May Be Granted for Good Cause ...................................................... 7

    II.  A protective is warranted to prevent ORR from questioning Ironclad on trade dress issues related to confusion between the KONG Gloves and Vibram Gloves, because such issues are irrelevant to the preliminary injunction............................................................................................ 8

      A.  The preliminary-injunction issues revolve around the six solicitation letters and ORR's distribution network, and should not stray far afield. ................................................................. 8

      B.  The trade dress issues are irrelevant to the preliminary injunction issues because, by choosing not to enjoin the sale of the Vibram gloves, ORR waived the only remedy that it could possibly obtain for trade dress infringement at the preliminary injunction stage. ......... 9

      C.  Unless and until ORR demonstrates that it owns the trade-dress rights to the KONG gloves, the trade dress issues are not yet ripe—and indeed will not become ripe until after the preliminary injunction is briefed and decided. ................................................................... 10

    III.  Even if the trade dress issues are relevant, a protective order should be granted because the burden on Ironclad to produce a witness on the issue is disproportionate to the benefit of the testimony............................................................................................................................... 13

Conclusion ........................................................................................................................................... 14

Certificate of Conference.................................................................................................................. 15

Certificate of Service.......................................................................................................................... 15

# TABLE OF AUTHORITIES

**Cases**

*Amazing Spaces Inc. v. Metro Mini Storage,*
  608 F.3d 225 (5th Cir. 2010) ............................................................................................................ 10

*Ferrari S.P.A. Esercizio Fabriche Automobili E Corse v. Roberts,*
  944 F.2d 1235 (6th Cir. 1991) .......................................................................................................... 10

*Gen. Motors Co. v. Urban Gorilla, LLC,*
  2010 U.S. Dist. LEXIS 136711 (D. Utah Dec. 27, 2010) ................................................................ 10

Hoffman v. L&M Arts,
  2013 U.S. Dist. LEXIS 24170 (N.D. Tex. 2013) ............................................................................... 7

Landry v. Air Line Pilots Ass'n,
  901 F.2d 404, 435 (5th Cir. 1990) ..................................................................................................... 7

Martin v. Allstate Insurance Co.,
  292 F.R.D. 361 (N.D. Tex. 2013) ...................................................................................................... 8

Pebble Beach Co. v. Tour 18 I,
  155 F.3d 526 (5th Cir. 1998) ........................................................................................................... 10

Plaintiff Ironclad Performance Wear Corp. ("Ironclad") respectfully moves for a protective order against Defendant ORR Safety Corp.'s ("ORR") Rule 30(b)(6) deposition that seeks testimony on topics that are beyond the scope of the Court's February 26, 2016 order granting expedited discovery on issues relevant to ORR's motion for injunctive relief. Specifically, Ironclad seeks protection from preparing and presenting a witness to testify on trade dress issues related to its separate lines of "KONG" and "Vibram" gloves.

**OVERVIEW**

On Tuesday, April 12, Defendant ORR is scheduled to take the corporate deposition of Plaintiff Ironclad. This deposition was noticed pursuant to this Court's order on February 26, 2016, which provided for limited discovery into topics relevant to ORR's motion for injunctive relief and is a topic that the parties have been meeting and conferring about on an ongoing basis since March 8, 2016. (*See*, Ex. 1.) Ironclad files this motion for protection to preclude ORR from using a limited, court-ordered, expedited deposition in aid of a preliminary injunction to depose Ironclad on issues pertaining to the trade dress of Ironclad's KONG gloves and Vibram gloves. Such trade dress issues are irrelevant to the preliminary-injunction issues and accordingly outside the scope of discovery the Court ordered. The issues are irrelevant because the gravamen of ORR's motion seeking injunctive relief revolves entirely around ORR's assertion that Ironclad has misappropriated aspects of ORR's supposed trade-secret protected distribution network (which Ironclad categorically denies), and purports to be based on *six* solicitation letters that Ironclad sent to entities that ORR claims are part of that alleged confidential distribution network. Based on these six letters, ORR now seeks to expand the scope of expedited discovery to include nearly every aspect of this litigation, regardless of the relevance to the solicitation letters or ORR's distribution network. Those six letters and the distribution network should be the limit of the expedited discovery.

