IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IRONCLAD PERFORMANCE WEAR CORPORATION, | § § § | |
| Plaintiff, | § § | |
| v. | § § | No. 3:15-cv-03453-D |
| ORR SAFETY CORPORATION, | § § § | |
| Defendant. | § § § | |

**APPENDIX IN SUPPORT OF IRONCLAD'S MOTION FOR
PROTECTION/MOTION TO QUASH**

Plaintiff Ironclad Performance Wear Corporation submits this Appendix in Support of

Ironclad Performance Wear Corporation's Motion for Protection/Motion to Quash.

| Ex. No. | Description | Appendix Page Range |
|---|---|---|
| 1 | Email correspondence re "Emailing: ORR's 30b6 of IC for PI Discovery" between Jennifer Stinnett, Daniel Charest, Will Thompson, Barak Kamelgard, Michael Sherman, Andrew Bynum, Ben Fultz, Twila Carson and Amy Hoagland, dated March 8, 2016. | IC APP 000001– IC APP 000004 |
| 2 | Orr Safety Corporation's Amended Notice of Rule 30(b)(6) Deposition of Ironclad Performance Wear Corporation, dated March 31, 2016. | IC APP 000005 – IC APP 000012 |
| 3 | Orr Safety Corporation's Expedited Discovery Requests to Ironclad Performance Wear Corporation, with accompanying cover letter, dated March 8, 2016. | IC APP 000013 – IC APP 000032 |
| 4 | Exhibit Filed under Seal. | - |
| 5 | Email from Jennifer Stinnett to Michael Sherman et al. re "Orr-Ironclad," dated March 24, 2016. | IC APP 000053 – IC APP 000062 |
| 6 | Letter from Corey Shapiro to Will Thompson, dated April 5, 2016. | IC APP 000063 – IC APP 000065 |
| 7 | Plaintiff's First Set of Discovery to Defendant ORR Safety Corporation, dated January 26, 2016. | IC APP 000066 – IC APP 000080 |

Dated: April 6, 2016.

Respectfully submitted,


/s/ Michael A. Sherman
Michael A. Sherman (Cal. Bar No. 94783)
(admitted *pro hac vice*)
Barak Kamelgard (Cal. Bar. No. 298822)
(admitted *pro hac vice*)
STUBBS ALDERTON & MARKILES,
LLP
15260 Ventura Boulevard, 20th Floor
Sherman Oaks, California 91403
Telephone (818) 444-4500
Facsimile: (818) 444-4520
masherman@stubbsalderton.com
bkamelgard@stubbsalderton.com

Daniel H. Charest
State Bar No. 24057803
Will Thompson
State Bar No. 24094981
BURNS CHAREST LLP
500 North Akard Street, Suite 2810
Dallas, Texas 75201
Telephone: (469) 904-4550
Facsimile: (469) 444-5002
dcharest@burnscharest.com
wthompson@burnscharest.com

Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing instrument has been served

on this day April 6, 2016, via the Court's ECF system as indicated below:

Benjamin C. Fultz (admitted pro hac vice)
Jennifer Metzger Stinnett (admitted pro hac vice)
FULTZ MADDOX DICKENS PLC
2700 National City Tower
Louisville, Kentucky 40202
Telephone: (502) 588-2000
Facsimile: (502) 588-2020
bfultz@fmdlegal.com
jstinnett@fmdlegal.com

Gregory M. Sudbury
Rachel Lee Hytken
QUILLING, SELANDER, LOWNDS, WINSLETT & MOSER, P.C.
2001 Bryan Street, Suite 1800
Dallas, Texas 75201
Telephone: (214) 871-2100
Facsimile: (214) 871-2111
gsudbury@qslwm.com
rhytken@qslwm.com

_____
Daniel H. Charest

# Exhibit 1

IC APP 000001

**Subject:** Re: Emailing: ORR's 30b6 of IC for PI Discovery (01299838xB3E85).PDF
**Date:** Tuesday, March 8, 2016 at 7:48:19 PM Central Standard Time
**From:** Daniel Charest
**To:** Jennifer Metzger Stinnett
**CC:** Will Thompson, Barak Kamelgard (bkamelgard@stubbsalderton.com), Michael Sherman (masherman@stubbsalderton.com), Andrew Bynum, Ben Fultz, Twila Carson, Amy Hoagland
**Attachments:** image001.jpg

Understood, Jenny. We disagree on scope, of course. But let's chat tomorrow. Thanks.

Daniel H. Charest
469.904.4555 direct
214.681.8444 mobile

On Mar 8, 2016, at 19:42, Jennifer Metzger Stinnett <jstinnett@fmdlegal.com> wrote:

> This did not constitute the official notice – it was only to provide areas of inquiry so that Ironclad knew who it needed it for its corporate rep(s).  As we left the call, you all were going to check on March 21, 22, or 25 (after stating the 18 and 24 did not work), and we were going to check with our client to determine whether or not waiting until April was acceptable (based on the caveat discussed regarding Ironclad waiving the timeliness argument relating to not filing the motion for PI until post deposition).
>
> As to the areas, we believe these all go to the motion for preliminary injunction and the deposition allowed in the court's order relating to expedited discovery.  Of course, one of the TRO/PI requirements is likelihood of success on the merits, so I understand why there may be confusion as to areas for this 30b6 and the litigation generally.
>
> Finally, let me get with Ben and figure out availability tomorrow.
>
> Jenny
>
> <image001.jpg>
>
> ***Jennifer Metzger Stinnett***
> 101 South Fifth Street, 27th Floor
> Louisville, KY 40202
> *Main:* 502.588.2000
> *Direct:* 502.588.2026
> *Fax:* 502.588.2020
> jstinnett@fmdlegal.com
> www.fmdlegal.com

IC APP 000002

**From:** Daniel Charest [mailto:dcharest@burnscharest.com]
**Sent:** Tuesday, March 08, 2016 8:10 PM
**To:** Jennifer Metzger Stinnett; Will Thompson; Barak Kamelgard (bkamelgard@stubbsalderton.com);
Michael Sherman (masherman@stubbsalderton.com); Andrew Bynum
**Cc:** Ben Fultz; Twila Carson; Amy Hoagland
**Subject:** Re: Emailing: ORR's 30b6 of IC for PI Discovery (01299838xB3E85).PDF

Upon further review of this document, Ben and Jenny, I realize we need to talk
tomorrow. I will make myself available at your convenience, so please just tell me
when. But it is important that we talk tomorrow.

Relatedly, I understand that 4/5 is better than 4/4 with respect to the scheduled
date we discussed today. But our discussion tomorrow will impact that too, I
expect.

Thanks.

**Daniel H. Charest**
469.904.4555 direct
214.681.8444 mobile

**From:** Daniel Charest <dcharest@burnscharest.com>
**Date:** Tuesday, March 8, 2016 at 5:51 PM
**To:** Jennifer Metzger Stinnett <jstinnett@fmdlegal.com>, Will Thompson
<wthompson@burnscharest.com>, Barak Kamelgard <bkamelgard@stubbsalderton.com>,
"Michael Sherman (masherman@stubbsalderton.com)" <masherman@stubbsalderton.com>,
Andrew Bynum <abynum@burnscharest.com>
**Cc:** Ben Fultz <bfultz@fmdlegal.com>, Twila Carson <tcarson@fmdlegal.com>, Amy Hoagland
<ahoagland@fmdlegal.com>
**Subject:** Re: Emailing: ORR's 30b6 of IC for PI Discovery (01299838xB3E85).PDF

> Jennifer,
>
> Please confirm for me that this document does **not** constitute ORR's deposition
> notice but, instead, is provided to show the list of topics. As we discussed today
> (before you sent this notice), Mr. Cordes (the person most involved with the
> TRO/PI issues ) cannot give a deposition on March 18. Also, my initial review
> suggests that this notice may be a more generalized deposition (i.e., not limited
> to the issues pertaining to the TRO/PI). Is that correct?
>
> Thanks.
>
> **Daniel H. Charest**
> 469.904.4555 direct
> 214.681.8444 mobile

**From:** Jennifer Metzger Stinnett <jstinnett@fmdlegal.com>
**Date:** Tuesday, March 8, 2016 at 3:34 PM
**To:** Daniel Charest <dcharest@burnscharest.com>, Will Thompson <wthompson@burnscharest.com>, Barak Kamelgard <bkamelgard@stubbsalderton.com>, "Michael Sherman (masherman@stubbsalderton.com)" <masherman@stubbsalderton.com>, Andrew Bynum <abynum@burnscharest.com>
**Cc:** Ben Fultz <bfultz@fmdlegal.com>, Twila Carson <tcarson@fmdlegal.com>, Amy Hoagland <ahoagland@fmdlegal.com>
**Subject:** Emailing: ORR's 30b6 of IC for PI Discovery (01299838xB3E85).PDF

Daniel –

Here are Orr's TRO/PI 30b6 areas of inquiry I thought was sent out yesterday for your review.  Let us know what you find out about the 21, 22 or 25th.

I will be sending the email on the rolling production shortly.

Jenny

# Exhibit 2

IC APP 000005

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

**IRONCLAD PERFORMANCE WEAR**
**CORPORATION,**

      **Plaintiff,**

**v.**

**ORR SAFETY CORPORATION,**

      **Defendant**

**Case No. 3:15-cv-03453-D**

---

**ORR SAFETY CORPORATION'S NOTICE OF RULE 30(B)(6) DEPOSITION OF IRONCLAD**
**PERFORMANCE WEAR CORPORAION**

---

Please take notice that, pursuant to DN-45 and Federal Rule of Civil Procedure 30(b)(6) and the Court's, Defendant ORR Safety Corporation ("ORR Safety") will take the videotaped deposition(s) of Plaintiff Ironclad Performance Wear Corporation ("Ironclad") through one or more of its officers, directors, managing agents, or such other authorized persons who consent to testify on its behalf on Tuesday, April 12, 2016, at 8:00 a.m. at the office of Quilling, Selander, Lownds, Winslett & Moser, P.C., 2001 Bryan Street Suite 1800, Dallas, Texas 75201.

Ironclad has a duty to designate one or more officers, directors, managing agents, or other persons with sufficient knowledge to testify on their behalf on all information known or reasonably available to each on the topics set forth below.  The deposition(s) will be taken for the purpose of discovery pursuant to the Court's Order DN-45 relating to evidence in further support of ORR Safety's Motion for Preliminary Injunction and for all other purposes permitted under the Federal Rules of Civil Procedure. The deposition(s) will be taken before a notary public or other officer authorized by law to administer oaths for use in this litigation as set forth above. The deposition(s) will continue from day to day until completed.

1

**IC APP 000006**

## DEFINITIONS

1.  The terms "YOU" or "YOUR" means Plaintiff Ironclad Performance Wear Corporation ("Ironclad") including, without limitation, any agents and representatives, each person acting or purporting to act on its behalf, each of its predecessors, subsidiaries, and affiliates, and each of its present or former officers, employees, agents, representatives, and attorneys.

2.  The term "Distributorship Agreement" means the Exclusive License and Distributorship Agreement entered into between Ironclad and ORR Safety on January 6, 2009, and as amended, the First Amendment to the Exclusive License and Distributorship Agreement entered into between Ironclad and ORR Safety on January 27, 2015.

3. The term "Disputed Gloves" shall include the following gloves:

1.  Industrial Impact Knit Cut 5
2.  Industrial Impact Low Profile impact - closed cuff Cut 5
3.  Industrial Impact Rigger Cut 5
4.  Industrial impact Rigger Insulated Waterproof
5.  Industrial Impact Arctic Mitt
6.  Industrial Impact Cotton Corded Palm
7.  Industrial Impact High Abrasion Impact
8.  Industrial Impact Knit Cut 5 Grip
9.  Industrial Impact Low Profile Impact - Open Cuff Cut 5
10. Industrial Impact Rigger
11. Vibram Insulated Waterproof
12. Vibram Flame Resistant
13. Vibram O.B.M.
14. Vibram O.B.M. Cut-5
15. Vibram O.B.M. XOR
16. Vibram Rigger
17. Vibram Rigger - Cut 5
18. Vibram Rigger Insulated
19. Ironclad Revolution
20. Knit Cut 5 Sandy Nitrile Dip

4. The terms "concerning" "regarding" and "relating to" mean relating to, supporting, contradicting, summarizing memorializing, describing, evidencing, constituting, containing,

2

IC APP 000007

studying, identifying, analyzing, considering, regarding, explaining, mentioning, showing, discussing, comprising or commenting on.

