## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

IRONCLAD PERFORMANCE WEAR
CORPORATION,

     Plaintiff,

v.

ORR SAFETY CORPORATION,

     Defendant

Case No. 3:15-cv-03453-D

## BRIEF IN OPPOSITION TO IRONCLAD'S
## MOTION FOR PROTECTION / MOTION TO QUASH

## I.  TABLE OF CONTENTS

TABLE OF CONTENTS…………………………………………………………………...i

TABLE OF AUTHORITIES…………………………………………………….……ii - iii

INTRODUCTION…………………………………………………………………………2

RELEVANT FACTUAL BACKGROUND……………………………………………….4

    The Development of KONG………………………………………………………..4

    ORR Safety's Distributor Network………………………………………………..5

    The Parties' Agreement……………………………………………………………6

    Ironclad's Breaches and the Litigation…………………………………………8

    ORR Safety's Preliminary Injunction Motion…………………………………...9

    ORR Safety's Repeated Attempts to Resolve Expedited Discovery Issues…………10

ARGUMENT………………………………………………………………………………14

    A.    IRONCLAD'S MOTION IS AN INAPPROPRIATE MECHANISM TO
           DELAY THE RULE 30(B)(6) DEPOSITION AND AN ABUSE OF THE
           LITIGATION PROCESS………………………………………………...14

    B.    THE TRADE DRESS TOPICS ARE RELEVANT TO THE
           PRELIMINARY INJUNCTION MOTION AND WERE INCLUDED IN
           BOTH PARTIES' BRIEFS…………………………………………………16

    C.    IRONCLAD IMPLICITLY SEEKS TO LIMIT THE
           MISAPPROPRIATION DISCOVERY TOPICS AS WELL……………….18

    D.    ORR SAFETY DID NOT WAIVE ANY TYPE OF INJUNCTIVE RELIEF
           AND SUCH RELIEF IS APPROPRIATE IN THIS CASE…………………19

    E.    IRONCLAD FAILS TO MEET ITS BURDEN ON
           PROPORTIONALITY…………………………………………………………21

CONCLUSION……………………………………………………………………………23

CERTIFICATE OF SERVICE…………………………………………………………..24

## II. TABLE OF AUTHORITIES

### <u>Cases</u>

*Alvarez v. Aldi (Tex.) LLC*
2014 WL 3624929, at *1 (N.D. Tex. July 22, 2014)……………………………….…………15

*Amazing Spaces, Inc. v. Metro Mini Storage*
608 F.3d 225, 251 (5th Cir. 2010)………………………………………………………………19

*Booth v. City of Dallas*
312 F.R.D. 427, 435 (N.D. Tex. 2015)…………………………………………………………..16

*Caraway v. Chesapeake Exploration LLC*
269 F.R.D. 627, 627–29 (E.D.Tex.2010)…………………………………………………....…15

*Convertino v. U.S. Dept. of Justice*
565 F. Supp. 2d 10, 14 (D.D.C. 2008)…………………………………………………...…22

*Cory v. Aztec Steel Bldg., Inc.*
225 F.R.D. 667, (D. Kan. 2005)………………………………………………………….…….22

*Ferrari S.P.A. Esercizio Fabriche Automobili E Corse v. Roberts*
944 F. 2d 1235, 1240, 1247-48 (6th Cir. 1991)…………………………………………….……20

*Galaviz v. C.R. England Inc.*
2012 WL 1313301, *2 (W.D. Tex. 2012)…………………………………………………..22

*Holmes v. N. Tex. Health Care Laundry Coop. Assoc.*
2016 WL 1366269, *4 (N.D. Tex. Apr. 6, 2016)…………………………………………..21

*McLaurin v. Detroit Entm't, LLC*
2010 WL 750194, *2 (E.D. Mich. 2010)…………………………………………………...22

*Merrill v. Waffle House, Inc.*
227 F.R.D. 475, 478 (N.D. Tex. 2005) (citing *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.3d 1482, 1485 (5th Cir. 1990)…………………………………………………21, 22

*Spawn v. W. Bank-Westheimer*
989 F.2d 830, 839 (5th Cir. 1993)………………………………………………………..15

*Talon Transaction Techs., Inc. v. Stoneeagle Servs., Inc.*
No., 3:13-CV-902-P, 2014 WL 6819846, at *2-3 (N.D. Tex. Dec. 4, 2014)………………..14, 15

## **Rules and Statutes**

Rule 26…………………………………………………………………………………………...18

Rule 37(a)(5)…………………………………………………………………………………..15

Confidential Information Redacted And Filed Under Seal

*Jeff Cordes, President and CEO of Ironclad September 2014* (ORR APP 2)**.**

As Defendant ORR Safety Corporation ("ORR Safety") feared, Plaintiff Ironclad Performance Wear Corporation's ("Ironclad") intent to gouge the KONG brand that ORR Safety worked years to build and replace it with counterfeit gloves (the "KONG Vibram Counterfeit") began well before Ironclad's manufactured "for cause" termination of the parties' agreements and this litigation. As evidenced by Jeff Cordes's[1] own notes and correspondence regarding Confidential Information Redacted And Filed Under Seal, this was Ironclad's ultimate plan for years. In February 2016 Ironclad actually did what it threatened to do in October 2015 – cut ORR Safety out of the contractually mandated supply chain of KONG by directly selling KONG and KONG Vibram Counterfeits to ORR Safety's customers (its confidential Distributor Network) – ORR Safety was forced to file its motion for injunctive relief.

Ironclad's most recent motion (DN51, Ironclad's Motion for Protection / Motion to Quash (the "Motion")), is nothing more than an eleventh hour delay tactic and attempt to prevent ORR Safety from taking a Rule 30(b)(6) deposition that is scheduled for this Tuesday on areas that Ironclad has known about for over a month. Ironclad will do anything to avoid discovery on fatally damaging, substantive issues, which while at the heart of this litigation are *also* the basis of ORR Safety's motion for injunctive relief. This includes Ironclad's breaches of the parties' agreements and trade dress violations in manufacturing and now selling gloves that are knock-offs of the KONG gloves, as well as Ironclad's creation of ORR Safety's fictional breaches in

---

[1] As discussed in ORR Safety's motion for injunctive relief, Ironclad's management's veracity and pattern of fraudulent behavior is a front and center of this dispute. Appendix to Motion for Temporary Restraining Order ("Appendix to TRO Motion") pp. 226-249 (citing to the lawsuit by Walls-Dickies against Mr. Cordes and other current management at Ironclad for fraudulent accounting).

