**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| **IRONCLAD PERFORMANCE WEAR CORPORATION,** | |
| Plaintiff, | |
| v. | **Case No. 3:15-cv-03453-D** |
| **ORR SAFETY CORPORATION,** | |
| Defendant. | |

**BRIEF IN SUPPORT OF**
**DEFENDANT'S MOTION TO COMPEL**

## TABLE OF CONTENTS

**PAGE(S)**

**TABLE OF CONTENTS**………………………………………………………………...**i**

**TABLE OFAUTHORITIES**…………………………………………………………**ii**

**I.      INTRODUCTION**………………………………………………………**1**

**II.     BACKGROUND**………………………………………………….....…....**2**

**III.    ANALYSIS**………………………………………………………..…......**11**

**IV.     CONCLUSION**………………………………………………………**17**

**CERTIFICATE OF SERVICE**……………………………………………………..**18**

## II. TABLE OF AUTHORITIES

**PAGE(S)**

<u>Cases</u>

*Barber v. Dolgencorp of Texas, Inc.*
    2010 WL 1375193 (E.D.Tex. Mar. 31, 2010)…………………………………………10, 15

*Crosby v. Louisiana Health Serv. and Indem. Co.*
    647 F.3d 258, 262 (5th Cir. 2011)……………………………………………………11

*E.E.O.C. v. Knight Transp., Inc.*
    2008 WL 4056189 (N.D.Miss. Aug. 25, 2008)…………………………………...10, 16

*Jepsen v. Florida Board of Regents*
    610 F.2d 1379 (5th Cir. 1980)……………………………………………………...…15

*McDonald v. ExxonMobil Chemical Co.*
    2001 WL 34109381 (S.D.Tex. Dec. 7, 2001)…………………………………………....16

*Riley v. Walgreen Co.*
    233 F.R.D. 496, 501 (S.D.Tex. 2005)………………………………………………10, 15, 16

*Seibu Corp. v. KPMG, LLP*
    2002 WL 87461 (N.D.Tex. Jan. 18, 2002)……………………….…………………10, 15

<u>Rules and Statutes</u>

Fed. R. Civ. P. 26……………………………………………………………………………11

Fed. R. Civ. P. 37……………………………………………………………………...2, 16

For its Brief in Support of Motion to Compel, Defendant/Counterclaim Plaintiff ORR Safety Corporation ("ORR") states as follows:

## I.      INTRODUCTION

ORR and Plaintiff/Counterclaim Defendant Ironclad Performance Wear Corporation ("Ironclad") have each asserted in this lawsuit that the other party failed to live up to its obligations with respect to the contracts between the two parties.  In particular, Ironclad claims in its Complaint, among other things, that ORR was obligated, but failed, to actively promote and market a line of gloves manufactured by Ironclad and distributed by ORR pursuant to a distributorship agreement between them.  On the other hand, ORR alleges in its Counterclaim that it was Ironclad that failed to live up to its contractual obligations, including by failing to provide support for ORR's marketing activities and failing to timely deliver products ordered by ORR's customers.  Furthermore, ORR argues that Ironclad's termination of the parties' agreements was pre-textual, and, despite asserting to the contrary, without cause.  The result of the without cause termination means that all of the intellectual property at issue belongs to ORR. Thus, each party has accused the other of poor performance with respect to the relationship between them.

In light of those accusations, ORR has requested the personnel files of nine individuals that are all former employees of Ironclad and that had substantial responsibilities relating to ORR's and Ironclad's relationship and business dealings.  Those personnel files are believed to contain performance reviews of such Ironclad employees, including the three Vice Presidents of Sales that Ironclad cycled through in just three years, as well as information about why the employees resigned or were terminated.  As the performance of Ironclad's employees that were involved in its relationship with ORR has been placed into question by both Ironclad's and

1

ORR's allegations in this case, the personnel files and the performance reviews within them are clearly relevant.  Further, ORR has also requested all agreements, including severance, termination, separation, or consulting agreements, between Ironclad and these former employees.  Such agreements are crucial to evaluating the credibility of, and potential loyalty to Ironclad of, these former employees, each of whom will likely be a witness in this matter.

