IN THE UNITED STATES DISTRICT
COURT FOR THE NORTHERN DISTRICT
OF TEXAS DALLAS DIVISION

IRONCLAD PERFORMANCE WEAR
CORPORATION,

      Plaintiff,

v.

ORR SAFETY CORPORATION,

      Defendant

§
§
§
§
§
§
§
§
§
§
§

No. 3:15-cv-03453-D

## DECLARATION OF MICHAEL SHERMAN

I, Michael Sherman, declare as follows:

1.  My name is Michael Sherman. I am over 18 years of age, and I have personal knowledge of the facts stated below. If called and sworn as a witness, I would be competent to testify to each of them.

2.  To the best of my memory, I first learned about issues pertaining to a possible AEO problem in the morning of June 3, 2016, when I spoke with Bill Aisenberg by telephone. During that call, Mr. Aisenberg reported that Jeff Cordes had reported to Mr. Aisenberg that Mr. Cordes had received one or more emails from Daniel Charest and that, based on his observation of the content, Mr. Cordes had become concerned that the materials should not have been provided to him because of the AEO designations and, as a result, closed the materials. During that call, Mr. Aisenberg reported that he had also received one or more similar emails from Mr. Charest. Mr. Aisenberg reported that he had not reviewed the content of any such email in any detail either. Since that time, my office has undertaken extensive efforts to track down the AEO materials and ensure they are recovered.

1

3.  While I was uncertain of the details at the time, I now understand the first email (the "Attachment Email") contained, as an attachment, a word document (the "Outline"). And the second email (the "Link Email") contained a link, which provided access to a sharefile site (the "Sharefile"). A redacted version of the Attachment Email is attached as Exhibit A. A redacted copy of the Outline is attached as Exhibit B. A redacted version of the Link Email is attached as Exhibit C. A redacted list, showing the files that were available on the Sharefile, is attached as Exhibit D.

4.  After the call with Mr. Aisenberg, in the morning of June 3, 2016, I contacted Mr. Charest by phone to tell him that the Sharefile contained AEO materials. In that call, I reported that Mr. Cordes had followed the link in the Link Email and accessed the Sharefile but, upon observing the content, Mr. Cordes had closed the file(s) and reported the issue to Mr. Aisenberg, who then reported the matter to me. I also reported to Mr. Charest that I had instructed the clients not to access the emails or the related materials.

5.  In the morning of June 3, 2016, for the first time, I accessed the Sharefile materials using the link provided in the Link Email.

6.  On June 3, 2016, at 11:04 AM CDT, I sent an email to Mr. Cordes and Mr. Aisenberg (the "First Notice") reporting on the issue and instructing them both to "immediately delete such e-mail or e-mails, delete any materials that may have been downloaded off of those e-mails including the link, delete any notes (if any) that may have been made relating to such materials." A copy of the First Notice is attached as Exhibit E. Both Mr. Cordes and Mr. Aisenberg confirmed compliance with my instruction.

7.  On June 3, 2016,.at 12:29 PM CDT, Mr. Charest's paralegal, Andrew Bynum, reported that he had broken the link that provided access from the Link Email to the Sharefile. Later, Mr. Bynum provided an access log for the Sharefile that showed the following:

2

    a. On June 1, 2016, at 6:17 PM CDT, Mr. Bynum uploaded the Sharefile materials.

    b. On June 1, 2016, at 9:02 PM CDT, an unnamed user downloaded the Sharefile materials from IP address 173.57.47.174 from Richardson, Texas.

    c. On June 3, 2016, at 10:24 AM CDT, an unnamed user downloaded the Sharefile materials from IP address 12.96.126.131 from Woodland Hills, California. (I believe this log entry represents the time I accessed the Sharefile materials.)

    d. On June 3, 2016, at 12:10 PM CST, Mr. Bynum removed the materials from the Sharefile.

8. In the evening of June 7, 2016, I contacted Mr. Charest by phone. Mr. Charest and I concluded that the Outline contained derivative AEO materials and should be deleted. To err on the side of safety, we concluded that I should issue another instruction to confirm deletion of the Outline in addition to the materials from the Sharefile.