1

Currently, the parties disagree over the scope of the Court's February 26 order granting expedited discovery. Ironclad believes that the expedited discovery is limited to the solicitation letters and whether Ironclad improperly contacted ORR's distribution network, which is the only material change in the status quo between the parties since ORR filed its counterclaims in October 2015. By contrast, judging by the scope of ORR's **22 deposition topics and 63 requests for production,** ORR believes that the scope of expedited discovery includes not only issues surrounding the solicitation letters and distribution network, but every aspect of Ironclad's affirmative claims that ORR breached the parties' agreement.[1] ORR reasons that it must disprove those breaches at the preliminary injunction stage to show a "likelihood of success on the merits." But ORR's interpretation is unworkable because it would require Ironclad to litigate its affirmative claims <u>before</u> ORR has provided any meaningful discovery on the issues. Moreover, ORR's claims that the trade dress issues are relevant to the preliminary-injunction issues are inconsistent with representations that ORR made during the meet and confer process and the injunctive relief it seeks. And even if relevant, the benefit of testimony on the trade dress issues would be disproportionate to the burden it would put on Ironclad.

Given the disagreement between the parties, Ironclad requests an expedited oral hearing so that the Court can clarify the scope of expedited discovery and permitted topics for the April 12 deposition. Ironclad submits that a short hearing on the issue will obviate the need for further briefing on the issue and prevent future discovery disputes that will inevitably occur without the Court's guidance.

---

[1] *See* ORR's amended 30(b)(6) deposition notice, attached to Ironclad's Appendix in support of this motion (Ex. 2, IC APP 5–12). The discovery requests ORR served pursuant to the Court's expedited discovery, Ex. 3, IC APP 13–32.

2

**FACTUAL BACKGROUND**

This case involves multiple claims and counterclaims. For the purposes of this motion, the pertinent facts are as follows:

**A. The Parties' Distribution Agreement**

Farmer's Branch, Texas-based Ironclad manufactures and distributes a wide-variety of gloves for a wide range of work environments. Among those gloves, is a product line known as "KONG." KONG gloves are marketed to the oil and gas industry and branded with the KONG trademark. The KONG gloves contain thermoplastic rubber on the back of hand/fingers (dorsal protection) and other characteristics that protect the hand from impact. Ironclad also developed and sells non-KONG gloves, which do not bear the KONG trademark, to the oil and gas industry. Some of these non-KONG gloves include gloves that use a proprietary palm technology that Ironclad developed in conjunction with footwear/sole developer "Vibram" as well as a patented design on the back of the hand to make the gloves more visible from a distance. This brief refers to these non-KONG gloves as Ironclad's "Vibram gloves."

Defendant ORR is based in Louisville, Kentucky and is a distributor of a wide range of personal protection equipment, including gloves.

In January 2009, Ironclad and ORR entered into a distributorship agreement. The agreement appointed ORR as the exclusive distributor for KONG gloves.[2] In exchange for being granted the exclusive distributor, ORR promised not to sell or distribute products that were designed or marketed for the "petrochemical and offshore exploration markets" that were substantially similar to or competed with the KONG gloves. (*See* Ironclad's Sealed Appendix in support of this motion, Distribution Agreement, Ex. 4 § 2.1, IC APP 35.) The agreement also

---

[2] There were certain situations in which Ironclad could sell KONG gloves directly, but those situations are irrelevant to this Motion.

obligated ORR to use its best efforts to market the KONG gloves, which included maintaining an adequate sales staff, developing a marketing plan with Ironclad, and preserving the KONG brand's goodwill. (*Id.* at § 5.1.) Section 7.2 of the agreement provided that if Ironclad "determine[d] to terminate" the agreement for any reason other than ORR's "material breach" or ORR's failure to "observe or perform any of the terms" of the distribution agreement, ORR would receive the KONG trademarks. (*Id.* at § 7.2.).  As discussed in greater detail below, the *sole reason* Ironclad determined to terminate the distributorship agreement was as a result of ORR's breaches.