5. Each of the terms "all," "any," "each," and "every" shall be construed as meaning all, any, each and every.

6. The terms "and" and "or" shall be construed both disjunctively and conjunctively.

7. The term "Distributorship Letter" shall mean the January 27, 2016 letter from Jeff Cordes to members of ORR Safety's Distributor Network for KONG, including, but not limited to (1) Future Concerns Group; (2) Safar Oil Services; (3) Project Sales Corp.; (4) Durasafe Pte Ltd.; (5) K&L Ross; and (6) KMST.

8. The term "Distribution Network" shall mean any of ORR Safety's customers, members of its supply chain, and or end users that Ironclad knows is or was a purchaser of KONG Gloves from ORR Safety. ORR Safety contends the Distribution Network is confidential and proprietary in nature.

## RULE 30(b)(6) TOPICS

Ironclad shall designate one or more officers, directors, managing agents, or persons who consent to testify on its behalf concerning the following subject matters:

1. Sections 1.3,[1] 2.1, 5.1, and 7.6 of the parties' Distributorship Agreement between Ironclad and ORR Safety as discussed in ORR Safety's Motion for Temporary Restraining Order/Preliminary Injunction and all supporting briefs and documentations thereto (DN-28, DN-31 through DN 31-19, DN-35, and DN 36 through DN 36-6), Ironclad's Response in Opposition to ORR Safety's Motion for Temporary Restraining Order/Preliminary Injunction and all supporting documentations thereto (DN-37, DN-28, and DN-39-1 through DN 39-13), and ORR

---

[1] Note that Confidentiality Provision was originally Section 1.1 in the Distributorship Agreement, but was renumbered as Section 1.3 in the Amendment. But the substance was not changed in the Amendment.

IC APP 000008

Safety's Reply in Further Support of its Motion for Temporary Restraining Order/Preliminary Injunction and all supporting documentations thereto (DN-41 and DN-42 through DN-42-3).

2.     The facts relied upon to form the allegations, and to justify the claims asserted as of the date the relevant pleadings were filed, that specifically relate to Sections 1.3, 2.1, 5.1 and 7.6 of the parties' Distributorship Agreement between Ironclad and ORR Safety as set out in: (1) Ironclad's Original Petition, (2) its answer and affirmative defenses to ORR Safety's Counterclaim (DN-12), and (3) its Response in Opposition to ORR Safety's Motion for Preliminary Injunction and all supporting documentations thereto (DN-37, DN-28, and DN-39-1 through DN 39-13).

3.     Ironclad's responses to ORR Safety's requests for Expedited Discovery, served on March 8, 2016.

4.     Documents produced by Ironclad in this matter on or about February 29, 2016 (Ironclad_0000001-Ironclad_0000746), documents produced by Ironclad on or about March 28, 2016 (Ironclad_000747 – Ironclad_001245), documents that will be produced by Ironclad in this matter pursuant to ORR Safety's expedited discovery requests served on March 8, 2016, and any documents attached to ORR Safety's Motion for Temporary Restraining Order/Preliminary Objection (and brief in support), Ironclad's Response in Opposition to ORR Safety's Motion for Preliminary Injunction, and ORR Safety's Reply in Support of its Motion for Temporary Restraining Order/Preliminary Objection.

5.     Ironclad's business operations, organization, ownership, and solvency, from January 1, 2015 to the present.

6.     All technical, manufacturing and practical analysis, or reasoning, and all facts in support of, your allegations that ORR Safety breached Section 2.1 of the Distributorship

4

Agreement, including any and all analysis done to prove that the gloves set out in Paragraph 23 of your Original Petition are "specifically designed and/or marketed for the petrochemical and offshore exploration markets that are substantially similar to, or competitive with [KONG gloves]."

7.     All facts or evidence relied upon by Ironclad in deciding to terminate the Distributorship Agreement on October 7, 2015 due to ORR Safety's alleged breaches of Section 5.1 of the Distributorship Agreement.

8.     All technical, manufacturing and practical analysis, or reasoning, and all facts in support of, your allegations/defenses that the Disputed Gloves do not infringe on KONG Trade Dress, defined as "collectively, the characteristics of the visual appearance of [KONG gloves] or packaging associated therewith and, to the extent permitted under applicable law, any applications therefor, whether registered or not" in the parties' Distributorship Agreement.

9.     All technical, manufacturing and practical analysis, or reasoning, and all facts in support of, your contention that the Court granting ORR Safety's Motion for Preliminary Injunction would "have devastating effects on Ironclad's business" and would result in "millions of dollars in lost sales and would delay a crucial product launch indefinitely" as asserted in your Response in Opposition to ORR Safety's Motion for Temporary Restraining Order (DN-38).

10.     All assertions set out in the Declaration of Jeff Cordes (DN 39-2).

11.     All discussions with any manufacturer regarding the production of any gloves at issue in this litigation, including all KONG gloves (which includes all KONG Dickies gloves) or any of the Disputed Gloves, relating to source materials, timing of production, or prototype of any gloves.

5

**IC APP 000010**

12. All agreements and communications with Vibram regarding KONG gloves (which includes all KONG Dickies gloves) or any of the Disputed Gloves.

13. All facts supporting your defense that Ironclad has not misappropriated ORR Safety's Distribution Network.

14. All facts supporting your claim that you in no way relied on any information gained from your relationship with ORR Safety in preparing, drafting, or sending the Distributor Letter.

15. Any and all meetings between anyone at Ironclad, including Eric Jaeger, and any one at ExxonMobil, from September 2015 to the present.

16. The time frames and basis for deciding to create any of the Disputed Gloves.

17. Actual sales and sales terms for the Disputed Gloves to date.

18. The contract between Vibram and Ironclad.[2]

19. The packaging for KONG gloves and the packaging for the Disputed Gloves.

20. The fabrics and materials, including shared fabrics and materials, used to make KONG gloves and the Disputed Gloves.

21. The elements of U.S. Patent No. 9,241,519 incorporated into KONG gloves and the Disputed Gloves, as well as the other similarities of the KONG gloves and the Disputed Gloves.

22. The development, manufacturing, and marketing of any prototype of the Disputed Gloves.

---

[2] To the extent that this topic implicates confidential and/or sensitive information addressed in the protective order, ORR will take all steps to ensure that such information is not inappropriately disclosed.

IC APP 000011

Respectfully submitted,


 s/ Jennifer Metzger Stinnett

Benjamin C. Fultz (admitted *pro hac vice*)
Jennifer Metzger Stinnett (admitted *pro hac vice*)
FULTZ MADDOX DICKENS PLC
2700 National City Tower
Louisville, Kentucky 40202
Telephone: (502) 588-2000
Facsimile: (502) 588-2020
bfultz@fmdlegal.com
jstinnett@fmdlegal.com

-and-

Gregory M. Sudbury
Texas Bar No. 24033367
Rachel Lee Hytken
Texas Bar No. 24072163
QUILLING, SELANDER, LOWNDS, WINSLETT & MOSER, P.C.
2001 Bryan Street, Suite 1800
Dallas, Texas 75201
(214) 871-2100 (Main)
(214) 871-2111 (Fax)
gsudbury@qslwm.com

*Counsel for Defendant and Counterclaim Plaintiff ORR Safety Corporation*


## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing document was served upon the following counsel via email on March 31, 2016, in accordance with the agreement reached between the parties for electronic service and the Federal Rules of Civil Procedure:


s/ Jennifer Metzger Stinnett
Counsel for Defendant and Counterclaim Plaintiff


7

IC APP 000012

# Exhibit 3

IC APP 000013

Jennifer Metzger Stinnett ▪ 502-588-2026 ▪ jstinnett@fmdlegal.com

March 8, 2016

*Via Email*

Daniel H. Charest
Will Thompson
Burns Charest LLP
500 North Akard Street, Suite 2810
Dallas, TX  75201
dcharest@burnscharest.com
wthompson@burnscharest.com

Barak Kamelgard
Michael Sherman
Stubbs Alderton & Markiles LLP
15260 Ventura Blvd., 20th Floor
Sherman Oaks, CA 91403
bkamelgard@stubbsalderton.com
masherman@stubbsalderton.com

> **RE:    Ironclad Performance Wear Corporation ("Ironclad") v. Orr Safety
> Corporation   ("ORR"), N.D. Tex. Case No. 3:15-cv-03453-D –
> Expedited Discovery**

Dear Counsel:

Please find enclosed ORR's Expedited Requests for Production to Ironclad.  Pursuant to the Court's February 26, 2016 Order (DN-45), responses are due within three (3) business days. ORR interprets "responses" as set out in the Court's Order to include all responsive documents produced concurrently with written responses.  However, as always, ORR is willing to work with Ironclad on the timing if there are insurmountable circumstances preventing production within the timeframe ordered.

As a preemptory matter, ORR takes issues with several of Ironclad's global objections to its previous discovery requests, propounded on December 16, 2015, including, but not limited to:

- General Objection 8 states to the extent a request "calls for disclosure of documents or information created by or received from third parties with whom Plaintiff has agreed to keep information confidential, or third party's trade secrets in Plaintiff's possession that Plaintiff has agreed to keep confidential."  This is not an appropriate objection because the parties have an Agreed Protective Order in place to deal with just these sorts of sensitive   documents,   including   an   attorneys'   eyes   only   designation   for   particular

**IC APP 000014**

March 8, 2016
Page 2

proprietary information that the parties are not comfortable sharing with one another. Therefore, responsive documents must be produced.

- General Objection 11 states that "[r]esponses indicating that available documents will be produced for inspection are not representations or implied representations that any documents exist within Plaintiff's control, custody, or possession that would be responsive to the request." This is an inappropriate objection. Ironclad should know whether or not it has or will have (in its possession, custody, or control) a category of document requested, and making this generic response without actually knowing if it *actually* has available documents is disingenuous, at best, and causes confusion with the discovery requests. To the extent Ironclad says it will produce responsive documents, it must know whether or not such responsive documents exist before saying so.

- Similarly, in many of the responses to the Request for Production, Ironclad responds, after a series of objections, that "Plaintiff will produce responsive documents, not privileged or otherwise protected disclosure, if any, that can be found following a reasonable and diligent search." Similar to General Objection 11, this response is objectionable because Ironclad is required to do a "reasonable and diligent" search as soon as it receives the discovery requests; doing so at some point after the written responses are due to be served is inconsistent with the Federal Rules of Civil Procedure. And in this case, Ironclad received the requests on December 16, 2015, yet ORR is not any closer to getting most of the documents requested now than it was then. These responses must be amended and Ironclad must indicate if it will be producing documents responsive to certain requests, and then it needs to actually produce the documents.

- Ironclad further objects in multiple responses under the "common interest doctrine." ORR believes this is an inappropriate objection, and to the extent Ironclad intends to reassert such an objection, ORR is entitled to know with which entity Ironclad is claiming it has a "common interest," when such a "common interest" began, and what legal support Ironclad has to make such a objection.

- Finally, in many of the responses to the Request for Production, Ironclad objects on the basis that the information requested is "confidential and proprietary information and/or trade secrets." As explained above, due to the Agreed Protective Order that is in place, this objection is inappropriate and responsive documents must be produced.

If Ironclad intends to continue relying on improper objections in response to the Expedited Requests for Production, please advise as soon as possible so that the parties can have the appropriate meet and confer and ORR can then file its motion to compel without further delay.