1

order to try to obviate its own obligations under the parties' agreements.  Mischaracterizing not only the facts about ORR Safety's motion and discovery requests, Ironclad *blatantly* misstates the law in an attempt to avoid responding to the merits in this litigation.  This last minute filing is inappropriate, especially given the time that has elapsed since the motion for injunctive relief, the Court's February 26, 2016 Expedited Discovery Order ("Expedited Discovery Order"), and the numerous meet and confers between counsel.[2]

## INTRODUCTION

ORR Safety, the exclusive world-wide distributor of KONG, a protective work glove that prevents hand injury, seeks to prevent the improper attempts by KONG's manufacturer, Ironclad, to cut out ORR Safety from the supply chain that was single-handedly and specifically developed for KONG by ORR Safety.  Ironclad is also now manufacturing a new glove, which is simply a counterfeit version of a KONG glove using KONG's research and development, but which has been rebranded and relabeled as an Ironclad glove - the "KONG Vibram Counterfeit."  *See* Counterclaim ¶ 11.

In addition to manufacturing the KONG Vibram Counterfeit, and trying to bypass ORR Safety out of its contractual supply chain position, ORR Safety has recently found out Ironclad is also trying to steal the distribution network that ORR Safety solely created for KONG.  This is a blatant violation of the confidentiality provision in the distributorship agreement between ORR Safety and Ironclad.  These violations cause immediate and irreparable harm to ORR Safety by

---

[2] As ORR Safety's counsel was preparing its written response, it received the Court's order regarding a telephonic hearing on the Motion.  (DN 54.)  Although the Court advised that a written response was not necessary, the blatant bad faith and misstatements by Ironclad in the Motion, as well as its orchestrated delay in filing the Motion, compelled ORR Safety to refute its statements and state its (factually supported and evidence-based) position in writing.  ORR Safety will of course be prepared to argue its position at the telephonic conference scheduled by the Court; however, ORR Safety is hopeful that the Court can deny the motion summarily and Orr can direct its attention back to the deposition preparation.

destroying the goodwill associated with its distributor network as well as by diluting the KONG brand and trade dress.

As a result, ORR Safety seeks injunctive relief and moved the Court to take affirmative steps to stop Ironclad and to maintain the status quo during the pendency of the litigation.  The status quo has three necessary parts: (1) Ironclad not soliciting members of ORR Safety's distributor network to purchase KONG or the KONG Vibram Counterfeit gloves, (2) Ironclad not advertising the KONG gloves together with the KONG Vibram Counterfeit gloves, which due to their visual characteristics and similarities (*i.e.*, trade dress), cause marketplace confusion and the KONG brand, and (3) to maintain the pricing that was in place for the KONG gloves prior to the litigation.  ORR Safety has repeatedly alleged that the confusion Ironclad is causing with its marketing of the KONG Vibram Counterfeit - a glove intentionally and substantially similar in the collective visual appearance to the KONG glove - is the very basis for the injunctive relief.  Furthermore, in order for the Court to grant injunctive relief, ORR Safety must also prove likelihood of success on the merits, which includes a trade dress claim against Ironclad.

In order to gain additional discovery regarding the necessity of injunctive relief and maintaining the status quo, and pursuant to the Court's Expedited Discovery order allowing for the same, ORR Safety noticed Ironclad's deposition in applicable areas of inquiry (the "30(b)(6) Notice").  After numerous calls, emails, and revisions, ORR Safety believed the parties were very close to an agreement on the areas.  Instead, at approximately 10:00 PM on April 5, Ironclad served ORR Safety with a myriad of objections to the areas of inquiry – many of which had been previously resolved or never brought up before on the numerous meet and confers.

Then, less than twenty-four hours later, Ironclad filed its Motion for Protective Order. Notably, this motion was filed only three business days prior to the deposition that had been scheduled for well over a month.  But even ignoring the obvious procedural gamesmanship that this motion evidences, Ironclad's motion completely fails to acknowledge that ORR Safety made trade dress arguments throughout its motion got injunctive relief.

## RELEVANT FACTUAL BACKGROUND

### *The Development of the KONG*

Founded in 1948, ORR Safety is a family owned and operated business that has grown to be one of the most recognized and respected safety product distributors in the world.  *See* Counterclaim. ¶12.  ORR Safety's development of KONG began in 2007, when ORR Safety was invited as the sole safety company to participate in a steering committee that was made up of a collaborative, cross-functional group of safety and operational representatives from the world's leaders in the oil and gas industry, including ExxonMobil, ConocoPhillips, Superior Energy and Chevron (hereinafter "the Steering Committee").  *See* Counterclaim ¶ 13.  ORR Safety chose Ironclad to partner with it to design and manufacture a glove to help remedy the problems identified by the Steering Committee. *Id.*¶ 16.

The most recognizable component of the KONG glove is the back of hand protection provided by thermoplastic rubber ("TPR") in various shapes over the back of the hand, across the knuckle, and down each finger of the glove.  *Id.* ¶ 9.  These components, combined with recognizable color patterns, cuff types, labeling and packaging, create a trade dress that is one of the most dominant, recognizable aspects of KONG and the KONG line of gloves. *Id.*

4

### *ORR Safety's Distributor Network*

One of the primary functions of ORR Safety as the exclusive distributor of KONG was to find, develop, and maintain qualified distributors, sometimes referred to as "customers," to distribute KONG in domestic and international markets – ORR Safety's KONG distributor network. The distributor network at issue was created by ORR exclusively for KONG and KONG alone; the vast majority of the members of the distributor network purchase KONG gloves from ORR Safety and nothing else.

Importantly, Ironclad had no involvement directly with ORR Safety's distributor network, other than to fulfill ORR Safety's KONG glove orders (something that Ironclad had difficulty with throughout the relationship as detailed in the Counterclaim), and only reaped the benefits of ORR Safety's development of this distributor network. *Id.* Appendix to TRO Motion pp. 8-9. In fact, Ironclad often requested the full list of names and contact information of ORR Safety's distributor network, and ORR Safety never collectively provided this information because of its proprietary nature. *Id.* ¶ 9, Appendix to TRO Motion p. 6. Rather, ORR Safety provided Ironclad information regarding ORR Safety's distributor network only to help in strategy and other issues to further develop KONG. *Id.* ¶ 10, Appendix to TRO Motion pp. 6-7.