Despite the clear relevance of the documents in the personnel files, Ironclad has steadfastly refused to produce the documents, instead making conclusory assertions about privacy rights and confidentiality concerns.  Even after ORR agreed that the personnel files could be produced confidentially pursuant to the Agreed Protective Order entered in this case, that insurance information and driver's licenses could be removed, and that social security numbers could be redacted, Ironclad has insisted that it will not produce the relevant personnel files.  In fact, ORR has even offered to attempt to further narrow its request if Ironclad would simply provide an index as to the contents of the requested personnel files.  Ironclad has refused to even do that.

Accordingly, ORR is left with no choice but to move to compel the production of the personnel files.  For the reasons set forth in more detail below, the Court should order Ironclad to produce the personnel files, including any agreements between the former employees and Ironclad that have been requested by ORR.  Pursuant to Federal Rule of Civil Procedure 37(a)(5), the Court should further award ORR its reasonable expenses, including its attorneys' fees, incurred in bringing this motion.

## II.    BACKGROUND

This action arises out of disputes between ORR and Ironclad primarily relating to a January 6, 2009 Exclusive License and Distributorship Agreement, as amended (the

"Distributorship Agreement") and a July 22, 2010 Sub-Distributorship Agreement, as amended (the "Sub-Distributorship Agreement") (together, the Distributorship Agreement and the Sub-Distributorship Agreement are referred to as the "Agreements").

The Agreements, and the parties' relationship generally, arose from the development of a distinctive line of protective work gloves known as KONG.  That line of gloves was developed by ORR and Ironclad after ORR was invited as the sole safety company to participate in a steering committee made up safety and operational representatives from the world's leaders in the oil and gas industry, including ExxonMobil, ConocoPhillips, Superior Energy and Chevron (the "Steering Committee").  Counterclaim, DN 4-1, at ¶ 13. The Steering Committee's purpose was to identify and address the high level of recordable injuries on oil platforms, of which hand injuries accounted for a substantial majority.  *Id.* at ¶ 14.  The Steering Committee turned to ORR, as a distributor of safety products, including hand protection products, to find a company that could assist in manufacturing a product to meet the Steering Committee's needs.  ORR in turn chose Ironclad as its partner to manufacture such a glove.  *Id.* at ¶¶ 15-16.  Ultimately, the design approved by the Steering Committee after significant testing on two different prototypes was the original and first iteration of the KONG glove.  *Id.* at ¶¶ 21-23.

ORR and Ironclad entered into the Distributorship Agreement on January 6, 2009. Generally speaking, the Distributorship Agreement provided for ORR to be the exclusive distributor of KONG safety gloves, including any new inventions or improvements to such gloves, for a term totaling 20 years.  *See* Counterclaim at ¶¶ 24-27.  Ironclad retained the intellectual property relating to the KONG gloves so long as it did not terminate the Distributorship Agreement for any reason other than ORR's material breach.  *Id.* at ¶¶ 28-29. ORR and Ironclad also entered into the Sub-Distributorship Agreement on July 22, 2010, which

3

provided for Ironclad to pay ORR royalties on KONG gloves it sold.  *Id.* at 33-34.  As set forth in more detail in ORR's Counterclaim, ORR marketed and funded the development of the KONG brand, which led to KONG gloves being a huge success.  *See generally* Counterclaim at ¶¶ 35-46.

On September 28, 2015, Ironclad filed a Complaint against ORR in the Dallas County District Court.  *See* Compl., DN 1-1 at Exh. A-2.  Ironclad alleges in its Complaint, among other things, that ORR breached the Agreements by failing to actively promote, market, and sell KONG products and by failing to maintain the goodwill of the KONG products and the customers for those products, *i.e.*, ORR breached Section 5.1 of the Distributorship Agreement.  *See* Compl. at ¶¶ 26-38.  Ironclad also alleges that ORR breached the Agreements by selling products competing with the KONG gloves, *i.e.*, ORR breached Section 2.1 of the Distributorship Agreement; ORR breached a separate (unspecified) agreement to purchase a minimum number of a particular glove; and ORR otherwise has acted improperly or in violation of the various agreements between the parties.  *See* Compl. at ¶¶ 22-25, 39-51.