9. On June 7, 2016, at 7:41 PM CDT, I sent Mr. Cordes and Mr. Aisenberg another email (the "Second Notice"), focused on the Outline in the Attachment Email, to confirm that, to the extent they had not yet done so, Mr. Cordes and Mr. Aisenberg should "immediately delete this e-mail, delete any materials that may have been downloaded off of those emails including the attachment, delete any notes (if any) that may have been made relating to such materials." A redacted version of the Second Notice is attached as Exhibit F. Both Mr. Cordes and Mr. Aisenberg again confirmed compliance with my instruction.

10. On June 8, 2016, at 9:26 AM CST, I informed ORR's counsel of the issues pertaining to the AEO materials.

11. At no time did I send the Attachment Email, the Outline, or the Link Email to anyone outside the Ironclad trial team (i.e., the lawyers and staff working the case).

3

**APPENDIX - 108**

12. Exhibits B and D reflect the AEO materials either contained in or accessible through the Attachment Email and the Link Email. In particular, the Outline included summary-level information from ORR00000318, ORR00000850, and ORR00000851. In addition, the Outline contained an excerpt from the Mark Wiktorski Deposition (May 10, 2016) (ROUGH). And the Sharefile contained, as whole files, ORR00000318, ORR00000850, ORR00000851, summaries of ORR00000318 and ORR00000850-51, and the Mark Wiktorski Deposition (May 10, 2016) (ROUGH).

13. In the course of my investigation and handling of this matter, I have seen nothing that suggests that any person involved intended to violate the protective order. To the contrary, the only infraction appears to have been an oversight by Mr. Charest. The clients, Mr. Cordes and Mr. Aisenberg, appear to have acted appropriately throughout.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Signed: June 16, 2016

_____
Michael Sherman

IN THE UNITED STATES DISTRICT
COURT FOR THE NORTHERN DISTRICT
OF TEXAS DALLAS DIVISION

IRONCLAD PERFORMANCE WEAR
CORPORATION,

§
§
§

Plaintiff,

§
§

No. 3:15-cv-03453-D

v.

§
§
§

ORR SAFETY CORPORATION,

§
§
§

Defendant

§

## DECLARATION OF DANIEL CHAREST

I, Daniel Charest, declare as follows:

1. My name is Daniel Charest. I am over 18 years of age, and I have personal knowledge of the facts stated below. If called and sworn as a witness, I would be competent to testify to each of them.

2. On June 1, 2016, at 5:49 PM CDT, I sent an email (the "Attachment Email") to the Ironclad trial team (i.e., the lawyers and staff working the case) and Jeff Cordes and Bill Aisenberg. A redacted version of the Attachment Email is attached as Exhibit A. The Attachment Email contained, as an attachment, a word document (the "Outline") which contained information derived from AEO materials. Earlier that day, I had received the Outline as finished work product from attorneys and staff in my firm. And, while I had reviewed the Outline and made comments to prior iterations, I neither created the Outline nor had an in-depth familiarity with its contents. A redacted copy of the Outline is attached as Exhibit B.

3. On June 1, 2016, at 6:19 PM CDT, I sent an email (the "Link Email") to the Ironclad trial team and Jeff Cordes and Bill Aisenberg. A redacted version of the Link Email is attached as Exhibit C. The Link Email contained a link, which provided access to a sharefile site (the

1

"Sharefile") that contained AEO materials. I received the link to the Sharefile from a staff member within my firm, who, at my direction, compiled all materials referenced in the Outline. A redacted list, showing the files that were available on the Sharefile, is attached as Exhibit D.

4.   Exhibits B and D reflect the AEO materials either contained in or accessible through the Attachment Email and the Link Email. In particular, the Outline included summary-level information from ORR00000318, ORR00000850, and ORR00000851. In addition, the Outline contained an excerpt from the Mark Wiktorski Deposition (May 10, 2016) (ROUGH). And the Sharefile contained, as whole files, ORR00000318, ORR00000850, ORR00000851, summaries of ORR00000318 and ORR00000850-51, and the Mark Wiktorski Deposition (May 10, 2016) (ROUGH).

5.   In the morning of June 3, 2016, Michael Sherman contacted me by phone to report that he had just spoken with Bill Aisenberg and to tell me that the Sharefile may have contained AEO materials. In that call, Mr. Sherman reported that Mr. Cordes had followed the link in the Link Email and accessed the Sharefile but, upon observing the content, Mr. Cordes had closed the file(s) and reported the issue to Mr. Aisenberg, who then reported the matter to Mr. Sherman. Mr. Sherman also reported that he had instructed the clients not to access the emails or the related materials. Since that time, my office has undertaken extensive efforts to track down the AEO materials and ensure they are recovered.