### B. ORR's Alleged Breaches and the Parties' Claims and Counterclaims

Years into the distribution agreement, Ironclad learned that ORR was selling gloves to companies in the petrochemical or offshore exploration markets that competed with the KONG gloves, in violation of § 2.1 of the agreement. Also, Ironclad believed that ORR had violated § 5.1 of the agreement through sub-standard sales, marketing and distribution efforts. In September 2015, Ironclad filed suit alleging, among other things, that ORR violated § 2.1 and § 5.1. On the basis of these breaches, Ironclad terminated the agreement pursuant to § 7.2 of the agreement.

In October 2015, ORR removed and filed numerous counterclaims, including a claim based on trade dress (Count 9 of ORR's Counterclaims). The trade dress claim depends on the following multi-part syllogism: a) Ironclad terminated the agreement, b) Ironclad did not "determine to terminate" the agreement for reasons having to do with what Ironclad believed were ORR's breaches—that is, the reasons given for termination were allegedly not genuine, c) therefore ORR obtained the trademark to the KONG gloves, d) Ironclad's Vibram gloves infringe the KONG trade dress and are confusingly similar, and e) the KONG brand is being diluted.

Despite the fact that ORR counterclaimed for trade dress infringement, in its counterclaim ORR did not seek to enjoin Ironclad from advertising the KONG gloves together with the Vibram gloves. ORR decided not to seek injunctive relief despite ORR knowing that Ironclad was selling the

Vibram gloves and that Ironclad was marketing the KONG gloves and Vibram gloves at the same time. And there was no claim that advertising the KONG and Vibram gloves together caused irreparable harm necessitating injunctive relief.

### C. The Court's Scheduling Order

When the parties met and conferred pursuant to Rule 26(f), Ironclad sought to stage discovery so that it could seek discovery pertaining to its allegations that ORR breached § 2.1 of the agreement—ORR's duty not to sell or market gloves that competed with the KONG gloves. Ironclad sought early discovery on this issue because, if Ironclad could prove that ORR breached the agreement, the bulk of ORR's counterclaims would be mooted without the need to conduct unnecessary discovery. ORR opposed the staged discovery. The scheduling order the Court issued did not stage discovery.

### D. ORR's Preliminary Injunction Motion

On February 19, 2016, ORR filed a motion for a temporary restraining order and preliminary injunction. The purported and stated impetus for the filing was that ORR learned that Ironclad had sent letters to certain entities (6 entities) noting that Ironclad had terminated the distribution agreement with ORR and that the recipients of the letter could purchase KONG gloves (as well as other gloves, including the Vibram gloves) from Ironclad directly. (*See* Doc. 31 at 9 ("Orr Safety now seeks injunctive relief because Ironclad has recently attempted to misappropriate ORR Safety's confidential distributor network and directly sell KONG gloves and the KONG Vibram Counterfeit gloves to these 'customers' of ORR Safety.").) ORR contends that that recipients of the letters were part of its confidential distributor network, and that Ironclad relied on information from ORR to contact the distributors. ORR's TRO sought to enjoin Ironclad from "soliciting [ORR's] confidential distributor network." ORR also sought expedited discovery.

5

The Court ruled on the TRO by carrying it with the preliminary injunction motion. (Doc. 45.) The Court granted expedited discovery, which it "limited in scope to that which is reasonably necessary for a party to support or oppose Orr's motion for a preliminary injunction." (*Id.*)

### E. ORR's 30(b)(6) Deposition Notice

On March 8, 2016, ORR noticed the Rule 30(b)(6) deposition for issues purportedly pertaining to the preliminary injunction. After extensive meet and confer efforts, ORR serviced its most recent 30(b)(6) deposition notice on March 31, 2016. (Ex. 2, IC APP 5–12.) The deposition is currently scheduled for April 12, 2016. In the notice, numerous topics were listed that sought testimony on issues of KONG and Vibram gloves' respective trade dresses.

### F. The Meet and Confer Process and ORR's Clarification of the Requested Injunctive Relief

The parties met in a series of written and telephonic communications from March through April. The parties conferred through counsel for Ironclad (Mr. Sherman, Mr. Kamelgard, Mr. Charest, and Mr. Thompson) and counsel for ORR (Mr. Fultz and Ms. Stinnett).