Second, ORR has re-served many of its First Requests for Production in this Expedited Discovery, *i.e.* Expedited Requests for Production Nos. 41-63 ("Reasserted Requests for

March 8, 2016
Page 3

Production"). ORR did this for two reasons: (1) Ironclad said it would produce responsive documents pursuant to these requests but has still failed to do so even after its first initial production received by ORR on February 29, 2016;[1] or (2) Ironclad gave a blanket refusal to produce the documents based on the meritless objections detailed above.[2] Again, if Ironclad has responsive documents pursuant to these requests, they need to be produced as soon as possible. If Ironclad intends to stand by the objections to these Requests for Production and refuses to produce responsive documents, please confer with ORR's counsel regarding the same as soon as possible. ORR can then proceed with filing a motion to compel so that the Court can resolve the same in an expedited fashion.

Finally, Ironclad did not produce a privilege log with its first production. Please do so immediately.

I hope to hear from you in regard to these issues so that we can resolve them without further burdening the Court.

---

[1] For example:
- No responsive documents were produced pursuant to Requests for Production Nos. 2. 16, 20, 27, and 31 in ORR's First Request for Production.
- Request for Production 19 - There were only five pages of email correspondence produced, and both parties clearly know there should be many more produced.
- Request for Production No. 24 - There was a sales spreadsheet produced (no bates label) for sales from 2009 to the present, but it does not indicate web-based or web-generated sales of KONG gloves.
- Request for Production No. 25 – There was a spreadsheet produced (no bates labels) regarding sales from 2009 to the present but it does not indicate if the sales reflected in the spreadsheet are pursuant to the Sub-Distributorship Agreement between ORR and Ironclad.
- Request for Production No. 28 – There was an Agreement signed by Cordes and Gionfriddo in October 2014 regarding particulars with respect to agreement between Ironclad and Vibram (Ironclad 248-249), but there is no correspondence between Ironclad and Vibram. Correspondence with Vibram must be produced.
- Request for Production No. 29 – There was an Distribution Agreement between Ironclad and Performance On Hand Pty Ltd. (Ironclad 250-278), but there is no correspondence between Ironclad and Performance on Hand. Correspondence with Performance on Hand Pty Ltd. must be produced.

[2] For example, Ironclad provided a blanket refusal to respond to ORR's First Requests for Production Nos. 10, 12, 13, 14, 30, 34, 35, 36, 37, 38, 39, 40, and 44. These Requests for Production are not objectionable and are equally relevant to ORR's Motion for Preliminary Objection as they are to the entire litigation. Therefore, Ironclad should amend its written objection and must produce responsive documents.

**IC APP 000016**

March 8, 2016
Page 4

Sincerely,

Jennifer M. Stinnett

cc:     Benjamin C. Fultz (*via email*)

IC APP 000017

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

|  |  |
|---|---|
| **IRONCLAD PERFORMANCE WEAR**<br>**CORPORATION,**<br><br>        **Plaintiff,**<br><br>**v.**<br><br>**ORR SAFETY CORPORATION,**<br><br>        **Defendant** | **Civil Action No. 3:15-cv-03453-D** |

---

### ORR SAFETY CORPORATION'S EXPEDITED DISCOVERY REQUESTS
### TO IRONCLAD PERFORMANCE WEAR CORPORATION

---

Pursuant to DN-45 and Fed. R. Civ. Proc. 34(b)(2)(A), Defendant/Counterclaimant Orr Safety Corporation ("ORR Safety") propounds this set of written discovery (the "Discovery Requests") to Plaintiff/Counterclaim Defendant Ironclad Performance Wear Corporation ("Ironclad"). For purposes of these Discovery Requests, the "Distributor Letter" means the letter dated January 27, 2016 and signed by Jeff Cordes President and CEO of Ironclad, that is referred to in ORR Safety's Motion for Temporary Restraining Order/Preliminary Injunction and Brief in Support (DN-28 and DN-31), and/or any communication or document substantially similar in content and subject matter thereto.

### REQUESTS FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 1:**  Produce any and all copies or versions of the Distributor Letter sent or transmitted to any entities or persons, including metadata.  This includes all email or text correspondence attaching the Distributor Letter or discussing the Distributor Letter, its contents, or Vibram, both internally and externally.

1

**IC APP 000018**

**REQUEST FOR PRODUCTION NO. 2:**  Produce any and all documents constituting or evidencing communication in any way relating to the Distributor Letter, including drafts and metadata.

**REQUEST FOR PRODUCTION NO. 3:**  Produce specimens of any and all products described or referred to in the Distributor Letter.

**REQUEST FOR PRODUCTION NO. 4:**  Produce any and all documents constituting or evidencing communication with any entity or person (internal or external) to whom the Distributor Letter was sent or transmitted that in any way, shape or form relates to the subject matter of the Distributor Letter.

**REQUEST FOR PRODUCTION NO. 5:**  Produce any and all internal Ironclad communications or documents relating in any way, shape or form to the decision to send or transmit the Distributor Letter or to otherwise communicate with or contact the entities or persons to whom the Distributor Letter was sent or transmitted.

**REQUEST FOR PRODUCTION NO. 6:**  Produce any and all documents, including any communications (internal or external) about the same, identifying ORR Safety's distribution network for KONG products.

**REQUEST FOR PRODUCTION NO. 7:**  Produce any and all documents, including any communications (internal or external) about the same, regarding the development of ORR's distribution network for KONG products.

**REQUEST FOR PRODUCTION NO. 8:**  Produce any and all documents, including any communications (internal or external) about the same, related in any way, shape or form to the manufacturer(s) of non-KONG products described or referred to in the Distributor Letter, including, but not limited to, agreements, correspondence, or negotiation materials.

2

**IC APP 000019**

**REQUEST FOR PRODUCTION NO. 9:**  Produce any and all documents, including any communications (internal or external) about the same, relating to the decision or analysis as to whom you sent the Distributor Letter.

**REQUEST FOR PRODUCTION NO. 10:** Produce any and all documents, including any communications (internal or external) about the same, relating to Ironclad's pricing for all products described or referred to in the Distributor Letter, including, but not limited to, documents reflecting pricing variety by purchaser (including ORR Safety), quantity, terms, or in any other detail regarding such variations and the basis for such variations.

**REQUEST FOR PRODUCTION NO. 11:** Produce any and all documents, including any communications (internal or external) about the same, relating to the relationship structures (including, but not limited to, distributor, master distributor, exclusive, and preferred, with an explanation of Ironclad's such designation) offered or to be offered to purchasers or prospective purchasers of all products described or referred to in the Distributor Letter, including terms.

**REQUEST FOR PRODUCTION NO. 12:**  Produce any and all documents, including any communications (internal or external) about the same, relating to the analyses or other basis for the contention that the sale of the gloves identified in Ironclad's Original Petition resulted in breach of the parties' agreements (the Exclusive Distributorship Agreement, as amended, and the Sub-Distributorship Agreement, as amended) by ORR Safety.

**REQUEST FOR PRODUCTION NO. 13:** Produce any and all documents, including any communications (internal or external) with or about the same, identifying any and all persons who were involved or participated in any way in the decision to send or transmit the Distributor Letter or the determination of to whom the Distributor Letter would be sent or transmitted.

3

IC APP 000020

**REQUEST FOR PRODUCTION NO. 14:** Produce any and all documents, including any communications (internal or external) with or about the same, identifying any and all manufacturers used to make (1) any and all of the KONG Vibram Counterfeit gloves and the (2) any and all of the KONG gloves.

**REQUEST FOR PRODUCTION NO. 15:** Produce any and all documents, including any communications (internal or external) about the same, relating to the pricing and minimum order quantity offered to any company, (accepted, offered, or contemplated), for any KONG glove or any KONG Counterfeit glove.

**REQUEST FOR PRODUCTION NO. 16:** Produce any and all documents reflecting internet searches, including any internet cache records, performed by Jeff Cordes that include in any way (whether individually or in conjunction with other terms) searches for (1) Future Concerns Group; (2) DuraSafe Pte Ltd.; (3) Project Sales Corp.; (4) Safar Oil Field Services; (5) K&L Ross; (6) KMST; (7) ORR; or (8) KONG, performed two weeks prior to the date of the Google searches identified in Cordes's Declaration, DN 39-2, paragraphs 23, 24, and 25, through the present.

**REQUEST FOR PRODUCTION NO. 17:** Produce any and all documents reflecting internet searches, including any internet cache records, performed by Jeff Cordes that include in any way (whether individually or in conjunction with other terms) searches relating to Ironclad's claims or defenses in this litigation, ORR Safety's claims or defenses in this litigation, or ORR Safety's Motion for Temporary Restraining Order/Motion for Preliminary Injunction. Or Ironclad's defenses relating to ORR Safety's Motion for Temporary Restraining Order/Motion for Preliminary Injunction, performed two weeks prior to the date of the Google searches identified in Cordes's Declaration, DN 39-2, paragraphs 23, 24, and 25, through the present.

4

IC APP 000021

**REQUEST FOR PRODUCTION NO. 18:** Produce any and all document, including any communications (internal or external) about the same, showing Jeff Cordes's prior knowledge of (1) Future Concerns Group; (2) DuraSafe Pte Ltd.; (3) Project Sales Corp.; (4) Safar Oil Field Services; (5) K&L Ross; or (6) KMST.

**REQUEST FOR PRODUCTION NO. 19:** Produce all purchase orders for the KONG Counterfeit.

**REQUEST FOR PRODUCTION NO. 20:** Produce all communications with or about (1) Future Concerns Group; (2) DuraSafe Pte Ltd.; (3) Project Sales Corp.; (4) Safar Oil Field Services; (5) K&L Ross; and (6) KMST.

**REQUEST FOR PRODUCTION NO. 21:** Produce all information and documents relied upon by Jeff Cordes to determine/conclude that Orr Safety was selling competing gloves as set out in ¶ 16 of his Declaration (DN 39-2) in Support of Ironclad's Memorandum in Opposition to Defendant's Motion for TRO/PI and Motion for Expedited Discovery (DN-38).

**REQUEST FOR PRODUCTION NO. 22:** Please produce examples of the Ironclad Revolution glove and any and all documents that show when these gloves were first available for purchase from Ironclad.

**REQUEST FOR PRODUCTION NO. 23:** Produce any and all documents, including all communications (internal and external), identifying Ironclad's sales of KONG-branded gloves, Vibram-branded gloves/Ironclad's Industrial Impact gloves, Ironclad's Revolution gloves, and any other glove featuring back-of-the-hand protection similar to that found in KONG gloves from 2009 to the present. This includes all documents reflecting the date of the sale, the name of the buyer, the sales channel (e.g., phone, purchase order, website), and the type(s), price(s) and quantity of gloves ordered.

5

IC APP 000022

**REQUEST FOR PRODUCTION NO. 24:** Produce any and all documents, including any communications (internal or external), regarding Ironclad's current inventory of any and all KONG gloves, by style.

**REQUEST FOR PRODUCTION NO. 25:** Produce any and all documents, including any communications (internal or external), regarding Ironclad's current inventory, by style, of any and all of the following gloves:

- Ironclad Industrial Impact Knit Cut 5

- Ironclad Industrial Impact Low Profile Impact - Closed Cuff Cut 5

- Ironclad Industrial Impact Rigger Cut 5

- Ironclad Industrial Impact Rigger Insulated Waterproof

- Ironclad Industrial Impact Artic Mitt

- Ironclad Industrial Impact Cotton Corded Palm

- Ironclad Industrial Impact High Abrasion Impact

- Ironclad Industrial Impact Knit Cut 5 Grip

- Ironclad Industrial Impact Low Pro file Impact - Open Cuff Cut 5

- Ironclad Industrial Impact Rigger

- Ironclad Vibram Insulated Waterproof

- Ironclad Vibram Flame Resistant

- Ironclad Vibram O.B.M.