By engaging in the strategy ORR Safety chose for its distributor network, which includes in many instances implicit exclusivity in that customer's region, ORR Safety ensured value chain continuity for KONG. *Id.* ¶ 7, Appendix to TRO Motion pp. 4-5. Each member of the distributor network represented the best qualified local option for supply of KONG gloves into the vertical markets in their geographies. *Id.* Appendix to TRO Motion pp. 4-5. Furthermore, because of their local presence and general reputation, these members of the distributor network

developed and maintained relationships with end-users that cannot be re-created.  *Id.* Appendix to TRO Motion pp. 4-5.

### *The Parties' Agreements*

To memorialize their relationship and partnership with the KONG brand, ORR Safety and Ironclad negotiated an Exclusive License and Distributorship Agreement.  *See* January 6, 2009 Exclusive License and Distributorship Agreement ("Distributorship Agreement"), The Agreement designated ORR Safety as the worldwide exclusive distributor of KONG safety gloves. *See* Distributorship Agreement at Art. 2, Appendix to TRO Motion p. 91. Specifically, the Distributorship Agreement stated that ORR Safety was the exclusive distributor of all "'KONG' safety gloves (all sizes), together with any inventions or improvements now or hereafter embodied therein (whether or not patented or patentable in any jurisdiction) during the term of [the Agreement.]"  *See id.* at Sch. A, Appendix to TRO Motion p. 105.  For twenty years starting on January 6, 2009, Ironclad could only sell KONG gloves, and any derivative of KONG gloves that it and ORR Safety developed, to ORR Safety.  *See id.* § 4.1, Appendix to TRO Motion p. 94; Counterclaim ¶ 27.  In exchange for this twenty-year exclusivity, Ironclad retained the intellectual property rights, including the KONG trademark and a patent pending for the KONG design (specifically, the back of hand protection previously described). Distributorship Agreement §§ 7.1-7.2, Appendix to TRO Motion p. 95-96. To protect its investment in KONG, in the event that Ironclad terminated the Agreement **for any reason other than ORR Safety's material breach**, ORR Safety would be entitled to full assignment of the KONG trademark, its registrations, applications and goodwill and a license to any patent granted on KONG. *Id.* §§ 7.2(A), 7.3, Appendix to TRO Motion p. 96-97 (emphasis added).

The First Amendment to the Exclusive License and Distributorship Agreement was effectuated on January 1, 2015. *See* January 1, 2015 First Amendment to the Exclusive License and Distributorship Agreement ("Amendment"), Appendix to TRO Motion p. 109-125 (collectively the Distributorship Agreement and the Amendment are referred to as the "Agreements").[3]  Under the Amendment, ORR Safety is still the exclusive distributor of KONG gloves, which include the current styles and types on the market and "all gloves bearing at least one KONG Mark, any service mark, trade name or brand name containing the term 'KONG' or the 'KONG Trade Dress'…[.]" *See* Amendment at Sch. A, Appendix to TRO Motion p. 122. The KONG Trade Dress is defined as "**collectively, the characteristics of the visual appearance of [KONG gloves]** or packaging associated therewith and, to the extent permitted under applicable law, any applications therefor, whether registered or not." *See id,* Appendix to TRO Motion p. 122 (emphasis added).

The same Agreements that designated ORR Safety as the worldwide exclusive distributor of KONG safety gloves, *see* Agreements at Art. 2, Appendix to TRO Motion p. 91, also protected ORR Safety's confidential customer information and supply chain – its distributor network.  Sections 1.3[4] and 7.6 of the parties' Distributorship Agreement, Appendix to TRO Motion pp. 91, 97-98, designated ORR Safety's customer information, *i.e.*, its distributor network, as confidential.  Not only was Ironclad expected to protect this information, but it could only use it "as required in the performance of the Distributorship Agreement."  *See* Distributorship Agreement §7.6(A), Appendix 97.  This duty of confidentiality extends for a

---

[3] Because of the confidential and proprietary nature of the Agreements, ORR Safety has filed these with the Court under seal, consistent with the parties' Agreed Protective Order (DN 25).

[4] Note that Confidentiality Provision was originally Section 1.1 in the Distributorship Agreement, but was renumbered as Section 1.3 in the Amendment.  *See* Amendment § 2.3, Appendix to TRO Motion p. 119.  But the substance was not changed in the Amendment.

period of five (5) years after the Agreements' termination.  Confidential information was defined

as follows:

> "Confidential Information" means and includes (but is not limited to) all prices,
> costs, sale volumes, trademark information, product formulation, know-how,
> technical knowledge, technical bulletins, service manuals, software (including
> source and object codes), drawings, specifications, data sheets, sales and
> marketing techniques and information, photographs, artwork, designs,
> instructions, ***and all other information whether or not reduced to writing,
> relating to the*** manufacture, sale, marketing, distribution, and servicing of the
> [KONG gloves] or ***customers of the [KONG gloves], and any other information
> and trade secrets that might adversely affect either party's ability to compete in
> the market, as well as any other information relating to the business of either
> party*** to this Distributorship Agreement that may be disclosed or communicated to
> either party to this Distributorship Agreement at any time during the Term of this
> Distributorship Agreement which is not generally known in the trade or is not
> information which is in the public domain through no fault or breach of this
> Distributorship Agreement by the receiving party.

*See* Distributorship Agreement § 1.1, Appendix to TRO Motion p. 90 (emphasis added).  And

the Agreements go on to say that:

> During the Term of this Distributorship Agreement and for a period of five (5)
> years after its termination, each party (the "Receiving Party") shall not disclose to
> any third party, or use for any purpose other than as required in the performance
> of this Distributorship Agreement, any Confidential Information of the other party
> (the "Disclosing Party").

*See id.* § 7.6 (A), Appendix to TRO Motion p. 97.

### *Ironclad's Breaches and the Litigation*

Despite this clear grant of exclusivity, on the same day that it filed this lawsuit Ironclad

informed ORR Safety that it would begin creating KONG Vibram Counterfeits – gloves without

KONG branding and instead branded as "Ironclad" – to omit ORR Safety from the supply chain.