Shortly after filing the Complaint, on October 7, 2015, Ironclad sent ORR a letter claiming to terminate the Agreements due to unspecified breaches by ORR of them. Counterclaim at ¶¶ 108-109.  Despite immediately asking Ironclad to detail these alleged material breaches, which ORR only first heard about upon receiving Ironclad's Complaint, and an opportunity to cure, Ironclad refused to do so.

On October 23, 2015, ORR filed its Answer with Affirmative Defenses and a Counterclaim.  *See* Answer, Additional Defenses, and Counterclaim, DN 4-1.[1]  Among other things, ORR alleges in its Counterclaim that, while ORR marketed, sold, and developed the

---

[1] ORR later amended its Answer and Affirmative Defenses to provide specific responses to Ironclad's allegations rather than the general denial ORR filed before removal to federal court.  *See* Amended Answer and Affirmative Defense, DN 22.

KONG brand, Ironclad failed to provide ORR with appropriate support in ORR's efforts.  *See* Counterclaim at ¶¶ 88-90.  Indeed, ORR has alleged, Ironclad "has been unable to provide consistent sales support, as evidenced by the fact that Ironclad has cycled through at least three Vice Presidents of Sales in the last three years, and at least as many sales support members over time." *Id.* at ¶ 89.  ORR also alleged that Ironclad failed to accurately and timely deliver products pursuant to the terms of the parties' agreements.  *Id.* at ¶¶ 91-97.  In addition to the foregoing, ORR asserts that Ironclad violated ORR's exclusive right to distribute KONG gloves by relabeling KONG gloves with a different name and selling them directly to ORR's customers (*i.e.*, the Non-Kong Gloves, or the Vibram Counterfeit Gloves), improperly terminated the Agreements without cause, and engaged in various other improper practices that breached the Agreements and violated the law.  *See generally id.*

The same day ORR filed its Answer and Counterclaim, it removed the action to this Court.  *See* Notice of Removal, DN 1.  On December 16, 2015, ORR served its First Set of Discovery Requests to Ironclad.  Among other things, it requested personnel files for nine particular individuals at ORR that had extensive direct contact with ORR, including sales-related responsibilities.  That request stated as follows:

> **REQUEST FOR PRODUCTION NO. 48:** Produce the personnel files for Ed Jaeger, Scott Jarus, Fred Castro, Thomas Kreig, Annie Evans, Jim Rice, Lee Turlington, Rhonda Hoffarth, and Bryan Griggs.

*See* Excerpt of ORR Safety Corporation's First Discovery Requests to Ironclad Performance Wear Corporation, Appendix p. 2.  A description of what ORR believes to be the relevant job titles for each of those individuals is as follows:[2]

- Ed Jaeger – Founder of Ironclad; no longer employed by Ironclad.

---

[2] This information is taken from documents produced in this case and general online searching.  Obviously, the personnel files sought by this motion would help clarify the accuracy of this information.

5

- Scott Jarus – Former CEO of Ironclad from 2009 until September 2013.

- Fred Castro – Vice President of Sales and Marketing for Ironclad from 2009 until September 2013.

- Thomas Kreig – Senior Vice President of Finance for Ironclad; employed by Ironclad from 2002 until 2014.

- Annie Evans – Director of Sourcing, Supply Chain Director, Director of Quality Assurance, Logistics and Compliance for Ironclad; employed by Ironclad from 2002 until May 2014.

- Jim Rice – Vice President of Sales for Ironclad until August 2014.

- Lee Turlington – Interim President of Ironclad from 2013 through 2014.

- Rhonda Hoffarth – Executive Vice President, COO of Ironclad until August 2014.

- Bryan Griggs – Executive Vice President of Sales and Marketing from 2014-2015.

In addition to personnel files, ORR also requested any agreements between Ironclad and those particular individuals for whom it was requesting the personnel files:

> **REQUEST FOR PRODUCTION NO. 49:** Produce all agreements between you and the following individuals: Ed Jaeger, Scott Jarus, Fred Castro, Thomas Kreig, Annie Evans, Jim Rice, Lee Turlington, Rhonda Hoffarth, and Bryan Griggs. Please include any and all agreements with each of those individuals post-Ironclad employment, including consulting agreements after his or her employment, severance agreements, non-compete agreements, non-disclosure agreements, and confidentiality agreements.