6.   On June 3, 2016, at 11:04 AM CDT, Mr. Sherman sent an email to Mr. Cordes and Mr. Aisenberg (the "First Notice") reporting on the issue and instructing them both to "immediately delete such e-mail or e-mails, delete any materials that may have been downloaded off of those e-mails including the link, delete any notes (if any) that may have been made relating to such materials." A copy of the First Notice is attached as Exhibit E.

2

7.  On June 3, 2016, at 12:29 PM CDT, my paralegal, Andrew Bynum, reported that he had broken the link that provided access from the Link Email to the Sharefile. Later, Mr. Bynum provided an access log for the Sharefile that showed the following:

    a.  On June 1, 2016, at 6:17 PM CDT, Mr. Bynum uploaded the Sharefile materials.

    b.  On June 1, 2016, at 9:02 PM CDT, an unnamed user downloaded the Sharefile materials from IP address 173.57.47.174 from Richardson, Texas.

    c.  On June 3, 2016, at 10:24 AM CDT, an unnamed user downloaded the Sharefile materials from IP address 12.96.126.131 from Woodland Hills, California.

    d.  On June 3, 2016, at 12:10 PM CST, Mr. Bynum removed the materials from the Sharefile.

8.  In the evening of June 7, 2016, Mr. Sherman contacted me by phone. Mr. Sherman and I concluded that the Outline contained derivative AEO materials and should be deleted. To err on the side of safety, we concluded that Mr. Sherman should issue another instruction to confirm deletion of the Outline in addition to the materials from the Sharefile.

9.  On June 7, 2016, at 7:41 PM CDT, Mr. Sherman sent Mr. Cordes and Mr. Aisenberg another email (the "Second Notice"), focused on the Outline in the Attachment Email, to confirm that, to the extent they had not yet done so, Mr. Cordes and Mr. Aisenberg should "immediately delete this e-mail, delete any materials that may have been downloaded off of those emails including the attachment, delete any notes (if any) that may have been made relating to such materials." A redacted version of the Second Notice is attached as Exhibit F.

10. On June 8, 2016, at 9:26 AM CST, Mr. Sherman informed ORR's counsel of the issues pertaining to the AEO materials.

3

**APPENDIX - 112**

11. Because Mr. Sherman was handling the initial investigative and prophylactic measures, I did not speak with either Mr. Cordes or Mr. Aisenberg about the Attachment Email, the Link Email, or the related materials until Mr. Sherman reported the issue to ORR's counsel.

12. In the course of my investigation and handling of this matter, I have seen nothing that suggests that any person involved intended to violate the protective order. To be sure, I did not intend to violate the order. While I was unfamiliar with the materials included in the Outline and the Sharefile, I recognize that I should have been more diligent in understanding what I sent to the clients. The clients, Mr. Cordes and Mr. Aisenberg, appear to have acted appropriately throughout.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Signed: June 16, 2016

Daniel H. Charest

4

IN THE UNITED STATES DISTRICT
COURT FOR THE NORTHERN DISTRICT
OF TEXAS DALLAS DIVISION

| | | |
|---|---|---|
| IRONCLAD PERFORMANCE WEAR CORPORATION, | § § § | |
| Plaintiff, | § § | No. 3:15-cv-03453-D |
| v. | § § | |
| ORR SAFETY CORPORATION, | § § § | |
| Defendant | § § | |

## DECLARATION OF WILLIAM AISENBERG

I, William Aisenberg, declare as follows:

1.  My name is William Aisenberg. I am over 18 years of age, and I have personal knowledge of the facts stated below. If called and sworn as a witness, I would be competent to testify to each of them.

2.  In the afternoon of June 1, 2016, I was scheduled to board a flight (American 2373) from Los Angeles, California to Dallas, Texas. Before boarding my flight, which was scheduled to depart at 7:20 PM CDT, I checked my emails from my laptop computer. As best as I can recall, I would have checked email shortly before 6:50 PM CDT based on the boarding time for my flight. Upon checking my email, I saw two emails from Daniel Charest.