During a meet and confer on March 24, 2016, ORR confirmed that, notwithstanding any trade dress claims asserted in the counterclaims and discussion of trade dress in the complaint, for purposes of preliminary injunction, ORR was not seeking to enjoin the sale of the Vibram gloves. Rather, ORR was only seeking to enjoin the sale of the Vibram gloves to ORR's "distributor network" and advertising the Vibram and KONG gloves together.[3] ORR sent a follow-up email confirming such details, which provided, in pertinent part:

> [Y]ou all asked for written confirmation regarding exactly what ORR's injunctive relief is specifically asking to prevent and whether or not we want IC to stop manufacturing or selling all gloves. Taking directly from the Reply (DN 41), Orr has asked the court for an order preventing Ironclad from:

---

[3] ORR also sought certain guarantees related to minimum pricing, an issue Ironclad believes is irrelevant to this motion for protection.

> "soliciting its confidential distributor network and confusingly (and tortiously) advertising the KONG gloves together with the KONG Vibram Counterfeit so as to infringe upon, misappropriate, and dilute the KONG trade dress. . . ." This is consistent with our discussion wherein I represented that Orr was not trying to prevent Ironclad from selling KONG or the Disputed Gloves, just that it couldn't sell to Orr's Distribution Network, couldn't advertise KONG and the Disputed Gloves together, and that it would give Orr the same pricing that was in place prior at the beginning of litigation throughout the course of the litigation.

(March 24, 2016 email from Jennifer Stinnett to counsel for Ironclad, Ex. 5, IC APP 54–55.)

On April 5, 2016, Ironclad served its formal objections to the amended 30(b)(6) notice. On April 6, 2016, ORR informed Ironclad that it intended to proceed with the deposition topics as listed in the amended notice. The parties have been unable to resolve the objections despite their good faith efforts. Accordingly, Ironclad submits this Motion for Protection/Motion to Quash.

## ARGUMENT

### I. Protective Orders May Be Granted for Good Cause

A court has good cause to issue a protective order when the order will protect a party from "annoyance, embarrassment, oppression, or undue burden or expense." FED. R. CIV. P. 26(c)(1); *Landry v. Air Line Pilots Ass'n*, 901 F.2d 404, 435 (5th Cir. 1990). Pursuant to Federal Rule 26, courts issue protective orders to protect defendants from the "undue burden" and "expense" of presenting a 30(b)(6) witness to testify about topics that are unrelated to the plaintiff's claims. In *Hoffman v. L&M Arts*, the court issued a protective order precluding the plaintiff from deposing the defendant's corporate representative regarding business relationships and transactions that were "not relevant and discoverable." *See* No. 10-cv-0953, 2013 U.S. Dist. LEXIS 24170, at *10 (N.D. Tex. 2013) (Fitzwater, J.). In *Martin v. Allstate Insurance Co.*, the court issued a protective order preventing the plaintiff in an employment discrimination case from obtaining discovery regarding

7

certain company policies because the policies were "irrelevant" to the plaintiff's claims. 292 F.R.D. 361, 363–64, 367 (N.D. Tex. 2013).

## II. A protective is warranted to prevent ORR from questioning Ironclad on trade dress issues related to confusion between the KONG Gloves and Vibram Gloves, because such issues are irrelevant to the preliminary injunction.

Topics 1, 8, 11, and 19–22 all in some way require Ironclad to testify on whether the Vibram gloves infringe the KONG gloves' trade dress[4]. Ironclad should not be forced to testify on such trade dress matters because they are irrelevant to the preliminary-injunction issues.

### A. The preliminary-injunction issues revolve around the six solicitation letters and ORR's distribution network, and should not stray far afield.

Contrary to the breadth of subject matter that ORR raises in its motions seeking injunctive relief, the <u>true</u> subject matter of the TRO and preliminary injunction is the handful (6) of solicitation letters that Ironclad sent to entities that are part of ORR's purported confidential distribution network and the distribution network. (Doc. 31 at 9 ("Orr Safety now seeks injunctive relief because Ironclad has recently attempted to misappropriate ORR Safety's confidential distributor network . . . .").) But rather than limit discovery to those topics, ORR seeks to obtain discovery on a wide range of subject matter, including the trade dress issues, which are only tangentially related to the solicitation letters and distribution network. ORR cannot use these six letters as a means to obtain expedited discovery on subject matter beyond the solicitation letters and distribution network.