- Ironclad Vibram O.B.M. Cut-5

- Ironclad Vibram O.B.M. XOR

- Ironclad Vibram Rigger

- Ironclad Vibram Rigger Cut-5

6

**IC APP 000023**

- Ironclad Vibram Rigger Insulated

- Ironclad Revolution

**REQUEST FOR PRODUCTION NO. 26:** Produce all bills of lading, including any communications (internal or external) regarding the same, from January 1, 2016 to the present, for the following gloves:

- Ironclad Industrial Impact Knit Cut 5

- Ironclad Industrial Impact Low Profile Impact - Closed Cuff Cut 5

- Ironclad Industrial Impact Rigger Cut 5

- Ironclad Industrial Impact Rigger Insulated Waterproof

- Ironclad Industrial Impact Artic Mitt

- Ironclad Industrial Impact Cotton Corded Palm

- Ironclad Industrial Impact High Abrasion Impact

- Ironclad Industrial Impact Knit Cut 5 Grip

- Ironclad Industrial Impact Low Pro file Impact - Open Cuff Cut 5

- Ironclad Industrial Impact Rigger

- Ironclad Vibram Insulated Waterproof

- Ironclad Vibram Flame Resistant

- Ironclad Vibram O.B.M.

- Ironclad Vibram O.B.M. Cut-5

- Ironclad Vibram O.B.M. XOR

- Ironclad Vibram Rigger

- Ironclad Vibram Rigger Cut-5

- Ironclad Vibram Rigger Insulated

IC APP 000024

- Ironclad Revolution

**REQUEST FOR PRODUCTION NO. 27:** Produce an example of all gloves sold by Ironclad that fall into the category of "Knit Cut 5 Sandy Nitrile Dip."

**REQUEST FOR PRODUCTION NO. 28:** Produce an example of the KONG Artic Mitt prototype, as well as all documents and communications relating to the same.

**REQUEST FOR PRODUCTION NO. 29:** Produce all documents, including all communications (internal and external), regarding any and all changes to your website since January 1, 2016.

**REQUEST FOR PRODUCTION NO. 30:** Produce any and all documents relating to or supporting Jeff Cordes's contention in Paragraph 9 of his Declaration (DN-39-2) that Ironclad "has created a significant stock of product to supply to Grainger Industrial Supply."

**REQUEST FOR PRODUCTION NO. 31:** Produce any and all documents relating to or supporting Jeff Cordes's contention in Paragraph 9 of his Declaration (DN-39-2) that he estimates that "the Vibram gloves will generate millions of dollars in revenue" and that he expects the "Vibram gloves to be a huge driver of revenue, it could amount to as much as 25% of Ironclad's sales in the upcoming year."

**REQUEST FOR PRODUCTION NO. 32:** Produce any and all documents, including all communications (internal and external) regarding Jeff Cordes's contention in Paragraph 14 of his Declaration (DN 39-2) that "ORR was prohibited from selling similar gloves to consumers in the oil and gas industry.

**REQUEST FOR PRODUCTION NO. 33:** Produce any and all documents, including all communications (internal and external), regarding Ironclad's claim that the "oil and gas industry" is analogous to the "petrochemical and offshore industry."

8

**IC APP 000025**

**REQUEST FOR PRODUCTION NO. 34:** Produce any and all documents relating to or supporting, including all communications (internal and external), Jeff Cordes's contention in Paragraph 16 of his Declaration (DN-39-2) that in "late 2015, [he] and Ironclad learned that ORR was selling gloves in violation of the terms of the distribution agreements."

**REQUEST FOR PRODUCTION NO. 35:** Produce any and all documents and things relating to, including all communications (internal and external) about, the meeting Eric Jaeger had with Milton Bell and other representatives from ExxonMobil in 2015, including all items and things brought to these meetings.

**REQUEST FOR PRODUCTION NO. 36:** Produce the contract referenced in the Paragraph 10 of the Cordes' Declaration (DN-39-2).

**REQUEST FOR PRODUCTION NO. 37:** Produce all packaging and design specifications (including bags, hang tags), including examples of all final packaging, for all KONG gloves and the gloves identified in Request for Production 25, 26, or 27.

**REQUEST FOR PRODUCTION NO. 38:** Produce samples of all fabric and materials used to make any KONG gloves or any gloves identified in Request for Production 25, 26, or 27, including identification of shared fabrics and materials by style/product type.

**REQUEST FOR PRODUCTION NO. 39:** Produce the settlement agreement between the parties in the litigation captioned *Williamson-Dickie Holding Co. and Walls Holding Co., Inc. v. Audax Mezzanine Fund II, L.P., et al.*, filed in Dallas County, Texas District Court, No. DC-14-03089 (the "Dickies/Cordes Lawsuit").

**REQUEST FOR PRODUCTION NO. 40:** Produce actual sales figures, including terms of payment and return, for any gloves identified in Request for Production 25, 26, or 27.

IC APP 000026

**REASSERTED REQUESTS FOR PRODUCTION**

**REQUEST FOR PRODUCTION NO. 41:**   Produce any and all documents not subject to attorney-client privilege related to contractual relationships between Ironclad and Orr, including without limitation documents concerning the creation of, Ironclad-internal discussion of, termination of, circumvention of, or any breach of those agreements.

**REQUEST FOR PRODUCTION NO. 42:** Produce Ironclad's public filings, including drafts and internal and/or external communications that relate to the public filings, that relate to Orr, KONG, the allegations in the Complaint or Counterclaim, the answer and affirmative defenses in Ironclad's Answer or Orr's Answer, or the Motion for TRO, the response, and the reply to the same.

**REQUEST FOR PRODUCTION NO. 43:** Produce any and all communications not subject to attorney-client privilege, both Ironclad-internal and external, related to investor or analyst calls for Ironclad from January 2009 to the present.

**REQUEST FOR PRODUCTION NO. 44:** Produce any and all documents not subject to attorney-client privilege related to all lines of credit, financing arrangements, or loans issued to Ironclad from January 2009 to the present including without limitation all covenants associated therewith.

**REQUEST FOR PRODUCTION NO. 45:** Produce any and all communications not subject to attorney-client privilege, both Ironclad-internal and external, related to Revenue Recognition of the Orr/Ironclad Exclusive License and Distributorship Agreement dated January 6, 2009, as amended, including with those preparing SEC filings, accountants, auditors, and banks.

10

IC APP 000027

**REQUEST FOR PRODUCTION NO. 46:** Produce any and all documents not subject to attorney-client privilege related to Ironclad's investigation of, research into, or communications regarding competitors and competing gloves referred to in Paragraph 31 of the Complaint.

**REQUEST FOR PRODUCTION NO. 47:** Produce all correspondence and documents not subject to attorney-client privilege related to the correspondence between Ironclad and Orr referred to in Paragraphs 30, 34, 35, 37, 40, 42, 46, and 48 of the Complaint, including without limitation Ironclad-internal correspondence or documents related to such correspondence with Orr.

**REQUEST FOR PRODUCTION NO. 48:** Produce any and all documents not subject to attorney-client privilege related to any insurance or indemnity agreements that you contend may cover any expenses or judgment amount Ironclad, its directors or its officers may incur in association with this lawsuit.

**REQUEST FOR PRODUCTION NO. 49:** Produce any and all documents reflecting online, web-based or web-generated sales of KONG gloves by Ironclad from January 2009 to the present including without limitation information as to the persons or entities to whom such gloves were sold and when.

**REQUEST FOR PRODUCTION NO. 50:** Produce any and all documents not subject to attorney-client privilege regarding Ironclad's distributorship agreement with W.W. Grainger, Inc., including without limitation any agreements, communications, sales, pricing schedules, shared intellectual property and shared research and development information.

**REQUEST FOR PRODUCTION NO. 51:** Produce any and all documents not subject to attorney-client privilege regarding Ironclad's collaboration with Vibram USA Inc. and/or the

11

IC APP 000028

Ironclad Industrial Impact Glove line, including without limitation any agreements, communications, sales, pricing schedules, shared intellectual property and shared research and development information.

**REQUEST FOR PRODUCTION NO. 52:** Produce any and all documents not subject to attorney-client privilege regarding Ironclad's collaboration with Performance On Hand Pty Ltd and/or the Ironclad Revolution, including without limitation any agreements, communications, sales, pricing schedules, shared intellectual property and shared research and development information.

**REQUEST FOR PRODUCTION NO. 53:** Produce any and all documents not subject to attorney-client privilege related to any entity with whom Ironclad has an agreement under which that entity manufactures KONG gloves or components that are integrated into KONG gloves, including without limitation any agreements, communications, orders, sales, or pricing information.

**REQUEST FOR PRODUCTION NO. 54:** Produce any and all documents not subject to attorney-client privilege related to liens, security interests, pledges or guarantees issued by Ironclad that relate to KONG or its associated intellectual property.

**REQUEST FOR PRODUCTION NO. 55:** Produce any and all minutes of meetings of Ironclad's Board of Directors from 2008 to the present.

**REQUEST FOR PRODUCTION NO. 56:** Produce any and all minutes of meetings of Ironclad's Audit Committee from 2008 to the present.

**REQUEST FOR PRODUCTION NO. 57:** Produce any and all notes of any participant in an Ironclad Board of Directors meeting that refer to KONG or Orr.

IC APP 000029

**REQUEST FOR PRODUCTION NO. 58:** Produce any and all documents provided prior to or at meetings of Ironclad's Board of Directors, including without limitation board books, pre-reads or advance materials from 2008 to the present.

**REQUEST FOR PRODUCTION NO. 59:** Produce all documents presented to Ironclad's Board of Directors regarding the lawsuit styled *Williamson-Dickie Holding Co. and Walls Holding Co., Inc. v. Audax Mezzanine Fund II, L.P., et al.*, filed in Dallas County, Texas District Court,  No. DC-14-03089 (the "Dickies/Cordes Lawsuit").

**REQUEST FOR PRODUCTION NO. 60:** Produce any and all documents not subject to attorney-client privilege related to any investigation by Ironclad into the claims giving rise to the Dickies/Cordes Lawsuit.

**REQUEST FOR PRODUCTION NO. 61:** Produce any and all documents not subject to attorney-client privilege related to Ironclad's investigation of Mr. Cordes or Mr. Aisenburg prior to their hire by Ironclad.

**REQUEST FOR PRODUCTION NO. 62:** Produce any and all documents not subject to attorney-client privilege reflecting Ironclad management or Board of Directors discussion or decision-making related to Orr, KONG, or this case, as referred to in Ironclad's November 12, 2015 Earnings Call.

**REQUEST FOR PRODUCTION NO. 63:** Produce any and all documents reflecting sales by Ironclad pursuant to the Sub-Distributorship Agreement between Orr and Ironclad dated July 22, 2010 from the date of that agreement to the present.