*See* Counterclaim ¶¶ 52-57.  But the KONG Vibram Counterfeit is, and was always intended to

be, what it is: a KONG glove.  But in blatant attempt to convert KONG business to Ironclad

business, thus cutting out ORR Safety from the supply chain and its contractual and financial

rights, Ironclad simply decided to "rebrand" these KONG gloves by removing the KONG designation to create the KONG Vibram Counterfeit.  The problem is that the KONG Vibram Counterfeit gloves look virtually identical to their KONG counterparts, thereby falling within the definition of KONG Trade Dress and within ORR Safety's exclusivity.

Additionally, Ironclad concocted ORR Safety's breaches under Sections 2.1 and 5.1 of the Agreements so that it could assert that it terminated the parties' Agreements with cause, and, therefore, ORR Safety would not be entitled to the KONG Mark, KONG Trade Dress, or related KONG intellectual property.   ORR Safety answered Ironclad's Complaint with its own Counterclaim, asserting actual breaches of the parties' Agreements, along with trade dress violations, false advertising claims, and other equitable causes of action due to Ironclad's obvious lack of good faith and fair dealing in its actions as they relate to ORR Safety.

### *ORR Safety's Preliminary Injunction Motion*

On or about February 9, 2016, ORR Safety first became aware that Ironclad contacted at least four members of its confidential distributor network and was actively selling the KONG Vibram Counterfeit.  ORR Safety believes that many other members of the distribution network received the Distribution Letter, or some similar form of the same, but they have simply not made ORR Safety aware of the same.  As a result, ORR Safety filed a motion for a temporary restraining order and preliminary injunction on February 19, 2016 (the "Preliminary Injunction Motion").

In that motion, ORR Safety alleged that Ironclad is pushing the KONG Vibram Counterfeit as a direct competitor glove to KONG to ORR Safety's supply chain – in hopes that it will dilute KONG's market presence, erode its goodwill, and degrade the value chain.  In the Preliminary Injunction Motion, ORR Safety asked the Court equitable relief because Ironclad a)

had breached its contractual obligation to keep ORR Safety's distribution network confidential *and* b) was causing confusion in the marketplace which would cause irreparable and unmeasurable harm to the KONG brand.  (*See* DN 31 at 8-9).[5]

On February 26, 2016, the Court set a schedule for expedited discovery in connection with the Preliminary Injunction Motion.  The Court ordered that the parties could take expedited discovery "limited in scope to that which is reasonably necessary for a party to support or oppose Orr's motion for a preliminary injunction."  (DN 45, Feb. 26, 2016 Order at 2.)

### *ORR Safety's Repeated Attempts to Resolve Expedited Discovery Issues*

Between telephone conferences, emails, and revised drafts of the 30(b)(6) Notice, ORR Safety tried no less than a dozen times over the course of a month to compromise with Ironclad so that it could proceed with the deposition on Expedited Discovery.  Despite the good faith attempts, on the eve of the deposition that had been firmly scheduled for at least three weeks, Ironclad filed this motion to try and again delay moving the ball forward in any substantive way in this litigation.

On March 8, ORR Safety served its expedited discovery requests, including a notice of deposition pursuant to Rule 30(b)(6) (the "30(b)(6) Deposition") (collectively, the "Expedited Discovery). (ORR APP 4 - 10, Mar. 8, 2016 Notice.)  On March 11, the parties met and conferred via telephone conference to reach a compromise regarding the scope of the topics and

---

[5] There was no unreasonable delay by ORR Safety in filing the Preliminary Injunction Motion because the distributor letters were the first evidence that Ironclad was actually proceeding rather than merely threatening to sell, the KONG Vibram Counterfeit gloves.  Furthermore, Ironclad was doing so in a way that diluted KONG trade dress. The relief ORR Safety requests is appropriate intermediate relief and effectively is an injunction against marketing the KONG Vibram counterfeits in a way that dilutes the KONG brand, as well as preventing Ironclad from selling any gloves (KONG or KONG Vibram Counterfeit) to KONG's distributor network. The issue is ripe because failure to enjoin will render ultimate relief (ORR Safety being awarded the KONG brand in the entirety) completely ineffective if Ironclad dilutes the brand in the course of year (or longer) of litigation.

the date of the deposition.[6]   ORR Safety repeatedly explained to Ironclad that the deposition

topics would include the trade dress topics.   Following that meeting, on March 13, ORR Safety

provided Ironclad with a revised list of topics for the 30(b)(6) Deposition, as well as a request to

confirm that the deposition would occur on April 12. (ORR APP 11 - 18, Mar. 13 Email from J.

Stinnett to D. Charest.)[7]   Those revised topics included ORR Safety's alleged breaches of §§ 2.1

and 5.1 of the Distributorship Agreement,[8] the packaging for KONG gloves and the packaging

for the KONG Vibram Counterfeit gloves, all of which according to Ironclad "implicates trade

dress issues." (Motion at 8.)

The following day, on March 14, ORR Safety sent a letter to Ironclad summarizing the

parties' agreement regarding scheduling the Rule 30(b)(6) Deposition.  (ORR APP 22 - 23, Mar.

---

[6] As a professional courtesy, ORR Safety agreed it would not notice the deposition of Ironclad's 30(b)(6) witness within three days as it was entitled to under the Court's Order on Expedited Discovery.  Ironclad has always indicated that its 30(b)(6) witness would be Jeff Cordes, and ORR Safety agreed to schedule the deposition around Cordes's schedule alone.  Cordes was allegedly unavailable the last two weeks of March because he was "closing sales" for the quarter.  In exchange, however, Ironclad agreed that it would not argue that ORR Safety had delayed in refiling its Motion for Preliminary Injunction (using expedited discovery and the deposition testimony). (*See* ORR APP 19 - 21, Cordes' Deposition Letter Agreement.)  Note that at this point Ironclad has had over a month to prepare Mr. Cordes in the relevant areas raised in the Motion for Preliminary Injunction.

[7] Ironclad misleadingly suggests that ORR Safety made no efforts to produce a corporate representative since the initial 30(b)(6) was postponed in February due to a death in the witness's family.  This, like the vast majority of Ironclad's brief, is, at best, only half of the story.  In that same March 13 email cited above, ORR Safety offers to re-schedule its corporate representative's deposition for March 18 after it had been postponed due to the fact that Ironclad's counsel had to cancel its 30(b)(6) Deposition of ORR Safety due to weather related travel delays. Ironclad initially scheduled its 30(b)(6) Deposition before the ORR Safety's Motion for Preliminary Injunction was filed.  The parties then rescheduled the deposition and reset it for March 8 – again, before ORR Safety's Motion for Preliminary Injunction.  After the deposition was cancelled by Ironclad's counsel on March 7, Ironclad affirmatively chose not to reschedule the 30(b)(6) it had previously noticed – even after ORR Safety made its well-prepared corporate representative available any time the following week.