*Id.*

Ironclad responded to ORR's request for personnel files of the above-named individuals as follows:

> **RESPONSE TO REQUEST FOR PRODUCTION NO. 48:**
>
> Plaintiff repeats and incorporates by reference each of its general objections as set out above in full. In addition to and without waiving the general objections, Plaintiff objects to this request to the extent that it seeks the production of documents

6

protected by applicable constitutional, statutory or common law privileges and/or protections, including of third parties, and including but not limited to the attorney-client privilege, the attorney work-product doctrine, the common interest doctrine, rights of privacy including but not limited to private financial or tax information, and the protection of settlement and mediation materials. Plaintiff further objects to this request to the extent it seeks confidential and proprietary information and/or trade secrets. Plaintiff further objects to this request on the grounds that is it overbroad, harassing, unduly burdensome and oppressive, and that the documents this request seeks are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving any of the general or specific objections, Plaintiff responds as follows: Plaintiff will not produce any documents in response to this request. Plaintiff stands ready to meet and confer to determine if this request can be properly defined, modified, and limited so that it is confined to a relevant, reasonable, and identifiable collection of documents, with appropriate third party consents.

See Excerpt of Plaintiff's Responses to Defendant's First Set of Discovery Requests, Appendix p. 7. It also responded to ORR's request for agreements between Ironclad and the former employees as follows:

**RESPONSE TO REQUEST FOR PRODUCTION NO. 49:**

Plaintiff repeats and incorporates by reference each of its general objections as set out above in full. In addition to and without waiving the general objections, Plaintiff objects to this request to the extent that it seeks the production of documents protected by applicable constitutional, statutory or common law privileges and/or protections, including of third parties, and including but not limited to the attorney-client privilege, the attorney work-product doctrine, the common interest doctrine, rights of privacy including but not limited to private financial or tax information, and the protection of settlement and mediation materials. Plaintiff further objects to this request to the extent it seeks confidential and proprietary information and/or trade secrets. Plaintiff further objects to this request on the grounds that is it overbroad, harassing, unduly burdensome and oppressive, and that the documents this request seeks are neither relevant nor

> reasonably calculated to lead to the discovery of admissible evidence.
>
> Subject to and without waiving any of the general or specific objections, Plaintiff responds as follows: Plaintiff will not produce any documents in response to this request. Plaintiff stands ready to meet and confer to determine if this request can be properly defined, modified, and limited so that it is confined to a relevant, reasonable, and identifiable collection of documents, with appropriate third party consents.

*Id.* at Appendix p. 8.

Counsel for ORR requested a meet and confer regarding Ironclad's response to Request for Production Number 48 relating to the personnel files. When counsel for Ironclad asked for ORR to provide its position on the discoverability of the personnel files in writing in advance of the meet and confer, counsel for ORR explained:

> As to why Orr is entitled to the personnel files, there are many reasons. These folks were intimately involved in the Orr-IC relationship, so these files will contain information likely to lead to admissible evidence. The files will no doubt have information relevant to Orr, Kong, and the parties' evolving relationship. Their separations from IC are obviously discoverable since they left right before or right after when the new leadership team at IC started in early 2014. Their job responsibilities had them working with KONG and Orr all the time, so we are entitled to know about their entire relationship with IC in this regard. Orr is entitled to know about their job performance and history at IC given the significant amount of responsibilities devoted to ORR and KONG.

*See* 5/26/16 Email, Appendix p. 11.

Counsel for Ironclad and ORR held a telephonic conference on June 1, 2016 regarding, among other things, the personnel file issue. During the call, Ironclad's counsel confirmed that the volume of the documents sought was relatively minimal – only approximately 160 pages. Ironclad's counsel also confirmed that any of the agreements between Ironclad and its former

employees sought by ORR in Request for Production Number 49 would be included within the personnel files.