3.  While in the lounge (but before my flight boarded), I opened the first email (the "Attachment Email"), which contained, as an attachment, a word document (the "Outline"). I opened the Outline and read only the first paragraph or two. Given the shortage of time and the length of the document, I closed the Outline and marked the Attachment Email as unread, as is my practice when I need to return to business emails. I did not save the Outline

1

**APPENDIX - 114**

on my computer (or anywhere else). A redacted version of the Attachment Email is attached as Exhibit A.

4. Although I do not recall when, I believe I opened the second email from Mr. Charest (the "Link Email") before my flight. But I did not click the link in the Link Email. I believe, but do not expressly recall, that I also marked the Link Email unread soon after after opening it. A redacted version of the Link Email is attached as Exhibit C.

5. In the morning of June 2, 2016, Jeff Cordes reported to me that he had received the Attachment Email and/or the Link Email and that, based on his observation of the content, he was concerned that the materials should not have been provided to him or me because of the AEO designations and, as a result closed the materials. He instructed me to contact Mr. Sherman to follow up on the potential issue. To the best of my memory, though I do not recall when, I attempted to contact Mr. Sherman as soon as possible during the business day of June 2, 2016.

6. In the morning of June 3, 2016, I spoke with Mr. Sherman by telephone regarding Mr. Cordes' concerns. Mr. Sherman instructed that Mr. Cordes and I should not access the materials in question. Based on his instruction, I understood that I should not access and should delete the Attachment Email, the Link Email, and any materials related to either email.

7. On June 3, 2016, at 11:04 AM CDT, I received an email from Mr. Sherman (the "First Notice") telling Mr. Cordes and me both to "immediately delete such e-mail or e-mails, delete any materials that may have been downloaded off of those e-mails including the link, delete any notes (if any) that may have been made relating to such materials." A copy of the First Notice is attached as Exhibit E.

2

8. To follow Mr. Sherman's instruction, I "double" deleted both the Attachment Email and the Link Email by deleting them from my inbox and then deleting them from my trash folder. I also instructed Ironclad's IT professional to remove those emails from the server.

9. On June 7, 2016, at 7:41 PM CDT, Mr. Sherman sent Mr. Cordes and me another email (the "Second Notice"), focused on the Outline in the Attachment Email, to confirm that, to the extent we had not yet done so, Mr. Cordes and I should "immediately delete this e-mail, delete any materials that may have been downloaded off of those emails including the attachment, delete any notes (if any) that may have been made relating to such materials." A redacted version of the Second Notice is attached as Exhibit F. By the time I received the Second Notice, I had already addressed both emails as described above.

10. Aside from briefly opening the Attachment Email, the Outline, and the Link Email as described above, I did not access the materials in question. To the best of my memory, I accessed these materials on my work laptop computer. Similarly, to the best of my memory, I did not access these materials from any other device.

11. At no time did I download or view any of the materials accessible through the Link Email. I never clicked the link in the Link Email.

12. At no time did I forward or otherwise disseminate the Link Email or the Attachment Email (or its attachment). At no time did I print or save these materials. At no time did I make any notes or otherwise copy the information contained within these materials. I have no specific memory of the contents of these materials including, in particular, the Outline.

13. I was aware of the protective order in this case. At no time did I intend to deviate from the order. Nor do I believe I did. When we became aware of the existence of potential AEO materials, the Ironclad management team, Mr. Cordes and myself, reported the issue to counsel as described above. Since then, I have not accessed the materials in question and

3

have participated in the effort to track down the AEO materials and ensure they are recovered.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Signed: June 16, 2016

William Aisenberg

4

# Exhibit A

**Subject:** Ironclad - ███████ --PRIVILEGED & CONFIDENTIAL
**Date:** Wednesday, June 1, 2016 at 5:49:53 PM Central Daylight Time
**From:** Daniel Charest
**To:** Jeff Cordes, Bill Aisenberg, Ironclad - LegalTeam
**Attachments:** Ironclad - Outline of possible ███████████ (June 1)[1].docx

Team,

Please see the attached outline for ████████████████████. As I understand it, Michael's folks are working on ███████ from a global perspective and will handle the assembly of the ████████. This outline attempts both to set the parameters of ██████████████████████████████████████████████████ and to set up the argument in the best light (from our perspective).

I understand Michael's firm will be handling the heavy lifting on this project, so we will stand down on ████████ unless anyone asks us to pitch or answer any questions. But we are ready and willing in the event y'all need us.