To understand that the preliminary injunction issues are limited to the solicitation letters and distribution network, it is instructive to note that, other than the solicitation letters, nothing material has changed in this lawsuit from the time that ORR filed its counterclaims to the filing of the TRO.

---

[4] Topic 1 expressly refers to § 2.1 of the Distribution Agreement, and thus, in part, directly implicates trade dress issues. Topics 8, 11, and 19-22 expressly reference, among other things, development, production, manufacturing, packaging, composition and similarities of the Disputed Gloves and in many instances requested comparisons to the KONG gloves, in all instances fact issues that largely bear on arguments surrounding trade dress and comparisons between the two glove lines.

8

When ORR filed its counterclaims in October 2016, ORR knew that Ironclad was selling the Vibram gloves, and ORR knew what these gloves looked like (ORR had seen them at a tradeshow, on the internet, and even in conversations with Ironclad). Moreover, ORR knew that Ironclad was marketing the Vibram and KONG gloves together. Despite having this knowledge, ORR never sought injunctive relief on the issue. ORR cannot credibly claim issues concerning the marketing and advertising of the two lines of gloves suddenly became the subject matter of injunctive relief based on a nexus between a handful of solicitation letters and a supposedly confidential distribution network.

Because the only change in the status quo for the time period between ORR's filing of the counterclaims and the motion for injunctive relief was the solicitation letters, the expedited discovery should be limited to topics relevant to those letters and ORR's distribution network. ORR's attempt to bring the bulk of the case within the scope of the expedited discovery is improper bootstrapping, and the Court should reject such attempts.

**B. The trade dress issues are irrelevant to the preliminary injunction issues because, by choosing not to enjoin the sale of the Vibram gloves, ORR waived the only remedy that it could possibly obtain for trade dress infringement at the preliminary injunction stage.**

When asked for clarification on the injunctive relief that ORR was seeking through its preliminary injunction motion, ORR stated that it "was not trying to prevent Ironclad from selling KONG or the Disputed Gloves, just that it couldn't sell to Orr's Distribution Network, couldn't advertise KONG and the Disputed Gloves together." (Stinnett email, Ex. 5, IC APP 54–55.) By this representation, ORR waived the sole remedy available to it at the preliminary injunction stage for trade dress infringement, therefore rendering deposition testimony and discovery on the trade dress issues irrelevant to the preliminary injunction.

9

"The purpose of trade dress protection, like trademark protection, is to secure the owner of the trade dress the goodwill of his business and to protect the ability of consumers to distinguish among competing products." *Amazing Spaces Inc. v. Metro Mini Storage,* 608 F.3d 225, 251 (5th Cir. 2010) (internal quotation marks omitted). "With trade dress, the question is whether the combination of features creates a distinctive visual impression, identifying the source of the product." *Pebble Beach Co. v. Tour 18 I*, 155 F.3d 526, 536 (5th Cir. 1998) (citation omitted). "[L]iability for trademark and trade-dress infringement hinges upon whether a likelihood of confusion exists in the minds of potential consumers as to the source, affiliation, or sponsorship of the defendant's product or service due to the use of the allegedly infringing marks or trade dress." *Pebble Beach,* 155 F.3d at 536–537.

At the preliminary injunction stage, the only remedy available to "the owner of the trade dress goodwill" is an order enjoining the sale of the infringing products in order to prevent dilution the trade dress. *See Amazing Spaces*, 608 F.3d at 251; *see also Ferrari S.P.A. Esercizio Fabriche Automobili E Corse v. Roberts*, 944 F.2d 1235, 1240, 1247–48 (6th Cir. 1991) (enjoining sale of infringing products to prevent dilution of trade dress); *Gen. Motors Co. v. Urban Gorilla, LLC*, No. 06-cv-00133, 2010 U.S. Dist. LEXIS 136711, at *76 (D. Utah Dec. 27, 2010) (same). Because ORR waived its right to enjoin the sale of the Vibram gloves, there is no remedy that the Court could grant at the preliminary injunction stage. Because there are no such remedies available, the trade dress issues are irrelevant for purposes of the preliminary injunction and the motion for protection should be granted.