/s/ Jennifer Metzger Stinnett
Benjamin C. Fultz (admitted *pro hac vice*)
Jennifer Metzger Stinnett (admitted *pro hac vice*)

13

IC APP 000030

FULTZ MADDOX DICKENS PLC
2700 National City Tower
Louisville, Kentucky 40202
Telephone: (502) 588-2000
Facsimile: (502) 588-2020
bfultz@fmdlegal.com
jstinnett@fmdlegal.com

-and-

Gregory M. Sudbury
Texas Bar No. 24033367
Rachel Lee Hytken
Texas Bar No. 24072163
QUILLING, SELANDER, LOWNDS, WINSLETT & MOSER, P.C.
2001 Bryan Street, Suite 1800
Dallas, Texas 75201
(214) 871-2100 (Main)
(214) 871-2111 (Fax)
gsudbury@qslwm.com

*Counsel for Defendant and Counterclaim Plaintiff*
*Orr Safety Corporation*

14

**IC APP 000031**

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing document was served upon the following counsel via email on March 8, 2016, in accordance with the agreement reached between the parties for electronic service and the Federal Rules of Civil Procedure:

Daniel H. Charest
Will Thompson
BURNS CHAREST LLP
500 North Akard Street, Suite 2810
Dallas, Texas 75201
dcharest@burnscharest.com
wthompson@burnscharest.com

Barak Kamelgard
Michael Sherman
Stubbs Alderton & Markiles LLP
15260 Ventura Blvd., 20th Floor
Sherman Oaks, CA 91403
bkamelgard@stubbsalderton.com
masherman@stubbsalderton.com

*Counsel for Plaintiff/Counterclaim Defendant*

/s/ Jennifer Metzger Stinnett
*Counsel for Defendant/Counterclaim Plaintiff*

**IC APP 000032**

# Exhibit 4

# Filed Under Seal

IC APP 000033

# Exhibit 5

IC APP 000053

Wednesday, April 6, 2016 at 11:21:39 AM Central Daylight Time

| | |
|---|---|
| **Subject:** | FW: Orr-Ironclad |
| **Date:** | Monday, March 28, 2016 at 6:14:38 PM Central Daylight Time |
| **From:** | Will Thompson |
| **To:** | Andrew Bynum |
| **Attachments:** | 01306971.docx |

## Will Thompson
469.904.4554 direct
406.546.5587 mobile

**From:** Jennifer Metzger Stinnett [mailto:jstinnett@fmdlegal.com]
**Sent:** Thursday, March 24, 2016 5:29 PM
**To:** Michael Sherman (masherman@stubbsalderton.com) <masherman@stubbsalderton.com>; Daniel Charest <dcharest@burnscharest.com>; Will Thompson <wthompson@burnscharest.com>; Barak Kamelgard (bkamelgard@stubbsalderton.com) <bkamelgard@stubbsalderton.com>
**Cc:** Ben Fultz <bfultz@fmdlegal.com>; Corey Shapiro <cshapiro@fmdlegal.com>; Amy Hoagland <ahoagland@fmdlegal.com>; Twila Carson <tcarson@fmdlegal.com>
**Subject:** Orr-Ironclad

All:

Please find attached the further revised areas of inquiry.  As I said on the call, while we are always willing to discuss further in an attempt to form a final consensus, we have attempted to address your concerns/comments for some time and over the course of lengthy correspondence and multiple phone calls. Orr believes it has tailored the 30b6 requests as narrow as it reasonably can at this point.

Second, and to summarize my call with Will, you all will send the following to me:

1. A final redline of the agreement regarding accommodation on Cordes' deposition (which we will promptly review and will hopefully then have finalized) –today or tomorrow.

2. A redline of the protective order adding another category of protection for certain documents Ironclad believes it needs even further protection on beyond attorneys' eyes only – today or tomorrow.

3. Amended responses to Orr's expedited requests for production (reviewing in conjunction with Orr's revised 30b6 notice and my comments regarding narrowing the discovery sent on Monday, March 21, 2016 at 12:28 pm) – no later than Wednesday, March 30, 2016.

4. A date certain as to when we are getting responsive documents – both pursuant to the ESI and the expedited discovery – both of which are significantly past due – a date provided no later than close of business tomorrow, Friday, March 25, 2016.

==Third, you all asked for written confirmation regarding exactly what ORR's injunctive relief is specifically asking to prevent and whether or not we want IC to stop manufacturing or selling all gloves.  Taking directly from the Reply (DN 41), Orr has asked the court for an order preventing Ironclad from: "soliciting its confidential distributor network and confusingly (and tortiously) advertising the KONG gloves together with the KONG Vibram Counterfeit so as to infringe upon, misappropriate, and dilute the KONG trade dress. Moreover, the Court should enjoin Ironclad from implementing or enforcing the post-motion price increase==

**IC APP 000054**

and minimum purchase requirement." This is consistent with our discussion wherein I represented that Orr was not trying to prevent Ironclad from selling KONG or the Disputed Gloves, just that it couldn't sell to Orr's Distribution Network, couldn't advertise KONG and the Disputed Gloves together, and that it would give Orr the same pricing that was in place prior at the beginning of litigation throughout the course of the litigation.

Please let me know if you have any other questions regarding the above.

Jenny

IC APP 000055

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **IRONCLAD PERFORMANCE WEAR CORPORATION,** | | |
| **Plaintiff,** | | |
| **v.** | | **Case No. 3:15-cv-03453-D** |
| **ORR SAFETY CORPORATION,** | | |
| **Defendant** | | |

---

**ORR SAFETY CORPORATION'S NOTICE OF RULE 30(B)(6) DEPOSITION OF IRONCLAD PERFORMANCE WEAR CORPORAION**

---

Please take notice that, pursuant to DN-45 and Federal Rule of Civil Procedure 30(b)(6) and the Court's, Defendant ORR Safety Corporation ("ORR Safety") will take the videotaped deposition(s) of Plaintiff Ironclad Performance Wear Corporation ("Ironclad") through one or more of its officers, directors, managing agents, or such other authorized persons who consent to testify on its behalf on Thursday, April 12, 2016, at 8:00 a.m. at the office of Quilling, Selander, Lownds, Winslett & Moser, P.C., 2001 Bryan Street Suite 1800, Dallas, Texas 75201.

Ironclad has a duty to designate one or more officers, directors, managing agents, or other persons with sufficient knowledge to testify on their behalf on all information known or reasonably available to each on the topics set forth below. The deposition(s) will be taken for the purpose of discovery pursuant to the Court's Order DN-45 relating to evidence in further support of ORR Safety's Motion for Preliminary Injunction and for all other purposes permitted under the Federal Rules of Civil Procedure. The deposition(s) will be taken before a notary public or other officer authorized by law to administer oaths for use in this litigation as set forth above. The deposition(s) will continue from day to day until completed.

1

IC APP 000056

**DEFINITIONS**

1. The terms "YOU" or "YOUR" means Plaintiff Ironclad Performance Wear Corporation ("Ironclad") including, without limitation, any agents and representatives, each person acting or purporting to act on its behalf, each of its predecessors, subsidiaries, and affiliates, and each of its present or former officers, employees, agents, representatives, and attorneys.

2. The term "Distributorship Agreement" means the Exclusive License and Distributorship Agreement entered into between Ironclad and ORR Safety on January 6, 2009, and as amended, the First Amendment to the Exclusive License and Distributorship Agreement entered into between Ironclad and ORR Safety on January 27, 2015.

3. The term "Disputed Gloves" shall include the following gloves:

1. Industrial Impact Knit Cut 5
2. Industrial Impact Low Profile impact - closed cuff Cut 5
3. Industrial Impact Rigger Cut 5
4. Industrial impact Rigger Insulated Waterproof
5. Industrial Impact Arctic Mitt
6. Industrial Impact Cotton Corded Palm
7. Industrial Impact High Abrasion Impact
8. Industrial Impact Knit Cut 5 Grip
9. Industrial Impact Low Profile Impact - Open Cuff Cut 5
10. Industrial Impact Rigger
11. Vibram Insulated Waterproof
12. Vibram Flame Resistant
13. Vibram O.B.M.
14. Vibram O.B.M. Cut-5
15. Vibram O.B.M. XOR
16. Vibram Rigger
17. Vibram Rigger - Cut 5
18. Vibram Rigger Insulated
19. Ironclad Revolution
20. Knit Cut 5 Sandy Nitrile Dip

4. The terms "concerning" "regarding" and "relating to" mean relating to, supporting, contradicting, summarizing memorializing, describing, evidencing, constituting, containing,

IC APP 000057

studying, identifying, analyzing, considering, regarding, explaining, mentioning, showing, discussing, comprising or commenting on.

5. Each of the terms "all," "any," "each," and "every" shall be construed as meaning all, any, each and every.

6. The terms "and" and "or" shall be construed both disjunctively and conjunctively.

7. The term "Distributorship Letter" shall mean the January 27, 2016 letter from Jeff Cordes to members of ORR Safety's Distributor Network for KONG, including, but not limited to (1) Future Concerns Group; (2) Safar Oil Services; (3) Project Sales Corp.; (4) Durasafe Pte Ltd.; (5) K&L Ross; and (6) KMST.

8. The term "Distribution Network" shall mean any of ORR Safety's customers, members of its supply chain, and or end users that Ironclad knows is or was a purchaser of KONG Gloves from ORR Safety. ORR Safety contends the Distribution Network is confidential and proprietary in nature.

## RULE 30(b)(6) TOPICS

Ironclad shall designate one or more officers, directors, managing agents, or persons who consent to testify on its behalf concerning the following subject matters:

1. Sections 1.3,[1] 2.1, 5.1, and 7.6 of the parties' Distributorship Agreement between Ironclad and ORR Safety as discussed in ORR Safety's Motion for Temporary Restraining Order/Preliminary Injunction and all supporting briefs and documentations thereto (DN-28, DN-31 through DN 31-19, DN-35, and DN 36 through DN 36-6), Ironclad's Response in Opposition to ORR Safety's Motion for Temporary Restraining Order/Preliminary Injunction and all supporting documentations thereto (DN-37, DN-28, and DN-39-1 through DN 39-13), and ORR

---

[1] Note that Confidentiality Provision was originally Section 1.1 in the Distributorship Agreement, but was renumbered as Section 1.3 in the Amendment. But the substance was not changed in the Amendment.

3

Safety's Reply in Further Support of its Motion for Temporary Restraining Order/Preliminary Injunction and all supporting documentations thereto (DN-41 and DN-42 through DN-42-3).

2.      The facts relied upon to form the allegations, and to justify the claims asserted as of the date the relevant pleadings were filed, that specifically relate to Sections 1.3, 2.1, 5.1 and 7.6 of the parties' Distributorship Agreement between Ironclad and ORR Safety as set out in: (1) Ironclad's Original Petition, (2) its answer and affirmative defenses to ORR Safety's Counterclaim (DN-12), and (3) its Response in Opposition to ORR Safety's Motion for Preliminary Injunction and all supporting documentations thereto (DN-37, DN-28, and DN-39-1 through DN 39-13).

3.      Ironclad's responses to ORR Safety's requests for Expedited Discovery, served on March 8, 2016.

4.      Documents produced by Ironclad in this matter on or about February 29, 2016 (Ironclad_0000001-Ironclad_0000746), documents that will be produced by Ironclad in this matter pursuant to ORR Safety's expedited discovery requests served on March 8, 2016, and any documents attached to ORR Safety's Motion for Temporary Restraining Order/Preliminary Objection (and brief in support), Ironclad's Response in Opposition to ORR Safety's Motion for Preliminary Injunction, and ORR Safety's Reply in Support of its Motion for Temporary Restraining Order/Preliminary Objection.

5.      Ironclad's business operations, organization, ownership, and solvency, from January 1, 2015 to the present.

6.      All technical, manufacturing and practical analysis, or reasoning, and all facts in support of, your allegations that ORR Safety breached Section 2.1 of the Distributorship Agreement, including any and all analysis done to prove that the gloves set out in Paragraph 23

4

IC APP 000059

of your Original Petition are "specifically designed and/or marketed for the petrochemical and offshore exploration markets that are substantially similar to, or competitive with [KONG gloves]."

7.     All facts or evidence relied on by Ironclad in deciding to terminate the Distributorship Agreement on October 7, 2015 due to ORR Safety's alleged breaches of Section 5.1 of the Distributorship Agreement.

8.     All technical, manufacturing and practical analysis, or reasoning, and all facts in support of, your allegations/defenses that the Disputed Gloves do not infringe on KONG Trade Dress, defined as "collectively, the characteristics of the visual appearance of [KONG gloves] or packaging associated therewith and, to the extent permitted under applicable law, any applications therefor, whether registered or not" in the parties' Distributorship Agreement.

9.     All technical, manufacturing and practical analysis, or reasoning, and all facts in support of, your contention that the Court granting ORR Safety's Motion for Preliminary Injunction would "have devastating effects on Ironclad's business" and would result in "millions of dollars in lost sales and would delay a crucial product launch indefinitely" as asserted in your Response in Opposition to ORR Safety's Motion for Temporary Restraining Order (DN-38).