[8] Ironclad does not take issue with ORR Safety's areas of inquiry relating to Section 2.1 of the Distributorship Agreement (ORR Safety sold substantially similar gloves as KONG), but does object to inquiries relating to Section 5.1 (ORR Safety did not support the KONG brand).  Both of these areas are necessary for the injunctive relief discovery for the same reasons.  ORR Safety believes that Ironclad manufactured its alleged breaches of these sections so it could terminate the Distributorship Agreement "with cause," thereby retaining the intellectual property rights – patent, trademark, and trade dress – of the KONG brand.  ORR Safety therefore argues that the termination was without cause, which means the entire KONG brand would then belong to ORR Safety.  ORR Safety does not want Ironclad confusing its customers with the KONG Vibram Counterfeit (because it will own KONG at the end) and, if Ironclad continues to do so, KONG will be worthless – hence the irreparable harm and the need for injunctive relief.

14, 2016 Letter from J. Stinnett. to D. Charest.)   Ironclad immediately sent a response disagreeing with respect to the timing of the deposition and the language used in the letter. (ORR APP 24 - 25, Mar. 14, 2016 Email from D. Charest to J. Stinnett.)   Nowhere, however, did Ironclad suggest it would need to seek intervention from the Court regarding any deposition topics.   ORR Safety agreed to revise the language in the letter regarding the issue of delay. (ORR APP 26 - 28, Mar. 14, 2016 Email from J. Stinnett. to D. Charest.)   Ironclad again responded, this time indicating that the language of the agreement regarding the timing of the deposition was "closer to an acceptable proposal." (ORR APP 29 - 31, Mar. 14, 2016 Email from D. Charest to J. Stinnett.) Ironclad also noted that with respect to written discovery, Ironclad would be generating a written response.   Ironclad made no mention of any additional objections to the deposition topics.  (*Id.*)

On March 16, Ironclad indicated it would be sending a revised letter agreement regarding the timing of the Rule 30(b)(6) Deposition and also noted it would be "sending back comments on the 30(b)(6) notice, hopefully, today."  (ORR APP 32 - 36, Mar. 16, 2016 Email from D. Charest to J. Stinnett.)  Ironclad subsequently provided comments on the revised topics in the Rule 30(b)(6) Notice; however, Ironclad did not object to the inclusion of many of the topics on which Ironclad now seeks a protective order.  For example, Ironclad failed to object to the topic "[t]he packaging for KONG gloves and the packaging for the KONG Vibram Counterfeit gloves."[9] ORR Safety proposed changes and explained which changes ORR Safety would not accept.   In neither Ironclad's proposed changes nor ORR Safety's response was there any indication that Ironclad would seek a protective order against topics relating to ORR Safety's trade dress claims or Section 5.1 of the Distribution Agreement.  (ORR APP 37 - 39, Mar. 17,

---

[9] For purposes of the 30(b)(6) Notice, ORR Safety later agreed to refer to the KONG Vibram Counterfeit Gloves as the "Disputed Gloves".  Ironclad cannot claim that the substance of the topic changed between March 16 and April 6.  Indeed, Ironclad's delay should be considered a waiver of its right to dispute that topic.

2016 12:24 PM (ET) Email from J. Stinnett to D. Charest.)   Indeed, ORR Safety asked to confirm that other than the inclusion of Section 5.1 of the Distribution Agreement, there were no other outstanding disputes.   (*Id.*)   Ironclad, however, refused to take a position.   (ORR APP 40 - 43, Mar. 17, 2016 Email from D. Charest to J. Stinnett.)

The parties had yet *another* telephone conference on March 18 to discuss the Expedited Discovery and the Rule 30(b)(6) Deposition topics, to which ORR Safety again sent revised areas of inquiry.   On March 23, counsel for Ironclad sent an email confirming the April 12 date by stating "[c]onfirming that most if not all of the anticipated representatives on behalf of Ironclad will be available on April 12, let's lock down that date."   (ORR APP 44, Mar. 23, 2016 Email from M. Sherman to J. Stinnett.)   On March 24, as acknowledged in Ironclad's Motion, the parties discussed telephonically yet again the Rule 30(b)(6) Deposition topics.   ORR Safety sent another version of the Rule 30(b)(6) Notice, which again included the same topics at issue in Ironclad's Motion.   (ORR APP 45, Mar. 24, 2016 Email from J. Stinnett to M. Sherman.)

On March 31, 2016, ORR Safety resent the Rule 30(b)(6) Notice, which corrected a date typo, and also asked when Ironclad was going to respond to the Expedited Discovery as promised and produce responsive documents.   (ORR APP 46 - 64, Mar. 31, 2016 Email from J. Stinnett to Ironclad's counsel.)[10]   The Rule 30(b)(6) Notice on March 31 was nearly identical to the one sent on March 24 as both included the topics at issue in the Motion.   Ironclad's counsel never responded, so ORR Safety's counsel again asked about the Expedited Discovery.   (ORR APP 65, Apr. 1, 2016 Email from J. Stinnett to W. Thompson.)   Ironclad's counsel finally responded and said he had circulated a final draft of the response to the Rule 30(b)(6) Notice and

---

[10] Ironclad is also refusing to provide *any* substantive responses to ORR Safety's Expedited Discovery Requests and has produced limited documents in response to same.   (*See* ORR APP 82 - 101, April 6, 2016 Ltr. from J. Stinnett to W. Thompson.)

expected to send it in short order.  (ORR APP 65-67, Apr. 1, 2016 Email from W. Thompson to J. Stinnett.)

But Ironclad did not actually serve the objections until April 5 after 10 PM ET.  (ORR AO 68 - 81, Apr. 5, 2016 Email from B. Kamelgard to J. Stinnett.)  These objections contained entirely new disputes that had never been raised on the parties numerous phone calls and emails detailed above, as well as raised disputes that the parties had seemingly agreed upon after ORR Safety drastically limited areas to simply pacify Ironclad and allow the deposition to proceed.[11] Then, less than twenty-four hour after serving the objection, and without contacting counsel for ORR Safety to discuss the same, Ironclad sought a protective order on April 6, 2016.  ORR Safety strongly suspects that this was Ironclad's plan all along – delay.