Following the call with Ironclad's counsel, counsel for ORR sent counsel for Ironclad an email summarizing the parties' discussion. In relevant part, that email stated:

> Personnel files:
>
> You indicated on the call that Ironclad believes there is a higher discovery standard for personnel files in the Fifth Circuit and that our reasoning previously provided for the same did not reach that standard. We are looking into the case law you cited [to] determine if the Fifth Circuit requires the personnel file request to be limited. If we agree with this interpretation, we will more narrowly tailor the request. However, we do believe that, based on your representations as to what was contained in the personnel files, some of the information within these files will be responsive to other discovery requests Orr has made (everything referencing Orr, for example). I also point out that you indicated the entirety of the personnel files was only 160 pages, so it is not burdensome to produce. Finally, we will agree that these can be confidential and subject to the confidentiality agreement and that all social security numbers and family information can be redacted.
>
> I hope to have a firm answer to this tomorrow.

*See* 6/1/16 Email, Appendix pp. 15-16. The following day, counsel for Ironclad followed up:

> Michael:
>
> As promised, I am following up to our call regarding the personnel files. As an initial point, I said on the call that I would try and get Rice and Castro's written approval to get the files. But after more thought, and review of the case law, I do not believe that is necessary because Orr is clearly entitled to this discovery. I agree with you that this is not an issue worth filing a motion to compel over, but I think it is because what we have requested is entirely reasonable and within the bounds of discoverable evidence.
>
> You indicated on the call that Ironclad believes there is a higher discovery standard for personnel files in the Fifth Circuit and that our reasoning previously provided for the same did not reach that standard. We disagree. Courts in the 5th Circuit routinely grant motions to compel production of personnel files in cases. *See, e.g.,*

*Seibu v. KPMG LLP,* 2002 WL 87461 (N.D. Tex. Jan. 18, 2002); *Barber v. Dolgencorp of Texas, Inc.,* 2010 WL 1375193 (E.D. Tex. Mar. 31, 2010); *Riley v. Walgreen Co.,* 233 F.R.D. 496 (S.D. Tex. 2005). Those courts dismiss any concerns regarding private information by requiring the parties enter a confidentiality agreement or protective order, which already exists in this case, and would protect the employees' confidentiality. *See Riley,* 233 F.R.D. at 500 ("Walgreen's concerns about protecting employee privacy can be dealt with through a confidentiality agreement limiting their use and disclosure"); *E.E.O.C. v. Knight Transp., Inc.,* 2008 WL 4056189 (N.D. Miss. Aug. 25, 2008) (recognizing the relevancy of personnel files but noting it "is also concerned about the privacy of those individuals who are not a party to the case. Consequently, the defendant *will produce* such documents subject to the terms of the protective order.") (emphasis supplied).

You indicated the files were only 160 pages. This is not burdensome. Furthermore, we agree that these can be confidential and subject to the confidentiality agreement. We agree that all social security numbers and family information can be redacted. This seems to be what the Fifth Circuit law was concerned with, as well as adverse parties asking for an entire company's personnel files, which we are not doing here. *See, e.g., Clemons v. Dollar Gen'l Corp.,* 2010 WL 1994809 (N.D. Miss. May 18, 2010). We are asking for the files of former employees whose jobs had them interacting with Orr and with KONG on a daily basis and who left the company in a point of time that Orr believes is critical in this litigation. We are entitled to make our own decisions as to what is important or not.

If you would like to give a more detailed inventory, we will narrow the request. We definitely want all agreements with Ironclad and all performance reviews. We do not necessarily want insurance forms or copies of drivers' licenses, but think the remainder of the files should be produced.

Please reconsider your blanket refusal to produce these files. If you want to exchange a detailed inventory, we are willing to review that in an effort to narrow the request. But right now we are really shooting in the dark.

*See* 6/2/16 Email, Appendix p. 14.