Please let us know if you have any questions or concerns. Thanks.

**Daniel H. Charest**
**Burns Charest LLP**
500 North Akard Street
Suite 2810
Dallas, Texas 75201
469.904.4555 direct
214.681.8444 mobile
469.444.5002 fax

Ironclad_0011019
APPENDIX - 119

**DOCUMENT PRODUCED UNDER SEAL**

**DOCUMENT PRODUCED UNDER SEAL**

**DOCUMENT PRODUCED UNDER SEAL**

**DOCUMENT PRODUCED UNDER SEAL**

**DOCUMENT PRODUCED UNDER SEAL**

**DOCUMENT PRODUCED UNDER SEAL**

**DOCUMENT PRODUCED UNDER SEAL**

**DOCUMENT PRODUCED UNDER SEAL**

**DOCUMENT PRODUCED UNDER SEAL**

**DOCUMENT PRODUCED UNDER SEAL**

**DOCUMENT PRODUCED UNDER SEAL**

**DOCUMENT PRODUCED UNDER SEAL**

**DOCUMENT PRODUCED UNDER SEAL**

**DOCUMENT PRODUCED UNDER SEAL**

**DOCUMENT PRODUCED UNDER SEAL**

# Exhibit C

**Subject:** Fwd: Ironclad - ▮▮▮▮▮▮▮--PRIVILEGED & CONFIDENTIAL
**Date:** Wednesday, June 1, 2016 at 6:34:48 PM Central Daylight Time
**From:** Daniel Charest
**To:** Jeff Cordes, Bill Aisenberg, Ironclad - LegalTeam

Please see below. Thanks.

Good work, Andrew.

Daniel H. Charest
469.904.4555 direct
214.681.8444 mobile

Begin forwarded message:

> **From:** Andrew Bynum <abynum@burnscharest.com>
> **Date:** June 1, 2016 at 18:19:02 CDT
> **To:** Daniel Charest <dcharest@burnscharest.com>
> **Subject: Re: Ironclad -** ▮▮▮▮▮▮▮**--PRIVILEGED & CONFIDENTIAL**
>
> Hi Dan,
>
> I gathered all evidence cited in Will's outline.  It's linked below in case you'd like to share w/ the group.  Thanks!
>
> https://burnscharestandrewbynum.sharefile.com/d-s6682193f65a4b91a
>
> **Andrew C. Bynum**
> **Burns Charest LLP**
> 500 North Akard Street
> Suite 2810
> Dallas, Texas 75201
> 469.904.4549 direct
> 214.983.6358 mobile
> 469.444.5002 fax
>
> ---
>
> **From:** Daniel Charest <dcharest@burnscharest.com>
> **Date:** Wednesday, June 1, 2016 at 5:49 PM
> **To:** Jeff Cordes <jeff.cordes@ironclad.com>, Bill Aisenberg <bill.aisenberg@ironclad.com>, Ironclad   LegalTeam <IroncladLegalTeam@burnscharest.com>

**Ironclad_0011037**
**APPENDIX - 136**

**Subject:** Ironclad ████████ PRIVILEGED & CONFIDENTIAL

Team,

Please see the attached outline for ███████████████. As I understand it, Michael's folks are working on ████ from a global perspective and will handle the assembly of █. This outline attempts both to set the parameters of ███████████████████████████████████████████████████████ and to set up the argument in the best light (from our perspective).

I understand Michael's firm will be handling the heavy lifting on this project, so we will stand down on ██████ unless anyone asks us to pitch or answer any questions. But we are ready and willing in the event y'all need us.

Please let us know if you have any questions or concerns. Thanks.

**Daniel H. Charest**
**Burns Charest LLP**
500 North Akard Street
Suite 2810
Dallas, Texas 75201
469.904.4555 direct
214.681.8444 mobile
469.444.5002 fax

# Exhibit D



Ironclad_0011036

# Exhibit E

**Wednesday, June 8, 2016 at 11:49:22 PM Central Daylight Time**

**Subject:** Ironclad v. ORR
**Date:** Friday, June 3, 2016 at 11:04:17 AM Central Daylight Time
**From:** Michael Sherman
**To:** Jeff Cordes, Bill.Aisenberg@ironclad.com
**CC:** Daniel Charest, Andrew Bynum, Will Thompson, Larry Vincent, David Harris, Barak Kamelgard, Scott Alderton
**Priority:** High

It has just been brought to my attention that one or more e-mails sent by either Daniel and/or Andrew of Burns Charest earlier this week may contain links to documents that were marked "Attorneys Eyes Only," and produced by ORR.