**C. Unless and until ORR demonstrates that it owns the trade-dress rights to the KONG gloves, the trade dress issues are not yet ripe—and indeed will not become ripe until after the preliminary injunction is briefed and decided.**

The Court should reject ORR's strategic attempt to prematurely litigate the alleged breaches § 2.1 and § 5.1 in hopes of deciding the core issues in the case before Ironclad has ever had an opportunity to conduct meaningful discovery.

The trade dress issues on which ORR seeks to depose Ironclad only become ripe if ORR owns the KONG trademark. But for Ironclad to own the KONG mark, it must "check" each box of the multi-part syllogism noted above: a) Ironclad terminated the agreement, b) Ironclad did not have a basis to terminate the agreement and rather terminated it on pretextual grounds, c) ORR obtained the trademark to the KONG gloves, d) Ironclad's Vibram gloves infringe the KONG trade dress, and e) therefore the KONG brand is being diluted.

The problem for ORR is that the preliminary-injunction issues, which only touch on the solicitation letters and the distribution network, do not implicate any part of the syllogism noted above. Specifically, for ORR to receive the intellectual property rights in the KONG brand, it must show that Ironclad determine[d] to terminate" the agreement for something other than ORR's alleged breaches of § 2.1 and § 5.1, *i.e.*, that Ironclad's determination of ORR having breached the agreement was not genuine, or pretextual. But litigating the validity of Ironclad's decision to terminate the contract at the preliminary-injunction stage—through the use of expedited discovery—is backwards. Ironclad cannot competently testify on (and the Court cannot properly decide) Ironclad's decision to terminate until after Ironclad has had a fair opportunity to seek discovery and fully articulate such claims.

However, Ironclad has not had a fair opportunity to articulate the breaches of § 2.1 and § 5.1—and indeed will not have a fair opportunity until after the expedited discovery has closed and briefing on the preliminary injunction has closed. So far, ORR has produced zero documents in response to Ironclad's discovery requests, which Ironclad served on January 26, 2016. And ORR has not produced any documents relating to an agreement between the parties to search certain custodians for specific search terms. (*See* April 5 Letter from Corey Shapiro to Will Thompson describing document production, Ex. 6, IC APP 64.) Nor has Ironclad had the ability to depose any

11

witnesses. Ironclad had scheduled the 30(b)(6) deposition of ORR in February, but the deposition was postponed because of a death in the family of ORR's corporate representative.

The discovery that Ironclad has thus far been unable to obtain—through no fault of its own—is needed to prove the breaches of § 2.1 and § 5.1 and for ORR to prove that Ironclad's decision to terminate the contract was pretextual. Because ORR has not provided Ironclad with meaningful discovery on breaches of § 2.1 and § 5.1, ORR should not be able point to Ironclad's purported inability articulate evidence of such breaches at the preliminary injunction stage as evidence of its likelihood of success of defeating those claims. Indeed, it would be unjust for ORR to argue in its preliminary injunction motion that Ironclad cannot prove that ORR breached § 2.1 and § 5.1 (purportedly which would result in ORR owning the KONG brand), if ORR has not provided any meaningful discovery on the issues.

Ironclad notes that it is not advocating that § 2.1 and § 5.1 be squeezed into the expedited discovery. Discovery on both issues is complex. As to section § 2.1—ORR's alleged sale of gloves that competed with the KONG gloves—Ironclad must receive discovery on the models of gloves that ORR sold, the buyers of such gloves (for example, whether the gloves were sold to companies in the petrochemical or offshore exploration industry), and the way in which ORR described the gloves. Thus far, as demonstrated above, Ironclad has been extremely limited in its ability to gather this information.

As to the allegations that ORR breached § 5.1's failure to market, Ironclad requires, among other things, to depose ORR's salespeople on the issue and review documents on ORR's marketing efforts. Like the issues pertaining to § 2.1, ORR has provided no meaningful discovery on the issue.

Accordingly, evidence concerning the alleged breaches of § 2.1 and § 5.1 and Ironclad's decision to terminate the agreement should be addressed on the normal discovery track, not the expedited track. And if the Court correctly concludes that § 2.1 and § 5.1 cannot be litigated at the

preliminary injunction stage, it should also find that the trade dress claims cannot be litigated either because a determination of whether ORR breached § 2.1 and § 5.1 is the threshold issue to the trade dress issues. That is, the trade dress issues are not ripe until after ORR has proven that Ironclad's termination of the agreement was pretextual. That question cannot be decided until after discovery has closed on the non-expedited discovery.