10.     All assertions set out in the Declaration of Jeff Cordes (DN 39-2).

11.     All discussions with any manufacturer regarding the production of any gloves at issue in this litigation, including all KONG gloves (which includes all KONG Dickies gloves) or any of the Disputed Gloves, relating to source materials, timing of production, or prototype of any gloves.

12.     All agreements and communications with Vibram regarding KONG gloves (which includes all KONG Dickies gloves) or any of the Disputed Gloves.

5

IC APP 000060

13.     All facts supporting your claim that Ironclad has not misappropriated ORR Safety's Distribution Network.

14.     All facts supporting your claim that you in no way relied on any information gained from your relationship with ORR Safety in preparing, drafting, or sending the Distributor Letter.

15.     Any and all meetings between anyone at Ironclad, including Eric Jaeger, and any one at ExxonMobil, from September 2015 to the present.

16.     The time frames and basis for deciding to create any of the Disputed Gloves.

17.     Actual sales and sales terms for the Disputed Gloves to date.

18.     The contract between Vibram and Ironclad.[2]

19.     The packaging for KONG gloves and the packaging for the Disputed Gloves.

20.     The fabrics and materials, including shared fabrics and materials, used to make KONG gloves and the Disputed Gloves.

21.     The elements of U.S. Patent No. 9,241,519 incorporated into KONG gloves and the Disputed Gloves, as well as the other similarities of the KONG gloves and the Disputed Gloves.

22.     The development, manufacturing, and marketing of any prototype of the Disputed Gloves.


Respectfully submitted,


 s/ Jennifer Metzger Stinnett 

---

[2] To the extent that this topic implicates confidential and/or sensitive information addressed in the protective order, ORR will take all steps to ensure that such information is not inappropriately disclosed.

IC APP 000061

Benjamin C. Fultz (admitted *pro hac vice*)
Jennifer Metzger Stinnett (admitted *pro hac vice*)
FULTZ MADDOX DICKENS PLC
2700 National City Tower
Louisville, Kentucky 40202
Telephone: (502) 588-2000
Facsimile: (502) 588-2020
bfultz@fmdlegal.com
jstinnett@fmdlegal.com

-and-

Gregory M. Sudbury
Texas Bar No. 24033367
Rachel Lee Hytken
Texas Bar No. 24072163
QUILLING, SELANDER, LOWNDS, WINSLETT & MOSER, P.C.
2001 Bryan Street, Suite 1800
Dallas, Texas 75201
(214) 871-2100 (Main)
(214) 871-2111 (Fax)
gsudbury@qslwm.com

*Counsel for Defendant and Counterclaim Plaintiff ORR Safety Corporation*

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing document was served upon the following counsel via email on April 6, 2016, in accordance with the agreement reached between the parties for electronic service and the Federal Rules of Civil Procedure:

s/ Jennifer Metzger Stinnett
Counsel for Defendant and Counterclaim Plaintiff

IC APP 000062

# Exhibit 6

**IC APP 000063**

FULTZ MADDOX DICKENS
PLC
ATTORNEYS

Corey M. Shapiro ▪ 502-992-5011 ▪ cshapiro@fmdlegal.com

April 5, 2016

*Via Email*

Will Thompson
Burns Charest LLP
500 North Akard Street, Suite 2810
Dallas, TX 75201
wthompson@burnscharest.com

**RE:    Ironclad Performance Wear Corporation ("Ironclad") v. Orr Safety
        Corporation  ("Orr"), N.D. Tex. Case No. 3:15-cv-03453-D**

Dear Will:

I write to memorialize our discussion earlier today regarding Ironclad's requests for documents in the above-referenced litigation.  With respect to Orr's March 18, 2016 production of documents via Dropbox, I explained that documents labeled ORR00000173 – 00000317 were bates-labeled photocopies of the documents attached to Orr's Memorandum in Support of Temporary Restraining Order (ECF Doc. No. 35), which Orr reproduced for the parties' convenience.  I also explained that the remaining documents, ORR00000001 – ORR00000172 were produced in an effort to begin producing documents to Ironclad in advance of the then-upcoming deposition of Orr's corporate representative.  The documents were not part of Orr's custodial ESI collection.  Rather, they were printed from this firm's emails after having been provided to counsel in connection with this litigation and in preparation for that deposition, as indicated by the redactions exclusively at the top of nearly all of the documents.  Accordingly, Orr is not withholding any relevant metadata.  In discussing these redactions, you agreed that Orr need not create a privilege log for those redactions to the extent they involve communications made in the context of forwarding substantive emails to counsel during the litigation.  You agreed that this resolves the outstanding issues regarding Orr's March 18, 2016 production.

We also discussed Orr's efforts to produce the data subject to the parties' Joint Informal Agreement Regarding Production of Electronically-Stored Information (the "Informal ESI Agreement").  As I mentioned, after applying the search terms in the Informal ESI Agreement, our vendor has informed us that the volume of ESI is over 1.2 million documents and approximately 186 GB, which is an unexpectedly large and unreasonable amount of ESI to have to review and produce.  Accordingly, pursuant to Section E, footnote 4, I requested, and you agreed, the parties would work in good faith to generate reasonable search terms.  As I mentioned, the search terms "I/C" and "TOTAL" standing alone will need to be eliminated, as those terms returned unreasonably large numbers. Orr hopes to have a proposal in the near future.  To the extent you have specific suggestions in the meantime, I welcome your input.

*Litigation.*
*Health care law.*       101 S. Fifth Street, 27th Floor | Louisville, KY 40202-3116 | (502) 588-2000 | f. (502) 588-2020 | www.fmdlegal.com
*Business law.*

**IC APP 000064**

Will Thompson
April 5, 2016
Page 2

**FULTZ MADDOX DICKENS**
PLC
ATTORNEYS

      Please let me know if you disagree with anything in this letter or if I mischaracterized our discussion.

                    Sincerely,

                    Corey M. Shapiro

cc:    Daniel H. Charest
       Barak Kamelgard
       Michael Sherman

**IC APP 000065**

# Exhibit 7

IC APP 000066

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IRONCLAD PERFORMANCE WEAR CORPORATION, | § § § | |
| Plaintiff, | § § | Civil Action No. 3:15-cv-03453-D |
| v. | § § | |
| ORR SAFETY CORPORATION, | § § | |
| Defendants. | § | |

**Plaintiff's First Set of Discovery to Defendant ORR Safety Corporation**

Plaintiff Ironclad Performance Wear Corp. serves this first set of discovery to Defendant

ORR Safety Corporation.

## <u>INSTRUCTIONS</u>

1.      To the fullest extent permitted by the Federal Rules of Civil Procedure, these

discovery requests are intended to be continuing in nature. You are requested and required to

supplement your answers and responses when appropriate or necessary to make them correct and

complete.

2.      All definitions and rules of construction contained in the Federal Rules of Evidence

and the Federal Rules of Civil Procedure are incorporated herein by reference.

3.      Unless otherwise specified in a particular question or request, the relevant time

period for all questions and requests is from January 1, 2007 onward.

4.      Please furnish all information, however obtained, that is within your knowledge,

possession, or control (or your agents' or attorneys'), or which may be reasonably ascertained by

you.

5.      If you are unable to respond to any part of these Discovery Requests in full, after

exercising due diligence to secure the information necessary to do so, please respond to the extent possible. Please specify that the response is or may not be complete.

6.      Please identify all documents that support, refer to, or evidence the subject matter of each information request and the response to that particular request.

7.      Please produce all electronically-stored information ("ESI") in native format.

8.      To the extent that electronic documents/ESI contain non-graphic embedded objects (e.g., electronic documents sent as attachments to emails, Excel spreadsheets or PowerPoint presentations with embedded links or references to other electronic documents), please produce such documents together in a manner that preserves the parent/child relationship between the documents.

8.      To the extent that physical documents are found attached to other documents, by means of paperclips, staples, or other means of attachment, please produce such documents together in their condition as found.

9.      To the extent that physical documents are found in file folders that have labels or other identifying information, please produce documents with such file folders and label information intact.

10.      If you decline to respond to any part of these Discovery Requests or choose to withhold responsive documents under a claim of privilege or other objection, please respond to the extent not subject to the claimed privilege or objection and indicate the basis for refusing to comply with the particular Discovery Request. If privilege is claimed for particular documents, please provide a privilege log that identifies each document for which the privilege is claimed and include the following information:

        a. Date;

IC APP 000068

b. Sender;

c. Addressee(s)/Recipient(s);

d. Person(s) to whom copies were furnished, together with their job title or position;

e. Subject matter of the document;

f. Basis on which a privilege is claimed; and

g. Discovery Request(s) to which the withheld documents are responsive.

## DEFINITIONS

1.      The terms "YOU" or "YOUR" means Defendant ORR Safety Corporation ("ORR") including, without limitation, any agents and representatives, each person acting or purporting to act on its behalf, each of its predecessors, subsidiaries, and affiliates, and each of its present or former officers, employees, agents, representatives, and attorneys.

2.      The term "Agreements" refers to, collectively, the Exclusive License and Distributorship Agreement entered into between Ironclad Performance Wear Corporation ("Ironclad") and ORR on January 6, 2009 (the "Distributorship Agreement"), the First Amendment to the Exclusive License and Distributorship Agreement entered into between Ironclad and ORR on January 27, 2015 ("First Amendment"), the Sub-Distributorship Agreement entered into between Ironclad and ORR on July 22, 2010 ("Sub-Distributorship Agreement") and the First Amendment to the Sub-Distributorship Agreement ("First Amendment to Sub-Distributorship Agreement") entered into between Ironclad and ORR on January 27, 2015.

3.      The term "MOU" refers to the Memorandum of Understanding between Ironclad and ORR dated December 11, 2013.

4.      The terms "concerning" "regarding" and "relating to" mean relating to, supporting, contradicting, summarizing memorializing, describing, evidencing, constituting, containing,

IC APP 000069

studying, identifying, analyzing, considering, regarding, explaining, mentioning, showing, discussing, comprising or commenting on.

5.      "KONG® branded gloves" means all KONG® safety gloves (all sizes), together with any inventions or improvements now or hereafter embodied therein (whether or not patentable in any jurisdiction) during the term of the Distributorship Agreement, all gloves listed in Schedule B to the Distributorship Agreement and First Amendment, and all gloves bearing at least one KONG® Mark, any service mark, trade name or brand name containing the term "KONG®" or the KONG® Trade Dress (as hereinafter defined).

6.      "KONG® Trade Dress" means collectively, the characteristics of the visual appearance of the Products or packaging associated with KONG® branded gloves.

7.      Each of the terms "all," "any," "each," and "every" shall be construed as meaning all, any, each and every.

8.      The terms "and" and "or" shall be construed both disjunctively and conjunctively.

## ELECTRONICALLY STORED INFORMATION

***NOTICE*** **Plaintiff requests that you produce all electronically stored information responsive to these requests for production in the form or forms in which it is ordinarily maintained (i.e., its native file format). For example, all responsive emails shall be produced in their native file format (e.g., Microsoft Outlook, Lotus Notes), all responsive word documents files shall be produced in their native file format (e.g., Microsoft Word, WordPerfect), all responsive spreadsheets shall be produced in their native file format (e.g., Microsoft Excel), and all responsive electronic presentations shall be produced in their native file format (e.g., Microsoft PowerPoint).**

**All financial reports requested should be exported from your accounting software into Microsoft Excel and produced in Excel format.**

## REQUESTS FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 1:** All documents and communications referring to, commenting on, or discussing the Agreements or any revisions made to the Agreements, including any drafts of the Agreements, and any documents referring to, commenting on, or discussing drafts of the Agreements.