## ARGUMENT

### A.  IRONCLAD'S MOTION IS AN INAPPROPRIATE MECHANISM TO DELAY THE RULE 30(B)(6) DEPOSITION AND AN ABUSE OF THE LITIGATION PROCESS

Ironclad has filed this last minute motion with the sole purpose to disrupt the deposition. It is clear that it will do everything in its power to prevent the Court from addressing any of the substantive merits of this case, because it knows it will be fatal to their fabricated positions. But courts in this district do not "encourage this sort of eleventh-hour filing" of a motion for protective order when the motion could have been filed well in advance of Tuesday's deposition. *See Talon Transaction Techs., Inc. v. Stoneeagle Servs., Inc.*, No., 3:13-CV-902-P, 2014 WL 6819846, at *2-3 (N.D. Tex. Dec. 4, 2014).  In *Talon*, like here, the parties had had their initial meet and confer regarding the deposition topics several weeks before the motion was filed, yet

---

[11] ORR Safety  believed that the only issue still in dispute was whether or not Ironclad would have its witness prepared to testify to ORR Safety's alleged breaches of Section 5.1 of the Distributorship Agreement, which led to the allegedly "with cause" termination.  Ironclad's counsel was concerned that there were years of issues that ultimately led to this decision, so ORR Safety limited tailored in area of inquiry 7 to "[a]ll facts or evidence relied on by Ironclad in deciding to terminate the Distributorship Agreement on October 7, 2015 due to ORR Safety's alleged breaches of Section 5.1 of the Distributorship Agreement."

14

the motion was filed less than a week before the deposition. *Id.* The *Talon* court denied the motion to compel warning that "'emergency' motions of this sort presented to the undersigned in the future will be summarily denied as abusing the litigation process and showing inadequate regard for the Court's time and resources and the opposing party's entitlement to a reasonable opportunity to respond." *Id.* Indeed, other courts have considered similar motion's timing as grounds alone for denial. *Alvarez v. Aldi (Tex.) LLC*, 2014 WL 3624929, at *1 (N.D. Tex. July 22, 2014); *Caraway v. Chesapeake Exploration LLC*, 269 F.R.D. 627, 627–29 (E.D.Tex.2010).

As discussed above, the original Notice was sent on March 8, nearly a month ago. ORR Safety immediately offered to meet and confer, and indeed, the parties held numerous discussions and sent numerous emails. ORR Safety agreed time after time to revise the 30(b)(6) issues – not because it believed it had to under the directives of the Court's Expedited Discovery Order – but in an effort to actually *proceed* with the litigation. But Ironclad made no effort to seek the Court's intervention in a timely fashion, and in fact, did the exact opposite by waiting to file it three business days prior to the deposition. In none of the discussions did Ironclad ask ORR Safety to remove any of the topics at issue in this Motion. The only disputed issue – which also could have been raised well in advance of April 6 – was Section 5.1 of the Distribution Agreement. Instead, Ironclad intentionally waited to disrupt ORR Safety's deposition preparation and force ORR Safety to hurriedly prepare a response to a motion that Ironclad has had over a month to prepare.[12] Such tactical gamesmanship is contrary to the practice in this Court and should not be condoned.[13]

---

[12] Ironclad misleadingly attempts to portray itself as a smaller party with fewer resources than ORR Safety, a privately held family-owned business. In reality, Ironclad is a publicly traded company with a team of two active law firms and at least four attorneys participating in almost all activities.

[13] ORR Safety further asks the Court for the costs and fees associated with responding to this motion, pursuant to Rule 37(a)(5) as the motion, particularly the timing of the motion, is not substantially justified. *See, e.g., Spawn v. W. Bank-Westheimer*, 989 F.2d 830, 839 (5th Cir. 1993) (substantially justified means having a "reasonable basis

**B. THE TRADE DRESS TOPICS ARE RELEVANT TO THE PRELIMINARY INJUNCTION MOTION AND WERE INCLUDED IN BOTH PARTIES' BRIEFS**

The discovery ORR Safety seeks is relevant to the Preliminary Injunction Motion and does not go beyond the scope of any Court Order.  In seeking preliminary injunctive relief, ORR Safety asks the Court to prevent irreparable harm based on Ironclad's improper dilution of the Kong trade dress.  ORR Safety, as explained in the Preliminary Injunction Motion and disputed in Ironclad's opposition thereto, is likely to succeed on the merits of the litigation; *i.e.*, whether Ironclad improperly terminated the Distributorship Agreement and whether Ironclad's actions in manufacturing and now selling the KONG Vibram Counterfeits is a breach of the parties' agreements and a trade dress violation.

Ironclad misleadingly suggests that the trade dress issue was not raised in the Preliminary Injunction Motion.  This ignores Ironclad's own argument that a preliminary injunction is inappropriate because [ORR Safety] has not "presented tangible evidence of brand dilution or evidence it is being cut out of any market."  (DN 38, Opp'n to Preliminary Injunction Motion at 25.)  But ORR Safety *can* find additional evidence to rebut that argument by obtaining discovery on that issue – including the deposition of Ironclad on this issue.

Moreover, of utmost concern to ORR Safety is the manner in which Ironclad is advertising the KONG glove concurrently with the KONG Vibram Counterfeit.  By doing this, Ironclad is doing two things, both of which irreparably harm ORR Safety and the KONG brand that will inevitably belong solely to ORR Safety at the conclusion of this litigation and which therefore warrant injunctive relief.  First, the joint advertising is capitalizing on the trade dress confusion between the KONG and the KONG Vibram Counterfeit gloves, in hopes that ORR

---

both in law and fact"); *Booth v. City of Dallas*, 312 F.R.D. 427, 435 (N.D. Tex. 2015) (finding motion was not "substantially justified" where party did not confer with other side about specific issues prior to filing motion for protective order.)

Safety's confidential distributor network for KONG will simply think the KONG Vibram Counterfeit is the newest iteration of the KONG.  This will dilute the KONG brand.  Second, by promoting the KONG Vibram Counterfeit as being superior to the original KONG gloves in the Distributorship Letter, Ironclad is diluting the KONG brand.