Ironclad's counsel responded by letter dated June 10, 2016. In that letter, Ironclad's attorney stated that he had reviewed the personnel files of Jaeger, Jarus, Griggs, Castro, and Rice

10

and that Ironclad did not believe the files to "contain any information that has any relevance to the parties' claims or defenses." *See* 6/10/16 Letter, Appendix p. 17. Although acknowledging that three of the five files reviewed actually reference ORR by name, Ironclad's attorney argued that the references were irrelevant. *Id.* at Appendix p. 19. Ironclad also asserted that the production of the files would "unnecessarily invade the privacy of Ironclad's former employees and undermine Ironclad's ability to fairly and honestly evaluate its current and future employees." *Id.* at Appendix p. 17-18. Finally, Ironclad insisted that the law imposed a heightened standard for discovery of personnel files that ORR could not meet. *Id.*

## III.   ANALYSIS

The scope of discovery under the Federal Rules of Civil Procedure is broad. *See, e.g.*, *Crosby v. Louisiana Health Serv. and Indem. Co.*, 647 F.3d 258, 262 (5th Cir. 2011). Federal Rule of Civil Procedure 26(b(1) permits discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." The information sought need not be admissible to be discoverable. Fed. R. Civ. P. 26(b)(1). Rather, a discovery request is "relevant" within the meaning of Rule 26(b)(1) if it seeks admissible evidence or is reasonably calculated to lead to the discovery of admissible evidence. *See, e.g.*, *Crosby*, 647 F.3d at 262. Here, the personnel files are undoubtedly relevant to this matter. ORR's request for them is, at the very least, reasonably calculated to lead to the discovery of admissible evidence.

First, as noted above, one of Ironclad's primary claims in this matter is that ORR failed to actively promote, market and sell KONG gloves and to maintain the goodwill of the products and customers. *See* Compl. at ¶¶ 26-38. ORR has counterclaimed that Ironclad failed to provide adequate support for ORR's marketing activities, evidenced by, among other things, Ironclad having cycled through at least three Vice Presidents of Sales in the last three years. *See*

Counterclaim at ¶¶ 88-90.  Further, ORR has counterclaimed that Ironclad failed to timely and adequately deliver products ordered by ORR's customers.  *Id.* at ¶¶ 91-97.  The personnel files requested by ORR are certainly calculated to lead to the discovery of admissible evidence as to these aspects of both parties' claims against each other.

The personnel files ORR seeks are all for former employees of Ironclad that had direct responsibilities at Ironclad relating to the relationship between ORR and Ironclad.  Those personnel files include the three former Vice Presidents of Sales that Ironclad went through in three years (Castro, Rice, and Griggs), as well as a founding member of Ironclad (Jaeger), Ironclad's former CEO until September 2013 (Jarus), Ironclad's Interim President (Turlington), and a former COO (Hoffarth), Senior Vice President of Finance (Kreig), and Supply Chain and Logistics Director (Evans) of Ironclad.  Given that Ironclad is blaming ORR, and alleging breach of the Agreements, for not doing enough to market and sell the KONG line of gloves, while ORR believes and has alleged that Ironclad failed to provide adequate support for ORR's marketing efforts and failed to timely deliver products ordered by ORR's customers, the performance of the foregoing former Ironclad employees is directly relevant to the claims in this case.  Their personnel files are expected to reveal such information, in that the files are obviously expected to contain information about the job duties and responsibilities of the foregoing employees and Ironclad's evaluations of the employees' performance of those job duties and responsibilities.

Notably, Ironclad's attorney has confirmed that the personnel files sought by ORR actually ***mention ORR directly***.  Although Ironclad's attorney insists that these mentions of ORR are only in passing and are not relevant to this matter, there is no support for the notion that ORR must accept the representations of Ironclad's attorney regarding the context in which ORR was

mentioned in the personnel files rather than reviewing that information itself.  Of course, given that ORR's relationship with Ironclad was of great magnitude and that these nine former employees for whom ORR seeks personnel files had substantial job duties relating directly to ORR, whether ORR is mentioned or not in a personnel file is immaterial.  Virtually all aspects of job performance evaluations would encompass these employees' work related to ORR.

Moreover, each of the individuals for whom ORR seeks a personnel file is now a former employee of Ironclad.  Information regarding the reasons that each of the employees either resigned or was fired from Ironclad would be expected to be contained within the employee's personnel file.  Of course, to the extent that such reasons had to do with deficient performance in any way, that would bear directly on the issues in the case.  But even if the terminations or resignations were ostensibly for other reasons, ORR is entitled to know those reasons.