For now, without further ado, please immediately delete such e-mail or e-mails, delete any materials that may have been downloaded off of those e-mails including the link, delete any notes (if any) that may have been made relating to such materials. Additionally, please confirm that you have not in any manner forwarded the materials to anyone, or printed them to hard copy.

The potentially offending e-mail (and link) I am aware of is an e-mail from Daniel to "Jeff Cordes, Bill Aisenberg, Ironclad-Legal Team" dated 6/1/2016, that bears the time stamp on my computer of 4:35pm, which is an e-mail that Daniel forwarded, which Andrew had sent to him. By copy to Andrew and Daniel, I ask them to confirm if they have any knowledge of any other dissemination of these materials beyond the scope of permitted/protected persons, and if there are any other transmissions.


Thanks
Michael

| V-card | Bio | Website |
|--------|-----|---------|



**STUBBS**
**ALDERTON &**
**MARKILES, LLP**

**Michael A. Sherman**
Partner
masherman@stubbsalderton.com

**Stubbs Alderton & Markiles, LLP**
15260 Ventura Blvd., 20th Floor
Sherman Oaks, CA 91403

1453 3rd Street Promenade, Suite 300
Santa Monica, CA 90401

Bus: 818.444.4528
Fax: 818.444.6328

The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or an agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.
To ensure compliance with requirements imposed by the U.S. Internal Revenue Service, we inform you that any tax advice contained in this communication (including any attachments) was not intended or written to be used, and cannot be used, by any taxpayer for the purpose of (1) avoiding tax-related penalties under the U.S. Internal Revenue Code or (2) promoting, marketing or recommending to another party any tax-related matters addressed herein.

**Ironclad_0011039**
**APPENDIX - 141**

# Exhibit F

**Subject:** Attorneys Eyes Only Recap - Critical - Please Read
**Date:** Tuesday, June 7, 2016 at 7:41:29 PM Central Daylight Time
**From:** Michael Sherman
**To:** Jeff.Cordes@ironclad.com, Bill.Aisenberg@ironclad.com
**CC:** Scott Alderton, Daniel Charest, Will Thompson, Andrew Bynum, David Harris, Barak Kamelgard
**Priority:** High

Jeff, Bill

At this point I believe that the two of you and I have covered every conceivable angle on undoing any claim of violation of the Protective Order on AEO issues, as respects the "link" to evidence that Andrew Bynum had forwarded to Dan Charest, and Dan had forwarded to the two of you, of last Wednesday in the subject e-mail.

In my preparing a notification to ORR's counsel just a moment ago, I just realized that the ▇▇▇▇▇▇ that Daniel had sent to the two of you on June 1 **with the outline as an attachment** also compromises our position under the Protective Order.   I reprint below just the From, Sent, To and Subject headings of that e-mail, so you can focus with me on it.

**From: Daniel Charest [mailto:dcharest@burnscharest.com]**
**Sent: Wednesday, June 1, 2016 3:50 PM**
**To: Jeff Cordes <jeff.cordes@ironclad.com>; Bill Aisenberg <bill.aisenberg@ironclad.com>; Ironclad - LegalTeam <IroncladLegalTeam@burnscharest.com>**
**Subject: Ironclad - ▇▇▇▇▇▇ --PRIVILEGED & CONFIDENTIAL**


You should **NOT** have been sent this attachment.  That was a mistake.

Please immediately delete this e-mail, delete any materials that may have been downloaded off of those e-mails including the attachment, delete any notes (if any) that may have been made relating to such materials.  Additionally, please confirm that you have not in any manner forwarded the materials to anyone, or printed them to hard copy, and overall please satisfy me so I can satisfy ORR's counsel that we have done everything possible to eliminate the offending materials from all Ironclad computers/servers, and that it has not been disseminated in any fashion, and that there has been no related e-0mail traffic or data saved or sent.  With great apologies   I really would like these confirmations sent asap, so I can respond in full to ORR's counsel on this subject and so I am not doing this in piecemeal fashion.