III. **Even if the trade dress issues are relevant, a protective order should be granted because the burden on Ironclad to produce a witness on the issue is disproportionate to the benefit of the testimony.**

Federal Rule of Civil Procedure 26, as recently amended, instructs courts to consider the discovery's proportionality to the needs of the case, and specifically the following six factors: (1) the importance of the issues at stake in the action; (2) the amount in controversy; (3) the parties' relative access to relevant information; (4) the parties' resources; (5) the importance of the discovery in resolving the issues; and (6) whether the burden or expense of the proposed discovery outweighs its likely benefit. FED. R. CIV. P. 26(b)(1).

As to the first factor—importance of the factors at stake (*i.e.* relevance)—this motion has set forth the reasons why the trade issues irrelevant. For brevity, Ironclad will not restate them and instead incorporates them by reference.

The "relative access to relevant information" and relative benefit of the discovery also weighs in favor of Ironclad. The trade dress issues will mostly rise and fall on the appearance of the gloves themselves, which have already been produced. So, ORR already has the overwhelming majority of trade dress evidence, and the added benefit that ORR would get from deposing Ironclad on the topic would be minimal. Yet, the burden on Ironclad would be disproportionate to any purported benefit to ORR. On the trade dress issues, Ironclad must prepare and present a separate witness than the witness who will be testifying to the rest of the topics. Ironclad is a smaller company where the time and expense of preparing an additional witness is not trivial.

In sum, when the small benefit that ORR would get from deposing Ironclad on the trade-dress issue is compared to the burden on Ironclad, the Court should conclude that requiring Ironclad to present a witness on the trade dress issue would be disproportionate under the Rule 26(b)(1) factors.

## CONCLUSION

For the reasons set forth above, Ironclad respectfully requests that the Court issue a protective order precluding ORR from deposing Ironclad on topics related to the trade dress of the KONG gloves and Vibram gloves.

Dated: April 6, 2016

/s/ *Michael A. Sherman*
Michael A. Sherman (Cal. Bar No. 94783)
(admitted pro hac vice)
Barak Kamelgard (Cal. Bar. No. 298822)
(admitted pro hac vice)
STUBBS ALDERTON & MARKILES, LLP
15260 Ventura Boulevard, 20th Floor
Sherman Oaks, California 91403
Telephone: (818) 444-4500
Facsimile: (818) 444-4520
masherman@stubbsalderton.com
bkamelgard@stubbsalderton.com

Daniel H. Charest
State Bar No. 24057803
Will Thompson
State Bar No. 24094981
BURNS CHAREST LLP
500 North Akard Street, Suite 2810
Dallas, Texas 75201
Telephone: (469) 904-4550
Facsimile: (469) 444-5002
dcharest@burnscharest.com
wthompson@burnscharest.com

*Attorneys for Plaintiff/Counterclaim Defendant*

## CERTIFICATE OF CONFERENCE

In a series of written and telephonic communications in March and April, the parties conferred through counsel for Ironclad (Mr. Sherman, Mr. Kamelgard, Mr. Charest, and Mr. Thompson) and counsel for ORR (Mr. Fultz and Ms. Stinnett) on the issue of the 30(b)(6) deposition, including the issues raised in this motion.

/s/ *Michael A. Sherman*
Michael A. Sherman

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing instrument has been served on this day April 6, 2016, via the Court's ECF system as indicated below:

Benjamin C. Fultz (admitted pro hac vice)
Jennifer Metzger Stinnett (admitted pro hac vice)
FULTZ MADDOX DICKENS PLC
2700 National City Tower
Louisville, Kentucky 40202
Telephone: (502) 588-2000
Facsimile: (502) 588-2020
bfultz@fmdlegal.com
jstinnett@fmdlegal.com

Gregory M. Sudbury
Rachel Lee Hytken
QUILLING, SELANDER, LOWNDS, WINSLETT & MOSER, P.C.
2001 Bryan Street, Suite 1800
Dallas, Texas 75201
Telephone: (214) 871-2100
Facsimile: (214) 871-2111
gsudbury@qslwm.com
rhytken@qslwm.com

Daniel H. Charest