**REQUEST FOR PRODUCTION NO. 2:** All documents and communications referring to, commenting on, or discussing the MOU or any revisions made to the MOU, including any drafts of the MOU, and any documents referring to, commenting on, or discussing drafts of the MOU.

**REQUEST FOR PRODUCTION NO. 3:** All documents or data sufficient to show all of ORR's sales, proposed or projected sales of gloves to distributors, customers or end users in the petrochemical and offshore exploration market, including the customer name, product(s) purchased (SKU), quantity, unit price, unit cost, extended sales price, extended cost, discounts/adjustments, returns and allowances, location of sale, and dates of sales.

**REQUEST FOR PRODUCTION NO. 4:** All documents or data sufficient to show all of ORR's sales or proposed of gloves that are similar to, or competitive with, KONG® branded gloves, including the customer name, product(s) purchased (SKU), quantity, unit price, unit cost, extended sales price, extended cost, discounts/adjustments, returns and allowances, location of sale, and dates of sales.

**REQUEST FOR PRODUCTION NO. 5:** All documents or data sufficient to show all of ORR's sales or proposed sales of KONG® branded gloves, including the customer name, product(s) purchased (SKU), quantity, unit price, unit cost, extended sales price, extended cost, discounts/adjustments, returns and allowances, location of sale, and dates of sales.

**REQUEST FOR PRODUCTION NO. 6:** All documents and purchase orders accompanying any purchase of KONG® branded gloves from ORR sufficient to show what products other than KONG® gloves were included in each such purchase order, including the product(s) purchased (SKU), quantity, unit price, unit cost, extended sales prices, extended cost, discounts/adjustments, returns and allowances, location of sale, and dates of sales for those products other than KONG® gloves.

**REQUEST FOR PRODUCTION NO. 7:** All documents or data sufficient to show all of ORR's sales or proposed sales of non-KONG® branded gloves manufactured by Ironclad, including the customer name, product(s) purchased (SKU), quantity, unit price, unit cost, extended sales price, extended cost, discounts/adjustments, returns and allowances, location of sale, and dates of sales.

**REQUEST FOR PRODUCTION NO. 8:** All documents or data sufficient to show all of ORR's sales or proposed of HexArmor Chrome Series® Cut Resistant Gloves, including the customer name, product(s) purchased (SKU), quantity, unit price, unit cost, extended sales price, extended cost, discounts/adjustments, returns and allowances, location of sale, and dates of sales.

**REQUEST FOR PRODUCTION NO. 9:** All documents or data sufficient to show all of ORR's sales proposed sales of Ergodyne ProFlex® 900 Impact Gloves, including the customer name, product(s) purchased (SKU), quantity, unit price, unit cost, extended sales price, extended cost, discounts/adjustments, returns and allowances, location of sale, and dates of sales.

**REQUEST FOR PRODUCTION NO. 10:** All documents or data sufficient to show all of ORR's sales or proposed of Ergodyne ProFlex® 910 Impact Gloves, including the customer name, product(s) purchased (SKU), quantity, unit price, unit cost, extended sales price, extended cost, discounts/adjustments, returns and allowances, location of sale, and dates of sales.

IC APP 000071

**REQUEST FOR PRODUCTION NO. 11:** All documents or data sufficient to show all of ORR's sales or proposed of Superior Glove® Emerald CX® Cut Level 3 Gloves, including the customer name, product(s) purchased (SKU), quantity, unit price, unit cost, extended sales price, extended cost, discounts/adjustments, returns and allowances, location of sale, and dates of sales.

**REQUEST FOR PRODUCTION NO. 12:** All documents or data sufficient to show all of ORR's sales or proposed of Ergodyne ProFlex® 800 Glove Liners, including the customer name, product(s) purchased (SKU), quantity, unit price, unit cost, extended sales price, extended cost, discounts/adjustments, returns and allowances, location of sale, and dates of sales.

**REQUEST FOR PRODUCTION NO. 13:** All documents or data sufficient to show all of ORR's sales or proposed sales of Superior Glove® Dexterity Cut Resistant Gloves, including the customer name, product(s) purchased (SKU), quantity, unit price, unit cost, extended sales price, extended cost, discounts/adjustments, returns and allowances, location of sale, and dates of sales.

**REQUEST FOR PRODUCTION NO. 14:** All communications between ORR, its agents, representatives or consultants, on the one hand, and any domestic glove manufacturer other than Ironclad, on the other hand, regarding the development of any glove to be sold by ORR.

**REQUEST FOR PRODUCTION NO. 15:** All communications between ORR, its agents, representatives or consultants, on the one hand, and any foreign glove manufacturer or manufacturing facility or factory, on the other hand, regarding the production of any glove to be sold by ORR.

**REQUEST FOR PRODUCTION NO. 16:** All documents or data sufficient to show ORR's profit margins and the costs and expenses to ORR for all of ORR's sales of KONG® branded gloves.

**REQUEST FOR PRODUCTION NO. 17:** All documents or data sufficient to identify all sub-distributors, sales agents, or independent consultants used or employed by ORR to distribute and/or sell KONG® branded gloves.

**REQUEST FOR PRODUCTION NO. 18:** All documents or data sufficient to identify all sub-distributors, sales agents, or independent consultants that were ever considered by ORR for the distribution and/or sales of KONG® branded gloves.

**REQUEST FOR PRODUCTION NO. 19:** All communications between anyone at ORR and all sub-distributors, sales agents, or independent consultants used or employed, or ever considered, by ORR to distribute and/or sell KONG® branded gloves.

**REQUEST FOR PRODUCTION NO. 20:** All sales presentations or pitch materials used by ORR for the purpose of selling KONG® branded gloves, whether or not those sales presentations or pitch materials actually resulted in sales to the intended customer or distributor.

**REQUEST FOR PRODUCTION NO. 21:** All documents comparing KONG® branded gloves to HexArmor Chrome Series® Cut Resistant Gloves, Ergodyne ProFlex® 900 Impact Gloves, Ergodyne ProFlex® 910 Impact Gloves, Superior Glove® Emerald CX® Cut Level 3 Glove, Ergodyne ProFlex® 800 Glove Liners, or Superior Glove® Dexterity Cut Resistant Gloves.

**IC APP 000072**

**REQUEST FOR PRODUCTION NO. 22:** All documents relating to ORR's efforts to actively promote, market, and sell KONG® branded gloves.

**REQUEST FOR PRODUCTION NO. 23:** All documents relating to ORR's collaboration with Ironclad to market, promote and advertise KONG® branded gloves.

**REQUEST FOR PRODUCTION NO. 24:** All documents relating to ORR's collaboration with Ironclad to sell KONG® branded gloves.

**REQUEST FOR PRODUCTION NO. 25:** All documents relating to ORR's marketing and advertising campaigns for sales of KONG® branded gloves.

**REQUEST FOR PRODUCTION NO. 26:** All marketing and advertising materials used by ORR to sell KONG® branded gloves, including but not limited to copy for print advertisements, displays, and promotional materials.

**REQUEST FOR PRODUCTION NO. 27:** All communications between anyone at ORR and any public relations employees or independent consultants regarding Ironclad or ORR's sales, marketing and advertising of KONG® branded gloves.

**REQUEST FOR PRODUCTION NO. 28:** All communications between anyone at ORR and any advertising agencies or independent advertising consultants relating to Ironclad or ORR's sales, marketing and advertising of KONG® branded gloves.

**REQUEST FOR PRODUCTION NO. 29:** All documents relating to ORR's marketing and advertising budgets for the sales of KONG® branded gloves.

**REQUEST FOR PRODUCTION NO. 30:** All documents demonstrating ORR's coordination with Ironclad's brand management team.

**REQUEST FOR PRODUCTION NO. 31:** All document demonstrating ORR's collaboration with Ironclad to develop product marketing plans or advertising campaigns.

**REQUEST FOR PRODUCTION NO. 32:** All documents relating to ORR's trade show activities to promote the sale of KONG® branded gloves.

**REQUEST FOR PRODUCTION NO. 33:** All documents demonstrating ORR's efforts to preserve the goodwill of KONG® branded gloves.

**REQUEST FOR PRODUCTION NO. 34:** All documents demonstrating ORR's efforts to solicit sub-distributors for the sale of KONG® branded gloves.

**REQUEST FOR PRODUCTION NO. 35:** All documents demonstrating ORR's efforts to solicit or employ distributors of safety and industrial products to sell KONG® branded gloves.

**REQUEST FOR PRODUCTION NO. 36:** All documents or communications discussing or referring to the KONG® Rigger glove.

**REQUEST FOR PRODUCTION NO. 37:** All documents or communications discussing or referring to the KONG® Operator glove.

**REQUEST FOR PRODUCTION NO. 38:** All documents or communications discussing or referring to ORR's sales, or proposed sales, of gloves to Quanta.

**REQUEST FOR PRODUCTION NO. 39:** All documents or communications discussing or referring to the KONG® KRC5Q glove.

**REQUEST FOR PRODUCTION NO. 40:** All documents or communications discussing or referring to Ironclad's gloves containing the "Ironclad Visual Engineering" technology.

**REQUEST FOR PRODUCTION NO. 41:** All documents or communications discussing or referring to Vibram or the Vibram technology.

**REQUEST FOR PRODUCTION NO. 42:** All documents reflecting any contribution and input that ORR provided to the development of the "Concept Glove" referenced in Paragraphs 21 and 22 of ORR's October 23, 2015 "Answer, Additional Defenses, and Counterclaim."

**REQUEST FOR PRODUCTION NO. 43:** All documents and communications discussing or referring to the alleged "KONG Vibram Counterfeits" referenced in ORR's October 23, 2015 "Answer, Additional Defenses, and Counterclaim."

**REQUEST FOR PRODUCTION NO. 44:** All documents reflecting the feedback, input, field information and design change requests that ORR provided to Ironclad as referenced in Paragraph 60 of ORR's October 23, 2015 "Answer, Additional Defenses, and Counterclaim."

**REQUEST FOR PRODUCTION NO. 45:** All documents or communications discussing or referring to the "KONG Action Tracker & Overview" as referenced in Paragraphs 60 ORR's October 23, 2015 "Answer, Additional Defenses, and Counterclaim."

**REQUEST FOR PRODUCTION NO. 46:** All documents demonstrating or reflecting how the alleged "Kong Vibram Counterfeit" is allegedly based on input, research, and development from ORR.

**REQUEST FOR PRODUCTION NO. 47:** All documents demonstrating or reflecting how ORR "brought the Arctic Mitt opportunity to Ironclad," as referenced in Paragraph 79 ORR's October 23, 2015 "Answer, Additional Defenses, and Counterclaim."

**REQUEST FOR PRODUCTION NO. 48:** All documents demonstrating or reflecting how ORR "reminded Ironclad of its obligations to promote the KONG brand" with respect to the alleged "Kong Arctic Mitt Counterfeit" " referenced in Paragraphs 81 of ORR's October 23, 2015 "Answer, Additional Defenses, and Counterclaim."

**REQUEST FOR PRODUCTION NO. 49:** All documents relating to how Ironclad allegedly failed to provide appropriate technical support to ORR.

**REQUEST FOR PRODUCTION NO. 50:** All documents relating to Ironclad's alleged failure to provide timely deliveries to ORR.

**REQUEST FOR PRODUCTION NO. 51:** All documents relating to Ironclad's alleged failure to remit royalties to ORR.

**REQUEST FOR PRODUCTION NO. 52:** All communications that ORR has had with anyone regarding KONG® or Ironclad since September 28, 2015.

**REQUEST FOR PRODUCTION NO. 53:** All documents relating to Ironclad's alleged sales of KONG® branded gloves to unauthorized customers.

**REQUEST FOR PRODUCTION NO. 54:** All communications between anyone at ORR and any sub-distributors that ORR solicited or employed to sell KONG® branded gloves at any time, whether or not ORR continues to distribute any products through that sub-distributor today.

**REQUEST FOR PRODUCTION NO. 55:** All communications between anyone at ORR and employees or representatives of Hagemeyer North America relating to Ironclad or KONG® branded gloves.