ORR Safety has the right to preserve the status quo of the KONG brand because it is likely to succeed on the merits of both Ironclad's claims of alleged breach against ORR Safety that allegedly warranted termination with cause *and* on its own claims.  Ironclad ignores this key issue because it does not want to produce even more damaging information that would demonstrate the need for a preliminary injunction.  Confidential Information Redacted And Filed Under Seal

Confidential Information Redacted And Filed Under Seal

(*See* ORR APP 105 - 107) ("Confidential Information )[15]  And in the limited discovery Ironclad has actually produced pursuant to Expedited Discovery, ORR Safety now knows it was Ironclad and Cordes's plan Confidential Information Redacted And Filed Under Seal   Confidential Information Redacted And Filed Under Seal (ORR APP 2)

ORR Safety has always argued that the trade dress issue is relevant to its Preliminary Injunction Motion because the communications themselves are diluting the value of the KONG trade dress to the extent Ironclad is claiming the KONG Vibram Counterfeit is a superior

---

[14] Note that both ORR APP 102 - 104 and ORR APP 105 - 107 were produced pursuant to a third party subpoena and not produced by Ironclad despite it clearly being responsive to the Expedited Discovery.
[15] Ironclad is also refusing to provide *any* substantive responses to ORR Safety's Expedited Discovery Requests. (*See* ORR APP 82 - 101, April 6, 2016 Ltr from J. Stinnett to W. Thompson.)

product.  *See, e.g.,* (DN 35 at 26 ("ORR Safety now knows that Ironclad is using trade dress confusion to directly try and get ORR Safety's distributor network to purchase the KONG Vibram Counterfeit.")[16]  This argument is at the heart of the Preliminary Injunction Motion. ORR Safety needs to enjoin Ironclad from continuing to confuse ORR Safety's confidential distributors through misleading marketing that dilutes the KONG trade dress.  As ORR Safety made clear throughout the Preliminary Injunction Motion, such communications could irreparably harm ORR Safety given its likelihood to succeed on the merits of the litigation – which is a prerequisite to any injunctive relief.

Finally, it cannot be ignored that Ironclad spends **seven (7) full pages** of its response to the Motion for Preliminary Injunction arguing why ORR Safety is wrong on the trade dress and explaining in detail why the KONG Vibram Counterfeit gloves do not violate KONG's trade dress.  Yet now it does not want to give ORR Safety the opportunity to even ask about it basis of the response.  Ironclad's position is simply untenable in light of the Court's Expedited Discovery Order allowing each party to take discovery "reasonably necessary for a party to support or oppose Orr's motion for a preliminary injunction. But discovery otherwise within the scope of Rule 26(b)(1) is not prohibited under this order, provided it is also relevant to the merits of Orr's motion for a preliminary injunction."

### C. IRONCLAD IMPLICITLY SEEKS TO LIMIT THE MISAPPROPRIATION DISCOVERY TOPICS AS WELL

Although Ironclad admits its communications with ORR Safety's confidential distributor network is relevant, it improperly asks the Court to limit the scope of discovery to the six letters it admits that it sent and that ORR Safety was aware of before discovery began.  *See* Motion at 8 ("ORR cannot credibly claim issues concerning the marketing and advertising of the two lines of

---

[16] Even Ironclad is forced to concede that the trade dress issues are at least "tangentially related" to the solicitation letters and distribution network.

gloves suddenly became the subject matter of injunctive relief based on a nexus between a handful of solicitation letters and a supposedly confidential distribution network.")  Ironclad's argument is nothing more than a not-so subtle attempt to avoid the entire purpose of discovery, which is to allow the other side to learn additional information relevant to its claims.

Here, even the limited discovery Ironclad has produced revealed that it has made improper communications and solicitations to ORR Safety's customers *in addition to* the six customers it admits to sending the letters.  For example, Ironclad's Jeff Cordes sent an unsolicited email to one of ORR Safety's customers that it is *not* one of the six identified, asking for the contact information for the general manager.  (*See* ORR APP 108, Ironclad_0000830.) In that improper solicitation, Mr. Cordes stated "We own the brand and make all your Kong Gloves.  We have a very big change that we must talk about.  Would you please send me the contact info for your general manager so I may address this with him." *Id.*  ORR Safety is entitled to ask Ironclad's corporate representative about any additional communications with actual and potential customers of both the KONG Vibram Counterfeit and KONG gloves in order to determine if additional members of ORR Safety's distributor network have been misappropriated solicited.  ORR Safety certainly cannot take Ironclad's word for it.

### D. ORR SAFETY DID NOT WAIVE ANY TYPE OF INJUNCTIVE RELIEF AND SUCH RELIEF IS APPROPRIATE IN THIS CASE.

Ironclad argues that "[a]t the preliminary injunction stage, the only remedy available to 'the owner of the trade dress goodwill' is an order enjoining the sale of the infringing products in order to prevent dilution of the trade dress," citing several cases. (Motion at 10.)  This is a misstatement of the law.  None of these cases support imposing such a limitation to a party's remedy and, in fact, none of the cases even come close to holding what Ironclad claims they stand.  In *Amazing Spaces, Inc. v. Metro Mini Storage,* 608 F.3d 225, 251 (5th Cir. 2010), the

court reversed a dismissal of a trade dress claim because the court limited discovery on it.  In *Ferrari S.P.A. Esercizio Fabriche Automobili E Corse v. Roberts*, 944 F. 2d 1235, 1240, 1247-48 (6th Cir. 1991), while the court did issue an injunction the court nowhere suggests an order enjoining the sale of the products is the *only* remedy.  Similarly, the final case, an unpublished case from Utah, does not limit a party's remedies such that ORR Safety could have no remedies available.  Nevertheless, even if Ironclad's case law stood for the proposition that there could be some waiver here, all of those cases involve Lanham Act claims whereas this case involves a contractual trade dress claim.