ORR has alleged that Ironclad's cycling through staff, including having three Vice Presidents of Sales in three years, has been detrimental to Ironclad's ability to fulfill its obligations to ORR and provide ORR with appropriate support.  Simply put, the reasons for such turnover are a material part of this case and documents in the personnel files of those employees who had responsibilities relating to Ironclad's relationship with ORR but left or were terminated by Ironclad would be reasonably calculated to shed light on that issue.

Notably, with the exception of Griggs, the employees listed above all left shortly before or after Ironclad's new CEO, Jeffrey Cordes, began in February of 2014.  ORR's relationship with Ironclad took a serious downturn when Cordes began as Ironclad's CEO and brought in his own management team.  In fact, Cordes almost immediately set out to find a way to terminate Ironclad's relationships with ORR.  On April 25, 2014, just two months after Cordes began as Ironclad's CEO, Cordes wrote to Vane Clayton, Chairman of the Ironclad Board of Directors,

13

about the Distributorship Agreement, that Cordes "cannot in good conscious [sic] allow this contract to continue."  4/25/14 Email, Appendix p. 21.[3]   ORR is entitled to explore the reasons for the departures of the various Ironclad employees with which ORR worked that coincided with the entrance of Cordes as Ironclad's CEO and the accompanying devolution of the relationship between the parties.  The contents of these employees personnel file will almost certainly provide information on this highly relevant topic.

Moreover, each of the individuals for whom ORR seeks a personnel file may potentially be a witness in this case given that these individuals primarily were responsible for Ironclad's relationship with ORR and each party has questioned the other's commitment to that relationship.[4]   The relationship of those employees with Ironclad, including any termination, separation, or consulting agreements that they may have with Ironclad, is crucial to assessing the credibility of the witnesses.  For instance, an employee that was paid a substantial amount by ORR even after he or she resigned, whether as separation payments or in consulting fees, may have reason to be biased in Ironclad's favor.  Conversely, an employee who left on bad terms with Ironclad may be biased against Ironclad.  Simply put, ORR is entitled to know the contractual relationships between Ironclad and its former employees that may be witnesses in this matter.

In light of the relevance of the personnel files requested by ORR, there can be no dispute that the request is proportional to the needs of the case.  This case is substantial, with multi-million dollar contracts and trade dress in dispute.  As noted above, the personnel files are

---

[3] Although neither the sender nor the recipient of this document is an attorney, this incriminating statement is preceded and followed by multiple paragraphs of heavily redacted information that is apparently withheld from discovery by Ironclad under a dubious, overbroad claim of privilege and/or work product.  ORR has asked Ironclad to reconsider these redactions.

[4] In fact, dates for the depositions of Rice, Castro, and Griggs have already been requested and/or set.

directly relevant to allegations made explicitly in both Ironclad's Complaint and ORR's Counterclaim regarding the performance of the parties with respect to the marketing and sales aspects of their relationship.   Meanwhile, the volume of documents in the personnel files is minimal.   Ironclad's attorney has already stated that they constitute only approximately 160 pages.

Further, ORR has already offered to engage with Ironclad to further narrow the ORR's request so that it can obtain only the relevant documents.   In that regard, ORR has already informed Ironclad's counsel that ORR is not seeking insurance forms or copies of drivers' licenses, that social security numbers and family information can be redacted, and that ORR would further attempt to narrow its request if Ironclad simply provided an index of the documents in the personnel files.   Nevertheless, Ironclad has wholly refused to provide the personnel files.

Ironclad's principal objection to production of the documents is on privacy grounds. However, notwithstanding Ironclad's conclusory protestations of potential privacy violations by producing the personnel files, the files are clearly relevant to this matter and are thus discoverable.   Courts in the Fifth Circuit routinely order production of personnel files or evaluations where relevant.  *Jepsen v. Florida Board of Regents*, 610 F.2d 1379 (5th Cir. 1980); *Seibu Corp. v. KPMG, LLP*, 2002 WL 87461 (N.D.Tex. Jan. 18, 2002); *Riley v. Walgreen Co.*, 233 F.R.D. 496, 501 (S.D.Tex. 2005); *Barber v. Dolgencorp of Texas, Inc.*, 2010 WL 1375193 (E.D.Tex. Mar. 31, 2010).  As the court in *Barber* noted, conclusory assertions of privacy issues without articulation of an actual injury is insufficient to prohibit discovery of personnel files that could assist in the discovery of admissible evidence relevant to claims in the case.   2010 WL 1375193, at *2.