I respect that you are frustrated.  So am I.  I'm sure that Daniel and I will be speaking about ensuring that Ironclad is <u>not</u> out of pocket for the time we are spending to remedy this.

Regards
Michael

Ironclad_0011053
APPENDIX - 143

| V-card | Bio | Website |
| --- | --- | --- |



**Michael A. Sherman**
Partner
masherman@stubbsalderton.com

**Stubbs Alderton & Markiles, LLP**
15260 Ventura Blvd., 20th Floor
Sherman Oaks, CA 91403

1453 3rd Street Promenade, Suite 300
Santa Monica, CA 90401

Bus: 818.444.4528
Fax: 818.444.6328

The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or an agent respons ble for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly proh bited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.
To ensure compliance with requirements imposed by the U.S. Internal Revenue Service, we inform you that any tax advice contained in this communication (including any attachments) was not intended or written to be used, and cannot be used, by any taxpayer for the purpose of (1) avoiding tax-related penalties under the U.S. Internal Revenue Code or (2) promoting, marketing or recommending to another party any tax-related matters addressed herein.

Ironclad_0011054
APPENDIX - 144

| | |
|---|---|
| **From:** | Daniel Charest <dcharest@burnscharest.com> |
| **Sent:** | Monday, May 16, 2016 2:17 PM |
| **To:** | Jennifer Metzger Stinnett |
| **Cc:** | Ironclad - OC; Michael Sherman; Barak Kamelgard; Larry Vincent; Will Thompson; Andrew Bynum |
| **Subject:** | Re: Ironclad - Extract from ORR00000850 and ORR00000851 |

Great; thanks, Jenny. Understood. The spreadsheet I attached was a new document, so I think we are OK. All the best.

## Daniel H. Charest
469.904.4555 direct
214.681.8444 mobile

---

**From:** Jennifer Metzger Stinnett <jstinnett@fmdlegal.com>
**Date:** Monday, May 16, 2016 at 12:57 PM
**To:** Daniel Charest <dcharest@burnscharest.com>
**Cc:** Ironclad - OC <IroncladOC@burnscharest.com>, Michael Sherman <masherman@stubbsalderton.com>, Barak Kamelgard <bkamelgard@stubbsalderton.com>, Larry Vincent <larryvin@gmail.com>, Will Thompson <wthompson@burnscharest.com>, Andrew Bynum <abynum@burnscharest.com>
**Subject:** RE: Ironclad - Extract from ORR00000850 and ORR00000851

Daniel – As long as other columns in this spreadsheet are completely deleted before presenting to your client (maybe with a new document created with just those columns?) as opposed to just hidden, we are ok with this just being designated as confidential and not attorneys' eyes only.
Jenny

## FultzMaddox Dickens
PLLC
### ATTORNEYS

*Jennifer Metzger Stinnett*
101 South Fifth Street, 27th Floor
Louisville, KY 40202
*Main:* 502.588.2000
*Direct:* 502.588.2026
*Fax:* 502.588.2020
jstinnett@fmdlegal.com
www.fmdlegal.com

---

**From:** Daniel Charest [mailto:dcharest@burnscharest.com]
**Sent:** Monday, May 16, 2016 1:23 PM
**To:** Jennifer Metzger Stinnett
**Cc:** Ironclad - OC; Michael Sherman; Barak Kamelgard; Larry Vincent; Will Thompson; Andrew Bynum
**Subject:** Ironclad - Extract from ORR00000850 and ORR00000851

Jenny,

I've attached an extract from the two spreadsheets that ORR produced under the AEO designation (ORR00000850 and ORR00000851). The extracted spreadsheet contains only the ORRPN and ORRPartDesc information (columns B and C in the originals).

Unless I'm mistaken, everyone agrees that this information (i.e., ORRPN and ORRPartDesc ) is not AEO. But I want to confirm with you that we can share the information attached with the client. We will maintain confidentiality.

Please confirm. Thanks. And let me know if you have any questions.

**Daniel H. Charest**
Burns Charest LLP
500 North Akard Street
Suite 2810
Dallas, Texas 75201
469.904.4555 direct
214.681.8444 mobile
469.444.5002 fax

**APPENDIX - 146**

IN THE UNITED STATES DISTRICT
COURT FOR THE NORTHERN DISTRICT
OF TEXAS DALLAS DIVISION

IRONCLAD PERFORMANCE WEAR
CORPORATION,

§
§
§

    Plaintiff,

§
§

No. 3:15-cv-03453-D

v.