**REQUEST FOR PRODUCTION NO. 56:** All communications between anyone at ORR and employees or representatives of Performance On Hand relating to Ironclad or KONG® branded gloves.

**REQUEST FOR PRODUCTION NO. 57:** All documents related to conduct undertaken by ORR to identify and gather intelligence on any competition in the market for KONG® products, or to identify and gather intelligence on competitors who could potentially manufacture, distribute or sell substitutions for KONG® products.

**REQUEST FOR PRODUCTION NO. 58:** All documents related to products that ORR believed to be competitive with KONG® gloves at any time.

**REQUEST FOR PRODUCTION NO. 59:** All documents related to business analyses, on occasion performed and referred to as a "SWOT" analysis or matrix (strengths, weaknesses, opportunities and threats) created by ORR at any time with respect to its marketing and sales of KONG® gloves.

**REQUEST FOR PRODUCTION NO. 60:** All documents created by ORR which identify, discuss, and analyze the relevant market for sales of KONG® gloves between 2008-2015.

**REQUEST FOR PRODUCTION NO. 61:** All documents relating to ORR's marketing budgets for the sales of KONG® gloves for each year from 2008-2015.

**REQUEST FOR PRODUCTION NO. 62:** All documents relating to ORR's product placement marketing strategies for the sale of KONG® gloves.

**REQUEST FOR PRODUCTION NO. 63:** All documents relating to ORR's forecasts or projections for ORR's sales of KONG® gloves between 2008-2015.

**REQUEST FOR PRODUCTION NO. 64:** All documents reflecting or supporting the statement that KONG "has become the gold standard."

**REQUEST FOR PRODUCTION NO. 65:** All documents reflecting or supporting the statement that KONG "is a unique and sought after brand."

**REQUEST FOR PRODUCTION NO. 66:** All documents reflecting or supporting the statement that no competitor has "been successful in developing a meaningful substitute."

**REQUEST FOR PRODUCTION NO. 67:** All documents reflecting or supporting whether ORR sought that the KONG line be "continuously expanding."

**REQUEST FOR PRODUCTION NO. 68:** Documents sufficient to show all distributors, sub-distributors, re-sellers, representatives, and appointed agents, domestically and foreign, of ORR products at all relevant times.

**REQUEST FOR PRODUCTION NO. 69:** All documents demonstrating ORR's development and implementation at all relevant times of marketing plans for KONG in international markets.

**REQUEST FOR PRODUCTION NO. 70:** All documents or communications reflecting, discussing or referring to any research, analysis or identification of counterfeit KONG® products.

**REQUEST FOR PRODUCTION NO. 71:** All documents demonstrating ORR's development and implementation at all relevant times of marketing plans for KONG® gloves to the following companies: Exxon Mobil Corp., Chevron Corp., Royal Dutch Shell plc, CNOOC Ltd., PetroChina Co. Ltd., Phillips 66, ConocoPhillips, Valero Energy Corp., OJSC Rosneft Oil Co., China Petroleum & Chemical Corp., OJSC Surgutneftegas, OJSC LUKOIL Oil. Co., Reliance Industries Ltd., Marathon Petroleum Corp., Oil & Natural Gas Corp Ltd., Enterprise Products Partners LP, Ecopetrol SA, Canadian Natural Resources Ltd., EOG Resources, Inc., Suncor Energy Inc., TOTAL SA, Statoil ASA, BP p.l.c., Sasol Ltd., and PTT plc.

## INTERROGATORIES

**INTERROGATORY NO. 1**: Identify all sub-distributors employed or solicited by ORR to distribute KONG® branded gloves, including the names and contact information for all representatives of these distributors with whom ORR has communicated.

**INTERROGATORY NO. 2**: Identify all instances in which a distributor of safety or industrial products requested to purchase KONG® branded gloves from ORR and ORR did not sell KONG® branded gloves to them, including the date of such requests from each such distributor and the reason ORR did not sell KONG® gloves to each such distributor.

**INTERROGATORY NO. 3**: Identify all instances in which ORR sold KONG® branded gloves to a sub-distributor for a period of time, but subsequently stopped selling to that sub-distributor for any reason and describe the name of each such sub-distributor, the time period for which ORR was selling KONG® to that sub-distributor, the date ORR stopped selling KONG® to that sub-distributor, and the reason ORR stopped selling KONG® to the sub-distributor.

**INTERROGATORY NO. 4**: For each year from 2008 to 2015, identify who you believe were your most significant competitors able to offer substitute products or gain additional market share with substitute products, in competition with your marketing and sales of KONG® gloves.

**INTERROGATORY NO. 5:** For each year from 2008 to 2015, and for each competitor identified in response to Interrogatory No. 4, identify which specific product(s) offered by each competitor you believed to be the most competitive with KONG® gloves.

**INTERROGATORY NO. 6:** For each specific product identified in response to Interrogatory No. 5, identify when each of the products was first known to ORR to have been commercially available.

**INTERROGATORY NO. 7**: For each year from 2008-2015, and for each specific product identified in response to Interrogatory No. 5, list the price of each product that ORR understood to be the retail price for each such product in each year.

**INTERROGATORY NO. 8**: Identify all brands and models of gloves that ORR has marketed or sold to customers, including distributors and/or end user customers, in the petrochemical and exploration industry since January 6, 2009.

**INTERROGATORY NO. 9**: Identify and describe each and every business analyses, on occasion performed and referred to as a "SWOT" analysis or matrix (strengths, weaknesses, opportunities and threats) created by ORR at any time with respect to any of the competitors identified in response to Interrogatory No. 4 and any product identified in response to Interrogatory No. 5.

**INTERROGATORY NO. 10**: Identify all customers, either direct or indirect, of HexArmor Chrome Series® Cut Resistant Gloves, Ergodyne ProFlex® 900 Impact Gloves, Ergodyne ProFlex® 910 Impact Gloves, Superior Glove® Emerald CX® Cut Level 3 Glove, Ergodyne ProFlex® 800 Glove Liners, Superior Glove® Dexterity Cut Resistant Gloves, and KONG® branded gloves, sold by ORR.

**INTERROGATORY NO. 11**:  For each year from 2008 to 2015, describe with specificity all steps taken by ORR to identify and gather intelligence on any competition in the market for KONG® products, or to identify and gather intelligence on competitors who could potentially manufacture, distribute or sell substitutions for KONG® products.

**INTERROGATORY NO. 12**: For each year from 2008 to 2015, identify each marketing and/or advertising firm employed by ORR for the sale of KONG® gloves.

**INTERROGATORY NO. 13:** For each response to Ironclad's Requests for Admission that is not an unqualified admission, explain in detail the basis for such denial and identify each person who has knowledge of facts that support such denial.

IC APP 000077

**INTERROGATORY NO. 14:** Identify and calculate all categories of damages that YOU believe YOU are entitled to in connection with YOUR counterclaims, and identify within YOUR response the basis for each separate item of damage.

**INTERROGATORY NO. 15**: For each year from 2008 to 2015, list by total quantity and sales price, all of ORR's sales of KONG® gloves to each of the top 200 oil and gas companies (as measured by gross revenue).

**INTERROGATORY NO. 16**: For each of the top 200 oil and gas companies (as measured by gross revenue), identify the likely specific end-users of KONG® gloves who are employed by those companies.

**INTERROGATORY NO. 17**: For each of the top 200 oil and gas companies (as measured by gross revenue), identify the responsible individual or individuals with purchasing authority to purchase impact protection gloves to be used by its employees for each year from 2008 to 2015.

**INTERROGATORY NO. 18**: Identify all sales associates, including current contact information, sales representatives, or other individuals employed by ORR who sold, were responsible for selling, or were able to sell Ironclad branded gloves or KONG® branded gloves.

**INTERROGATORY NO. 19**: Identify all independent consultants, including current contact information, who were used or solicited by ORR and who sold, were responsible for selling, or were able to sell Ironclad branded gloves or KONG® branded gloves.


## REQUESTS FOR ADMISSIONS

**REQUEST FOR ADMISSION NO. 1:** Admit that the HexArmor Chrome Series® Cut Resistant Glove is a product designed and/or marketed for the petrochemical and offshore exploration market that is substantially similar to, or competitive with, KONG® branded products.

**REQUEST FOR ADMISSION NO. 2:** Admit that the Ergodyne ProFlex® 900 Impact Glove is a product designed and/or marketed for the petrochemical and offshore exploration market that is substantially similar to, or competitive with, KONG® branded products.

**REQUEST FOR ADMISSION NO. 3:** Admit that the Ergodyne ProFlex® 910 Impact Glove is a product designed and/or marketed for the petrochemical and offshore exploration market that is substantially similar to, or competitive with, KONG® branded products.

**REQUEST FOR ADMISSION NO: 4**: Admit that the Ergodyne ProFlex® 910 Impact Glove is a product designed and/or marketed for the petrochemical and offshore exploration market that is substantially similar to, or competitive with, KONG® branded products.

**REQUEST FOR ADMISSION NO. 5**: Admit that the Ergodyne ProFlex® 910 Impact Glove is a product designed and/or marketed for the petrochemical and offshore exploration market that is substantially similar to, or competitive with, KONG® branded products.

**REQUEST FOR ADMISSION NO 6:** Admit that the Ergodyne ProFlex® 910 Impact Glove is a product designed and/or marketed for the petrochemical and offshore exploration market that is substantially similar to, or competitive with, KONG® branded products.

**REQUEST FOR ADMISSION NO. 7:** Admit that ORR did not "devote such time and resources as required to actively promote, market and sell the Products in the Territory to the petrochemical, offshore exploration markets and other industrial markets" as required by Paragraph 5.1 of the Distributorship Agreement.

**REQUEST FOR ADMISSION NO. 8:** Admit that ORR did not "devote such time and resources as required to actively promote, market and sell the Products in the Territory to Exclusive Customers" as required by Paragraph 5.1 of the First Amendment.

**REQUEST FOR ADMISSION NO. 9**: Admit that ORR never collaborated with Ironclad to develop a product marketing plan for advertising campaigns and trade show activities as required by Paragraph 5.1 of the First Amendment.

Dated: January 26, 2016

Daniel H. Charest
State Bar No. 24057803
Warren T. Burns
State Bar No. 24053119
Will Thompson
State Bar No. 24094981
BURNS CHAREST LLP
500 North Akard Street, Suite 2810
Dallas, Texas 75201
Telephone: (469) 904-4550
Facsimile: (469) 444-5002
dcharest@burnscharest.com
wburns@burnscharest.com
wthompson@burnscharest.com

Attorneys for Plaintiff/Counterclaim
Defendant

IC APP 000079

Of Counsel:

Michael A. Sherman (California Bar No. 94783)
*Admitted Pro hac Vice*
Joshua S. Stambaugh (California Bar No. 233834)
*Admitted Pro hac Vice*
STUBBS ALDERTON & MARKILES, LLP
15260 Ventura Boulevard, 20th Floor
Sherman Oaks, California 91403
Telephone: (818) 444-4500
Facsimile: (818) 444-4520
masherman@stubbsalderton.com
jstambaugh@stubbsalderton.com

Attorneys for Plaintiff/Counterclaim Defendant

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing instrument has been served

on the following counsel of record, this 26th day of January, 2016, via email as indicated below:

Benjamin C. Fultz
Jennifer Metzger Stinnett
FULTZ MADDOX DICKENS PLC
2700 National City Tower
Louisville, Kentucky 40202
bfultz@fmdlegal.com
jstinnett@fmdlegal.com

Gregory M. Sudbury
Rachel Lee Hytken
QUILLING, SELANDER, LOWNDS, WINSLETT & MOSER, P.C.
2001 Bryan Street, Suite 1800
Dallas, Texas 75201
gsudbury@qslwm.com
rhytken@qslwn.com

*/s/ Will Thompson*
Will Thompson

**IC APP 000080**