Finally, Ironclad inappropriately attempts to argue the merits of the Preliminary Injunction Motion, claiming that even if the deposition topics are relevant, the injunctive relief sought is inappropriate because the issue is not "ripe".  This argument relies on Ironclad's mistaken understanding of a "syllogism".[17]   Not only does Ironclad incorrectly describe a syllogism but their own syllogism fails because ORR Safety[18] "checks every 'box'" in Ironclad's syllogism.   Ironclad did, in fact, terminate the agreement; Ironclad terminated the agreement on pretextual grounds; ORR Safety obtained the trademark to the KONG gloves; the Counterfeit KONG Vibram gloves infringe the KONG trade dress and therefore the KONG brand is diluted. Ironclad claims that *none* of these issues are relevant to the preliminary injunction stage.  ORR Safety seeks a preliminary injunction to prevent the trade dress infringement and dilution which Ironclad acknowledged throughout its opposition to the preliminary injunction.  For example, on page 17 of its opposition, Ironclad states that ORR Safety's purported *failure* to provide evidence

---

[17] A proper "syllogism" is an argument the conclusion of which is supported by two premises, of which one (major premise) contains the term (major term) that is the predicate of the conclusion, and the other (minor premise) contains the term (minor term) that is the subject of the conclusion; common to both premises is a term (middle term) that is excluded from the conclusion. A typical form is "All A is C; all B is A; therefore all B is C.".

[18] Presumably on page 11 Ironclad meant to say "But for [ORR Safety] to own the KONG mark, it must 'check' each box" even though the brief says "But for Ironclad to own the KONG mark…"

of customer confusion necessitates a denial of preliminary injunctive relief.   Accordingly, if Ironclad is correct that ORR Safety's evidence was insufficient, which it was not, ORR Safety is entitled to obtain evidence through discovery on this very issue.   Ironclad cannot have it both ways.

More importantly, and what cannot be stressed enough, the injunction is necessary because when ORR Safety succeeds on the merits at the end of the case, it needs protection so that it has more than a hollow victory.   If Ironclad's dilution efforts are allowed to continue, ORR Safety will have no remedy.

### E.  IRONCLAD FAILS TO MEET ITS BURDEN ON PROPORTIONALITY

Finally, Ironclad argues that the burden to produce a witness on the trade dress issues is disproportionate to the benefit to ORR Safety, but Ironclad fails to meet its own initial burden of providing evidence supporting such a claim.   To prevail on a motion for a protective order based on proportionality, the party opposing discovery "must produce *specific evidence* that each challenged discovery request causes it to incur an actual and undue burden." *Merrill v. Waffle House, Inc.*, 227 F.R.D. 475, 478 (N.D. Tex. 2005) (citing *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.3d 1482, 1485 (5th Cir. 1990) (holding that a party resisting discovery must show specifically how each interrogatory or production request is overly broad, burdensome or oppressive and that a protective order request must contain the same showing of the specific objections)) (emphasis added).   The recent amendments to "Rule 26 do not alter the burdens imposed on the party resisting discovery." *Holmes v. N. Tex. Health Care Laundry Coop. Assoc.*, 2016 WL 1366269, *4 (N.D. Tex. Apr. 6, 2016).   A party still bears the burden of making a specific objection and showing that the discovery fails the proportionality calculation mandated by Rule 26(b) by coming forward with specific information to address—insofar as that information is available to it—the importance of the issues at stake in the action, the amount in

21

controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. *Id.* at *5.

Courts have consistently allowed discovery to move forward because the objecting party did not provide sufficient evidence to support its objection. *See Merrill*, 227 F.R.D. at 478; *Galaviz v. C.R. England Inc.*, 2012 WL 1313301, *2 (W.D. Tex. 2012) (denying motion for protective order in part because objections were not sufficiently specific); *McLaurin v. Detroit Entm't, LLC*, 2010 WL 750194, *2 (E.D. Mich. 2010) (denying motion for protective order in part because movant failed to properly support motion); *Convertino v. U.S. Dept. of Justice*, 565 F. Supp. 2d 10, 14 (D.D.C. 2008) (granting motion to compel because objecting party did not provide sufficient information to support the objection on grounds of burden); *Cory v. Aztec Steel Bldg., Inc.*, 225 F.R.D. 667, (D. Kan. 2005) (granting motion to compel in part because objecting party failed to provide sufficient details or information regarding the burden to comply with the request).

Ironclad fails to provide any support for its conclusory statements that it "must prepare and present a separate witness than the witness who will be testifying to the rest of the topics" and that it "is a smaller company where the time and expense of preparing an additional witness is not trivial." (Motion at 13.)  Ironclad does not provide a single affidavit or other documentation about the impact of the time and expense of preparing a witness on these additional topics.   Furthermore, Ironclad has known about these topics for well over a month. Absent any such evidence, its motion for a protective order must be denied on this basis as well.

**CONCLUSION**

Each of the topics in the 30(b)(6) Notice is relevant to the Preliminary Injunction Motion. Discovery on trade dress does not go beyond the scope of any Court's Expedited Discovery Order.   Further, trade dress is a key part of the motion for injunctive relief, including ORR Safety's contention that it will ultimately own the entirety of the KONG brand once successful in this litigation per the parties' distributorship agreement.  By including confusing trade dress links in the letters to ORR Safety's distributor network, Ironclad is diluting KONG in an irreparable way, so that when ORR Safety is ultimately successful, it will be a Pyrrhic victory.  ORR Safety is entitled to depose Ironclad's corporate representative on all of the noticed topics.  Therefore, ORR Safety asks that the Court summarily denies Ironclad's Motion.

<div style="margin-left:40%">

Respectfully submitted,

 s/ Jennifer Metzger Stinnett
Benjamin C. Fultz (admitted *pro hac vice*)
Jennifer Metzger Stinnett (admitted *pro hac vice*)
FULTZ MADDOX DICKENS PLC
2700 National City Tower
Louisville, Kentucky 40202
Telephone: (502) 588-2000
Facsimile: (502) 588-2020
bfultz@fmdlegal.com
jstinnett@fmdlegal.com

-and-

Gregory M. Sudbury
Texas Bar No. 24033367
Rachel Lee Hytken
Texas Bar No. 24072163
QUILLING, SELANDER, LOWNDS, WINSLETT & MOSER, P.C.
2001 Bryan Street, Suite 1800
Dallas, Texas 75201
(214) 871-2100 (Main)
(214) 871-2111 (Fax)
gsudbury@qslwm.com

</div>

23

*Counsel for Defendant and Counterclaim Plaintiff ORR Safety Corporation*

## CERTIFICATE OF SERVICE

On April 8, 2016 I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all counsel of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

s/ Jennifer Metzger Stinnett
Counsel for Defendant and Counterclaim Plaintiff