15

Additionally, ORR has specifically agreed that Ironclad can produce the personnel files pursuant to the Agreed Protective Order entered in this case.  *See* Agreed Protective Order, DN 25.  Courts have recognized that such a confidentiality agreement limiting use and disclosure of personnel files is sufficient to protect any privacy interests.  *See, e.g.*, *Riley*, 233 F.R.D. at 500 ("Walgreen's concerns about protecting employee privacy can be dealt with through a confidentiality agreement limiting their use and disclosure."); *E.E.O.C. v. Knight Transp., Inc.*, 2008 WL 4056189, at *1 (N.D.Miss. Aug. 25, 2008) ("In instances where non-party personnel files are relevant and may led to admissible evidence, a protective order will help to mitigate the invasion of the privacy of the non-party."); *see also McDonald v. ExxonMobil Chemical Co.*, 2001 WL 34109381, at *1 (S.D.Tex. Dec. 7, 2001) (finding that good cause exists for entry of a protective order and production of personnel files pursuant to such protective order).  Inasmuch as there is already an Agreed Protective Order entered in this case and ORR has agreed that the personnel files may be produced pursuant to that Order, Ironclad's conclusory assertions that it should not have to produce the relevant documents due to privacy concerns must be rejected.

Finally, pursuant to Federal Rule of Civil Procedure 37(a)(5), the Court should award ORR its reasonable expenses, including its attorneys' fees, incurred in making this motion.  ORR attempted to work with Ironclad to resolve this dispute, including to appropriately address the confidentiality issue raised by Ironclad in the same way that courts have dealt with such issues, namely through production pursuant to a protective order.  However, Ironclad unreasonably refused to provide ORR with the plainly relevant personnel files ORR seeks.  Accordingly, ORR should be awarded its fees.

16

## IV.    CONCLUSION

As set forth above, ORR has made a narrowly-tailored request for the personnel files of nine former employees of Ironclad that had substantial job duties relating to Ironclad's relationship with ORR.   In light of, among other things, Ironclad's and ORR's dueling allegations regarding their performance under the Agreements with respect to marketing and sales efforts, ORR's request for the personnel files of those Ironclad employees (including any performance evaluations and any contracts between the employees and Ironclad) is certainly reasonably calculated to lead to the discovery of admissible evidence.   ORR has agreed that the personnel files may be deemed Confidential under the Agreed Protective Order to alleviate privacy concerns.   Accordingly, the Court should grant ORR's Motion to Compel, compel Ironclad to produce the relevant personnel files for those nine former employees, and award ORR its reasonable expenses, including attorneys' fees, incurred in bringing this motion.

Respectfully submitted,

 s/ Jennifer Metzger Stinnett
Benjamin C. Fultz (admitted *pro hac vice*)
Jennifer Metzger Stinnett (admitted *pro hac vice*)
FULTZ MADDOX DICKENS PLC
2700 National City Tower
Louisville, Kentucky 40202
Telephone: (502) 588-2000
Facsimile: (502) 588-2020
bfultz@fmdlegal.com
jstinnett@fmdlegal.com


-and-


Gregory M. Sudbury
Texas Bar No. 24033367
Rachel Lee Hytken
Texas Bar No. 24072163
QUILLING, SELANDER, LOWNDS, WINSLETT & MOSER, P.C.
2001 Bryan Street, Suite 1800
Dallas, Texas 75201
(214) 871-2100 (Main)
(214) 871-2111 (Fax)
gsudbury@qslwm.com


*Counsel for Defendant and Counterclaim Plaintiff Orr Safety
Corporation*


## CERTIFICATE OF SERVICE

On  June 17, 2016, 2016 I electronically submitted the foregoing document with the clerk of
court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of
the court. I hereby certify that I have served all counsel of record electronically or by another manner
authorized by Federal Rule of Civil Procedure 5(b)(2).


s/ Jennifer Metzger Stinnett
*Counsel for Defendant and Counterclaim Plaintiff Orr
Safety Corporation*

18