§
§

ORR SAFETY CORPORATION,

§
§
§

    Defendant

§

## <u>DECLARATION OF JEFFREY CORDES</u>

I, Jeffrey Cordes, declare as follows:

1.  My name is Jeffrey Cordes. I am over 18 years of age, and I have personal knowledge of the facts stated below. If called and sworn as a witness, I would be competent to testify to each of them.

2.  Late evening on June 1, 2016, though I do not recall when, I checked my emails from my laptop computer while at my home.

3.  During that session, I opened an email from Daniel Charest that contained a link and some text (the "Link Email"). A redacted version of the Link Email is attached as Exhibit C. Also during that session, I clicked the link in the Link Email and downloaded a ZIP file from a web-based file-sharing site (the "Sharefile"). To the best of my memory, I did not open any of the files contained within the Sharefile. If I opened any (which I do not recall), I do not recall the contents of any of the materials contained in the Sharefile. The context of the email and the files within the Sharefile caused me to become concerned that I should not have received the materials contained in the Sharefile. I ended the session, closed the ZIP file, and did not explore the Sharefile materials thereafter.

4. While I do not recall accessing the email, I understand that I also received another email with an attachment from Mr. Charest (the "Attachment Email"). And I understand that the Attachment Email contained, as an attachment, a word document (the "Outline"). But I do not recall opening the Attachment Email or the Outline. And I have no memory of the content of either the Attachment Email or the Outline.

5. In the morning of June 2, 2016, I reported to Bill Aisenberg that I had received the Attachment Email and/or the Link Email and that, based on my observation of the content, I was concerned that the Sharefile materials should not have been provided to me because of the AEO designations and, as a result closed the Sharefile materials. I instructed Mr. Aisenberg to contact Mr. Sherman to follow up on the potential issue.

6. In the morning of June 3, 2016, Mr. Aisenberg confirmed that Mr. Sherman had instructed Mr. Aisenberg that Mr. Aisenberg and I should not to access the materials in question. I understood, through Mr. Aisenberg, that I should not access and should delete the Attachment Email, the Link Email, and any materials related to either email.

7. On June 3, 2016, at 11:04 AM CDT, I received an email from Mr. Sherman (the "First Notice") telling Mr. Aisenberg and me both to "immediately delete such e-mail or e-mails, delete any materials that may have been downloaded off of those e-mails including the link, delete any notes (if any) that may have been made relating to such materials." A copy of the First Notice is attached as Exhibit E.

8. To follow Mr. Sherman's instruction, I "double" deleted the materials I had downloaded from the Sharefile by deleting them from my download folder and then deleting them from my trash folder. I also "single" deleted both the Attachment Email and the Link Email from my inbox. I did not delete the emails from my trash folder because of the litigation hold on email deletions.

9. On June 7, 2016, at 7:41 PM CDT, Mr. Sherman sent Mr. Aisenberg and me another email (the "Second Notice"), focused on the Outline in the Attachment Email, to confirm that, to the extent we had not yet done so, Mr. Aisenberg and I should "immediately delete this e-mail, delete any materials that may have been downloaded off of those emails including the attachment, delete any notes (if any) that may have been made relating to such materials." By the time I received the Second Notice, I had already addressed both emails as described above.

10. Aside from briefly reviewing the materials that I downloaded from the Sharefile as described above, I did not access the materials in question. To the best of my memory, I accessed these materials on my work laptop computer. Similarly, to the best of my memory, I did not access these materials from any other device.

11. At no time did I forward or otherwise disseminate the Link Email, the Sharefile materials, or the Attachment Email (or its attachment). At no time did I print or save these materials. At no time did I make any notes or otherwise copy the information contained within these materials. I have no specific memory of the contents of these materials including, in particular, the Outline or the materials downloaded from the Sharefile.

12. I was aware of the protective order in this case. At no time did I intend to deviate from the order. Nor do I believe I did. When we became aware of the existence of potential AEO materials, the Ironclad management team, Mr. Aisenberg and myself, reported the issue to counsel as described above. Since then, I have not accessed the materials in question and have participated in the effort to track down the AEO materials and ensure they are recovered.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Signed: June 17, 2016

Jeffrey Cordes